# EXHIBIT B

# Housing Assistance Payments (HAP) Contract
## Section 8 Tenant-Based Assistance
## Housing Choice Voucher Program

OMB Approval No. 2577-0169
exp. 4/30/2026

**OMB Burden Statement.** The public reporting burden for this information collection is estimated to be up to 0.5 hours, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This collection of information is required to establish the terms between a private market owner and a PHA for participating in the program, including whether the tenant or owner pays for utilities and services. Assurances of confidentiality are not provided under this collection. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions to reduce this burden, to the Office of Public and Indian Housing, US. Department of Housing and Urban Development, Washington, DC 20410. HUD may not conduct and sponsor, and a person is not required to respond to, a collection of information unless the collection displays a valid control number.

**Privacy Notice.** The Department of Housing and Urban Development (HUD) is authorized to collect the information on this form by 24 CFR § 982.451. The information is used to provide Section 8 tenant-based assistance under the Housing Choice Voucher program in the form of housing assistance payments. The Personally Identifiable Information (PII) data collected on this form are not stored or retrieved within a system of record.

**Instructions for use of HAP Contract**

This form of Housing Assistance Payments Contract (HAP contract) is used to provide Section 8 tenant-based assistance under the housing choice voucher program (voucher program) of the U.S. Department of Housing and Urban Development (HUD). The main regulation for this program is 24 Code of Federal Regulations Part 982.

The local voucher program is administered by a public housing agency (PHA). The HAP contract is an agreement between the PHA and the owner of a unit occupied by an assisted family. The HAP contract has three parts:
Part A Contract information (fill-ins).
See section by section instructions.
Part B Body of contract
Part C Tenancy addendum

**Use of this form**
Use of this HAP contract is required by HUD. Modification of the HAP contract is not permitted. The HAP contract must be word-for-word in the form prescribed by HUD.
However, the PHA may choose to add the following:

Language that prohibits the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Such a prohibition must be added to Part A of the HAP contract.

Language that defines when the housing assistance payment by the PHA is deemed received by the owner (e.g., upon mailing by the PHA or actual receipt by the owner). Such language must be added to Part A of the HAP contract.
To prepare the HAP contract, fill in all contract information in Part A of the contract. Part A must then be executed by the owner and the PHA.

**Use for special housing types**

In addition to use for the basic Section 8 voucher program, this form must also be used for the following "special housing types" which are voucher program variants for special needs (see 24 CFR Part 982, Subpart M): (1) single room occupancy (SRO) housing; (2) congregate housing; (3) group home; (4) shared housing; and (5) manufactured home rental by a family that leases the manufactured home and space. When this form is used for a special housing type, the special housing type shall be specified in Part A of the HAP contract, as follows: "This HAP contract is used for the following special housing type under HUD regulations for the Section 8 voucher program: (Insert Name of Special Housing type)."
However, this form may not be used for the following special housing types: (1) manufactured home space rental by a family that owns the manufactured home and leases only the space; (2) cooperative housing; and (3) the homeownership option under Section 8(y) of the United States Housing Act of 1937 (42 U.S.C. 1437f(y)).

**How to fill in Part A**
Section by Section Instructions

Section 2: **Tenant**
Enter full name of tenant.

Section 3. **Contract Unit**
Enter address of unit, including apartment number, if any.

Section 4. **Household Members**
Enter full names of all PHA-approved household members. Specify if any such person is a live-in aide, which is a person approved by the PHA to reside in the unit to provide supportive services for a family member who is a person with disabilities

Section 5. **Initial Lease Term**

Enter first date and last date of initial lease term.

The initial lease term must be for at least one year. However, the PHA may approve a shorter initial lease term if the PHA determines that:

- Such shorter term would improve housing opportunities for the tenant, and
- Such shorter term is the prevailing local market practice.

Section 6. **Initial Rent to Owner**

Enter the amount of the monthly rent to owner during the initial lease term. The PHA must determine that the rent to owner is reasonable in comparison to rent for other comparable unassisted units. During the initial lease term, the owner may not raise the rent to owner.

Section 7. **Housing Assistance Payment**

Enter the initial amount of the monthly housing assistance payment.

Section 8. **Utilities and Appliances**.
The lease and the HAP contract must specify what utilities and appliances are to be supplied by the owner, and what utilities and appliances are to be supplied by the tenant. Fill in section 8 to show who is responsible to provide or pay for utilities and appliances.

**Housing Assistance Payments Contract (HAP Contract)**
**Section 8 Tenant-Based Assistance**
**Housing Choice Voucher Program**

**U.S. Department of Housing and Urban Development**
Office of Public and Indian Housing

## Part A of the HAP Contract: Contract Information

(To prepare the contract, fill out all contract information in Part A.)

1. **Contents of Contract**
   This HAP contract has three parts:
   - Part A: Contract Information
   - Part B: Body of Contract
   - Part C: Tenancy Addendum

2. **Tenant**

3. **Contract Unit**

4. **Household**

   The following persons may reside in the unit. Other persons may not be added to the household without prior written approval of the owner and the PHA.

5. **Initial Lease Term**

   The initial lease term begins on (mm/dd/yyyy): ______________________________

   The initial lease term ends on (mm/dd/yyyy): ________________________________

6. **Initial Rent to Owner**
   The initial rent to owner is: $ __________________________
   During the initial lease term, the owner may not raise the rent to owner.

7. **Initial Housing Assistance Payment**

The HAP contract term commences on the first day of the initial lease term. At the beginning of the HAP contract term, the amount of the housing assistance payment by the PHA to the owner is $ __________________ per month.
The amount of the monthly housing assistance payment by the PHA to the owner is subject to change during the HAP contract term in accordance with HUD requirements.

8. Utilities and Appliances

The owner shall provide or pay for the utilities/appliances indicated below by an "**O**". The tenant shall provide or pay for the utilities/appliances indicated below by a "**T**". Unless otherwise specified below, the owner shall pay for all utilities and provide the refrigerator and range/microwave.

| Item | Specify fuel type | Paid by |
|---|---|---|
| Heating | ☐ Natural gas ☐ Bottled gas ☐ Electric ☐ Heat Pump ☐ Oil ☐ Other | |
| Cooking | ☐ Natural gas ☐ Bottled gas ☐ Electric ☐ Other | |
| Water Heating | ☐ Natural gas ☐ Bottled gas ☐ Electric ☐ Oil ☐ Other | |
| Other Electric | | |
| Water | | |
| Sewer | | |
| Trash Collection | | |
| Air Conditioning | | |
| Other (specify) | | |
| | | Provided by |
| Refrigerator | | |
| Range/Microwave | | |

**Signatures**

I/We, the undersigned, certify under penalty of perjury that the information provided above is true and correct. WARNING: Anyone who knowingly submits a false claim or makes a false statement is subject to criminal and/or civil penalties, including confinement for up to 5 years, fines, and civil and administrative penalties. (18 U.S.C. § 287, 1001, 1010, 1012; U.S.C. § 3729, 3802).

| **Public Housing Agency** | **Owner** |
|---|---|
| Print or Type Name of PHA | Print or Type Name of Owner |
| Signature | Signature |
| Print or Type Name and Title of Signatory | Print or Type Name and Title of Signatory |
| Date (mm/dd/yyyy) | Date (mm/dd/yyyy) |

Mail payments to:

Name

Address (street, city, state, zip code)

## Part B of HAP Contract: Body of Contract

**1. Purpose**

a. This is a HAP contract between the PHA and the owner. The HAP contract is entered to provide assistance for the family under the Section 8 voucher program (see HUD program regulations at 24 Code of Federal Regulations Part 982).

b. The HAP contract only applies to the household and contract unit specified in Part A of the HAP contract.

c. During the HAP contract term, the PHA will pay housing assistance payments to the owner in accordance with the HAP contract.

d. The family will reside in the contract unit with assistance under the Section 8 voucher program. The housing assistance payments by the PHA assist the tenant to lease the contract unit from the owner for occupancy by the family.

**2. Lease of Contract Unit**

a. The owner has leased the contract unit to the tenant for occupancy by the family with assistance under the Section 8 voucher program.

b. The PHA has approved leasing of the unit in accordance with requirements of the Section 8 voucher program.

c. The lease for the contract unit must include word-for-word all provisions of the tenancy addendum required by HUD (Part C of the HAP contract).

d. The owner certifies that:

(1) The owner and the tenant have entered into a lease of the contract unit that includes all provisions of the tenancy addendum.

(2) The lease is in a standard form that is used in the locality by the owner and that is generally used for other unassisted tenants in the premises.

(3) The lease is consistent with State and local law.

e. The owner is responsible for screening the family's behavior or suitability for tenancy. The PHA is not responsible for such screening. The PHA has no liability or responsibility to the owner or other persons for the family's behavior or the family's conduct in tenancy.

**3. Maintenance, Utilities, and Other Services**

a. The owner must maintain the contract unit and premises in accordance with the housing quality standards (HQS).

b. The owner must provide all utilities needed to comply with the HQS.

c. If the owner does not maintain the contract unit in accordance with the HQS, or fails to provide all utilities needed to comply with the HQS, the PHA may exercise any available remedies. PHA remedies for such breach include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract. The PHA may not exercise such remedies against the owner because of an HQS breach for which the family is responsible, and that is not caused by the owner.

d. The PHA shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA and the PHA verifies the correction. If a defect is life threatening, the owner must correct the defect within no more than 24 hours. For other defects, the owner must correct the defect within the period specified by the PHA.

e. The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS.

f. The PHA must notify the owner of any HQS defects shown by the inspection.

g. The owner must provide all housing services as agreed to in the lease.

**4. Term of HAP Contract**

a. Relation to lease term. The term of the HAP contract begins on the first day of the initial term of the lease, and terminates on the last day of the term of the lease (including the initial lease term and any extensions).

b. When HAP contract terminates.

(1) The HAP contract terminates automatically if the lease is terminated by the owner or the tenant.

(2) The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the HAP contract terminates automatically.

(3) If the family moves from the contract unit, the HAP contract terminates automatically.

(4) The HAP contract terminates automatically 180 calendar days after the last housing assistance payment to the owner.

(5) The PHA may terminate the HAP contract if the PHA determines, in accordance with HUD requirements, that available program funding is not sufficient to support continued assistance for families in the program.

(6) The HAP contract terminates automatically upon the death of a single member household, including single member households with a live-in aide.

(7) The PHA may terminate the HAP contract if the PHA determines that the contract unit does not provide adequate space in accordance with the HQS because of an increase in family size or a change in family composition.

(8) If the family breaks up, the PHA may terminate the HAP contract, or may continue housing assistance payments on behalf of family members who remain in the contract unit.

(9) The PHA may terminate the HAP contract if the PHA determines that the unit does not meet all requirements of the HQS, or determines that the owner has otherwise breached the HAP contract.

**5. Provision and Payment for Utilities and Appliances**

a. The lease must specify what utilities are to be provided or paid by the owner or the tenant.

b. The lease must specify what appliances are to be provided or paid by the owner or the tenant.

c. Part A of the HAP contract specifies what utilities and appliances are to be provided or paid by the owner or the tenant. The lease shall be consistent with the HAP contract.

**6. Rent to Owner: Reasonable Rent**

a. During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

b. The PHA must determine whether the rent to owner is reasonable in comparison to rent for other comparable unassisted units. To make this determination, the PHA must consider:

(1) The location, quality, size, unit type, and age of the contract unit; and

(2) Any amenities, housing services, maintenance and utilities provided and paid by the owner.

c. The PHA must redetermine the reasonable rent when required in accordance with HUD requirements. The PHA may redetermine the reasonable rent at any time.

d. During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner must give the PHA any information requested by the PHA on rents charged by the owner for other units in the premises or elsewhere.

**7. PHA Payment to Owner**

a. When paid

(1) During the term of the HAP contract, the PHA must make monthly housing assistance payments to the owner on behalf of the family at the beginning of each month.

(2) The PHA must pay housing assistance payments promptly when due to the owner.

(3) If housing assistance payments are not paid promptly when due after the first two calendar months of the HAP contract term, the PHA shall pay the owner penalties if all of the following circumstances apply: (i) Such penalties are in accordance with generally accepted practices and law, as applicable in the local housing market, governing penalties for late payment of rent by a tenant; (ii) It is the owner's practice to charge such penalties for assisted and unassisted tenants; and (iii) The owner also charges such penalties against the tenant for late payment of family rent to owner. However, the PHA shall not be obligated to pay any late payment penalty if HUD determines that late payment by the PHA is due to factors beyond the PHA's control. Moreover, the PHA shall not be obligated to pay any late payment penalty if housing assistance payments by the PHA are delayed or denied as a remedy for owner breach of the HAP contract (including any of the following PHA remedies: recovery of overpayments, suspension of housing assistance payments, abatement or reduction of housing assistance payments, termination of housing assistance payments and termination of the contract).

(4) Housing assistance payments shall only be paid to the owner while the family is residing in the contract unit during the term of the HAP contract. The PHA shall not pay a housing assistance payment to the owner for any month after the month when the family moves out.

b. **Owner compliance with HAP contract** Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract.

c. Amount of PHA payment to owner

(1) The amount of the monthly PHA housing assistance payment to the owner shall be determined by the PHA in accordance with HUD requirements for a tenancy under the voucher program.

(2) The amount of the PHA housing assistance payment is subject to change during the HAP contract term in accordance with HUD requirements. The PHA must notify the family and the owner of any changes in the amount of the housing assistance payment.

(3) The housing assistance payment for the first month of the HAP contract term shall be prorated for a partial month.

d. **Application of payment** The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

e. **Limit of PHA responsibility**

(1) The PHA is only responsible for making housing assistance payments to the owner in accordance with the HAP contract and HUD requirements for a tenancy under the voucher program.

(2) The PHA shall not pay any portion of the rent to owner in excess of the housing assistance payment. The PHA shall not pay any other claim by the owner against the family.

f. **Overpayment to owner** If the PHA determines that the owner is not entitled to the housing assistance payment or any part of it, the PHA, in addition to other remedies, may deduct the amount of the overpayment from any amounts due the owner (including amounts due under any other Section 8 assistance contract).

**8. Owner Certification**

During the term of this contract, the owner certifies that:

a. The owner is maintaining the contract unit and premises in accordance with the HQS.

b. The contract unit is leased to the tenant. The lease includes the tenancy addendum (Part C of the HAP contract), and is in accordance with the HAP contract and program requirements. The owner has provided the lease to the PHA, including any revisions of the lease.

c. The rent to owner does not exceed rents charged by the owner for rental of comparable unassisted units in the premises.

d. Except for the rent to owner, the owner has not received and will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term.

e. The family does not own or have any interest in the contract unit.

f. To the best of the owner's knowledge, the members of the family reside in the contract unit, and the unit is the family's only residence.

g. The owner (including a principal or other interested party) is not the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA has determined (and has notified the owner and the family of such determination) that approving rental of the unit, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

**9. Prohibition of Discrimination**. In accordance with applicable nondiscrimination and equal opportunity laws, statutes, Executive Orders, and regulations.

a. The owner must not discriminate against any person because of race, color, religion, sex(including sexual orientation and gender identity), national origin, age, familial status, or disability in connection with the HAP contract. Eligibility for HUD's programs must be made without regard to actual or perceived sexual orientation, gender identity, or marital status.

b. The owner must cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract.

c. Violence Against Women Act. The owner must comply with the Violence Against Women Act, as amended, and HUD's implementing regulation at 24 CFR part 5, Subpart L, and program regulations.

**10. Owner's Breach of HAP Contract**

a. Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

(1) If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.

(2) If the owner has violated any obligation under any other housing assistance payments contract under Section 8.

(3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.

(4) For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.

(5) If the owner has engaged in any drug-related criminal activity or any violent criminal activity.

b. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

c. The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

d. The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

e. Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

f. The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a

waiver of the right to exercise that or any other right or remedy at any time.

**11. PHA and HUD Access to Premises and Owner's Records**

a. The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

b. The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

c. The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

**12. Exclusion of Third Party Rights**

a. The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

b. The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

c. The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

d. The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with management of the contract unit or the premises or with implementation of the HAP contract.

**13. Conflict of Interest**

a. "Covered individual" means a person or entity who is a member of any of the following classes:

(1) Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

(2) Any employee of the PHA, or any contractor, sub-contractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

(3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or

(4) Any member of the Congress of the United States.

b. A covered individual may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

c. "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

d. The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

e. If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

f. The conflict of interest prohibition under this section may be waived by the HUD field office for good cause.

g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

**14. Assignment of the HAP Contract**

a. The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

b. If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

c. The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

d. The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

(1) The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or

(2) A court or administrative agency has determined that the owner or proposed new owner violated the Fair Housing Act or other Federal equal opportunity requirements.

e. The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

f. The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

(1) Has violated obligations under a housing assistance payments contract under Section 8;

(2) Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

(3) Has engaged in any drug-related criminal activity or any violent criminal activity;

(4) Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

(5) Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

(a) Threatens the right to peaceful enjoyment of the premises by other residents;

(b) Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

(c) Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

(d) Is drug-related criminal activity or violent criminal activity;

(6) Has a history or practice of renting units that fail to meet State or local housing codes; or

(7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

**15. Foreclosure.** In the case of any foreclosure, the immediate successor in interest in the property pursuant to the foreclosure shall assume such interest subject to the lease between the prior owner and the tenant and to the HAP contract between the prior owner and the PHA for the occupied unit. This provision does not affect any State or local law that provides longer time periods or other additional protections for tenants.

**16. Written Notices** Any notice by the PHA or the owner in connection with this contract must be in writing.

**17. Entire Agreement: Interpretation**

a. The HAP contract contains the entire agreement between the owner and the PHA.

b The HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

# Part C of HAP Contract: Tenancy Addendum

**1. Section 8 Voucher Program**

a. The owner is leasing the contract unit to the tenant for occupancy by the tenant's family with assistance for a tenancy under the Section 8 housing choice voucher program (voucher program) of the United States Department of Housing and Urban Development (HUD).

b. The owner has entered into a Housing Assistance Payments Contract (HAP contract) with the PHA under the voucher program. Under the HAP contract, the PHA will make housing assistance payments to the owner to assist the tenant in leasing the unit from the owner.

**2. Lease**

a. The owner has given the PHA a copy of the lease, including any revisions agreed by the owner and the tenant. The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract and that the lease includes the tenancy addendum.

b. The tenant shall have the right to enforce the tenancy addendum against the owner. If there is any conflict between the tenancy addendum and any other provisions of the lease, the language of the tenancy addendum shall control.

**3. Use of Contract Unit**

a. During the lease term, the family will reside in the contract unit with assistance under the voucher program.

b. The composition of the household must be approved by the PHA. The family must promptly inform the PHA of the birth, adoption or court-awarded custody of a child. Other persons may not be added to the household without prior written approval of the owner and the PHA.

c. The contract unit may only be used for residence by the PHA-approved household members. The unit must be the family's only residence. Members of the household may engage in legal profit making activities incidental to primary use of the unit for residence by members of the family.

d. The tenant may not sublease or let the unit.

e. The tenant may not assign the lease or transfer the unit.

**4. Rent to Owner**

a. The initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements.

b. Changes in the rent to owner shall be determined by the provisions of the lease. However, the owner may not raise the rent during the initial term of the lease.

c. During the term of the lease (including the initial term of the lease and any extension term), the rent to owner may at no time exceed:

(1) The reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements, or

(2) Rent charged by the owner for comparable unassisted units in the premises.

**5. Family Payment to Owner**

a. The family is responsible for paying the owner any portion of the rent to owner that is not covered by the PHA housing assistance payment.

b. Each month, the PHA will make a housing assistance payment to the owner on behalf of the family in accordance with the HAP contract. The amount of the monthly housing assistance payment will be determined by the PHA in accordance with HUD requirements for a tenancy under the Section 8 voucher program.

c. The monthly housing assistance payment shall be credited against the monthly rent to owner for the contract unit.

d. The tenant is not responsible for paying the portion of rent to owner covered by the PHA housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

e. The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease.

f. The owner must immediately return any excess rent payment to the tenant.

**6. Other Fees and Charges**

a. Rent to owner does not include cost of any meals or supportive services or furniture which may be provided by the owner.

b. The owner may not require the tenant or family members to pay charges for any meals or supportive services or furniture which may be provided by the owner. Nonpayment of any such charges is not grounds for termination of tenancy.

c. The owner may not charge the tenant extra amounts for items customarily included in rent to owner in the locality, or provided at no additional cost to unsubsidized tenants in the premises.

**7. Maintenance, Utilities, and Other Services**

a. **Maintenance**

(1) The owner must maintain the unit and premises in accordance with the HQS.

(2) Maintenance and replacement (including redecoration) must be in accordance with the

standard practice for the building concerned as established by the owner.

b. **Utilities and appliances**

(1) The owner must provide all utilities needed to comply with the HQS.

(2) The owner is not responsible for a breach of the HQS caused by the tenant's failure to:

(a) Pay for any utilities that are to be paid by the tenant.

(b) Provide and maintain any appliances that are to be provided by the tenant.

c. **Family damage**. The owner is not responsible for a breach of the HQS because of damages beyond normal wear and tear caused by any member of the household or by a guest.

d. **Housing services**. The owner must provide all housing services as agreed to in the lease.

**8. Termination of Tenancy by Owner**

a. **Requirements**. The owner may only terminate the tenancy in accordance with the lease and HUD requirements.

b. **Grounds**. During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:

(1) Serious or repeated violation of the lease;

(2) Violation of Federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the unit and the premises;

(3) Criminal activity or alcohol abuse (as provided in paragraph c); or

(4) Other good cause (as provided in paragraph d).

c. **Criminal activity or alcohol abuse.**

(1) The owner may terminate the tenancy during the term of the lease if any member of the household, a guest or another person under a esident's control commits any of the following types of criminal activity:

(a) Any criminal activity that threatens the health or safety of, or the right to peaceful enjoyment of the premises by, other residents (including property management staff residing on the premises);

(b) Any criminal activity that threatens the health, or safety of, or the right to peaceful enjoyment of their residences by, persons residing in the immediate vicinity of the premises;

(c) Any violent criminal activity on or near the premises; or

(d) Any drug-related criminal activity on or near the premises.

(2) The owner may terminate the tenancy during the term of the lease if any member of the household is:

(a) Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that, in the case of the State of New Jersey, is a high misdemeanor; or

(b) Violating a condition of probation or parole under Federal or State law.

(3) The owner may terminate the tenancy for criminal activity by a household member in accordance with this section if the owner determines that the household member has committed the criminal activity, regardless of whether the household member has been arrested or convicted for such activity.

(4) The owner may terminate the tenancy during the term of the lease if any member of the household has engaged in abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.

d. **Other good cause for termination of tenancy**

(1) During the initial lease term, other good cause for termination of tenancy must be something the family did or failed to do.

(2) During the initial lease term or during any extension term, other good cause may include:

(a) Disturbance of neighbors,

(b) Destruction of property, or

(c) Living or housekeeping habits that cause damage to the unit or premises.

(3) After the initial lease term, such good cause may include:

(a) The tenant's failure to accept the owner's offer of a new lease or revision;

(b) The owner's desire to use the unit for personal or family use or for a purpose other than use as a residential rental unit; or

(c) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, the owner's desire to rent the unit for a higher rent).

(4) The examples of other good cause in this paragraph do not preempt any State or local laws to the contrary.

(5) In the case of an owner who is an immediate successor in interest pursuant to foreclosure during the term of the lease, requiring the tenant to vacate the property prior to sale shall not constitute other good cause, except that the owner may terminate the tenancy effective on the date of transfer of the unit to the owner if the owner:

(a) Will occupy the unit as a primary residence; and

(b) Has provided the tenant a notice to vacate at least 90 days before the effective date of such notice. This provision shall not affect any State or local law that provides for longer time periods or addition protections for tenants.

**9. Protections for Victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking.**

a. Purpose: This section incorporates the protections for victims of domestic violence, dating violence, sexual assault, or stalking in accordance with subtitle N of the Violence Against Women Act of 1994, as amended (codified as amended at 42 U.S.C. 14043e et seq.) (VAWA) and implementing regulations at 24 CFR part 5, subpart L.

b. Conflict with other Provisions: In the event of any conflict between this provision and any other provisions included in Part C of the HAP contract, this provision shall prevail.

c. **Effect on Other Protections**: Nothing in this section shall be construed to supersede any provision of any Federal, State, or local law that provides greater protection than this section for victims of domestic violence, dating violence, sexual assault, or stalking.

d. **Definition:** As used in this Section, the terms "actual and imminent threat," "affiliated individual", "bifurcate", "dating violence," "domestic violence," "sexual assault," and "stalking" are defined in HUD's regulations at 24 CFR part 5, subpart L. The terms "Household" and "Other Person Under the Tenant's Control" are defined at 24 CFR part 5, subpart A.

e. **VAWA Notice and Certification Form:** The PHA shall provide the tenant with the "Notice of Occupancy Rights under VAWA and the certification form described under 24 CFR 5.2005(a)(1) and (2).

f. **Protection for victims of Domestic Violence, Dating Violence, Sexual Assault, or Stalking:**

(1) The landlord or the PHA will not deny admission to, deny assistance under, terminate from participation in, or evict the Tenant on the basis of or as a direct result of the fact that the Tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, if the Tenant otherwise qualifies for admission, assistance, participation, or occupancy. 24 CFR 5.2005(b)(1).

(2) The tenant shall not be denied tenancy or occupancy rights solely on the basis of criminal activity engaged in by a member of the Tenant's Household or any guest or Other Person Under the Tenant's Control, if the criminal activity is directly related to domestic violence, dating violence, sexual assault, or stalking, and the Tenant or an Affiliated Individual of the Tenant is the victim or the threatened victim of domestic violence, dating violence, sexual assault, or stalking. 24 CFR 5.2005(b)(2).

(3) An incident or incidents of actual or threatened domestic violence, dating violence, sexual assault or stalking will not be construed as serious or repeated violations of the lease by the victim or threatened victim of the incident. Nor shall it not be construed as other "good cause" for termination of the lease, tenancy, or occupancy rights of such a victim or threatened victim. 24 CFR 5.2005(c)(1) and (c)(2).

g. **Compliance with Court Orders:** Nothing in this Addendum will limit the authority of the landlord, when notified by a court order, to comply with the court order with respect to the rights of access or control of property (including civil protection orders issued to protect a victim of domestic violence, dating violence, sexual assault, or stalking) or with respect to the distribution or possession of property among members of the Tenant's Household. 24 CFR 5.2005(d)(1).

h. **Violations Not Premised on Domestic Violence, Dating Violence, Sexual Assault, or Stalking:** Nothing in this section shall be construed to limit any otherwise available authority of the Landlord to evict or the public housing authority to terminate the assistance of a Tenant for any violation not premised on an act of domestic violence, dating violence, sexual assault, or stalking that is in question against the Tenant or an Affiliated Individual of the Tenant. However, the Landlord or the PHA will not subject the tenant, who is or has been a victim of domestic violence, dating violence, sexual assault, or stalking, to a more demanding standard than other tenants in determining whether to evict or terminate assistance. 24 CFR 5.2005(d)(2).

i. **Actual and Imminent Threats:**

(1) Nothing in this section will be construed to limit the authority of the Landlord to evict the Tenant if the Landlord can demonstrate that an "actual and imminent threat" to other tenants or those employed at or providing service to the property would be present if the Tenant or lawful occupant is not evicted. In this context, words, gestures, actions, or other indicators will be construed as an actual and imminent threat if they meet the following standards for an actual and imminent threat: "Actual and imminent threat" refers to a physical danger that is real, would occur within an immediate time frame, and could result in death or serious bodily harm. In determining whether an individual would pose an actual and imminent threat, the factors to be considered include: the duration of the risk, the nature and severity of the potential harm, the likelihood that the potential harm will occur, and the length of time before the potential harm would occur. 24 CFR 5.2005(d)(3).

(2) If an actual and imminent threat is demonstrated, eviction should be used only when there are no other actions that could be taken to reduce or eliminate the threat, including, but not limited to, transferring the victim to a different unit, barring the perpetrator from the property, contacting law enforcement to increase police presence, developing other plans to keep the property safe, or seeking other legal remedies to prevent the perpetrator from acting on a threat. Restrictions predicated on public safety cannot be based on stereotypes, but must be tailored to particularized concerns about individual residents. 24 CFR 5.2005(d)(4).

j. **Emergency Transfer:** A tenant who is a victim of domestic violence, dating violence, sexual assault, or stalking may request an emergency transfer in accordance with the PHA's emergency transfer plan. 24 CFR 5.2005(e). The PHA's emergency transfer plan must be made available upon request, and incorporate strict confidentiality measures to ensure that the PHA does not disclose a tenant's dwelling unit location to a person who committed or threatened to commit an act of domestic violence, dating violence, sexual assault, or stalking against the tenant;

For transfers in which the tenant would not be considered a new applicant, the PHA must ensure that a request for an emergency transfer receives, at a minimum, any applicable additional priority that is already provided to other types of emergency transfer requests. For transfers in which the tenant would be considered a new applicant, the plan must include policies for assisting a tenant with this transfer.

k. **Bifurcation**: Subject to any lease termination requirements or procedures prescribed by Federal, State, or local law, if any member of the Tenant's Household engages in criminal activity directly relating to domestic violence, dating violence, sexual assault, or stalking, the Landlord may "bifurcate" the Lease, or remove that Household member from the Lease, without regard to whether that Household member is a signatory to the Lease, in order to evict, remove, or terminate the occupancy rights of that Household member without evicting, removing, or otherwise penalizing the victim of the criminal activity who is also a tenant or lawful occupant. Such eviction, removal, termination of occupancy rights, or termination of assistance shall be effected in accordance with the procedures prescribed by Federal, State, and local law for the termination of leases or assistance under the housing choice voucher program. 24 CFR 5.2009(a).

If the Landlord bifurcates the Lease to evict, remove, or terminate assistance to a household member, and that household member is the sole tenant eligible to receive assistance, the landlord shall provide any remaining tenants or residents a period of 30 calendar days from the date of bifurcation of the lease to:

(1) Establish eligibility for the same covered housing program under which the evicted or terminated tenant was the recipient of assistance at the time of bifurcation of the lease;

(2) Establish eligibility under another covered housing program; or

(3) Find alternative housing.

l. **Family Break-up:** If the family break-up results from an occurrence of domestic violence, dating violence, sexual assault, or stalking, the PHA must ensure that the victim retains assistance. 24 CFR 982.315.

m. **Move with Continued Assistance:** The public housing agency may not terminate assistance to a family or member of the family that moves out of a unit in violation of the lease, with or without prior notification to the public housing agency if such a move occurred to protect the health or safety of a family member who is or has been a victim of domestic violence, dating violence, sexual assault, or stalking; and who reasonably believed they were imminently threatened by harm from further violence if they remained in the dwelling unit, or if any family member has been the victim of sexual assault that occurred on the premises during the 90-calendar-day period preceding the family's request to move.

(1) The move is needed to protect the health or safety of the family or family member who is or has been a victim of domestic violence dating violence, sexual assault or stalking; and

(2) The family or member of the family reasonably believes that he or she was threatened with imminent harm from further violence if he or she remained in the dwelling unit. However, any family member that has been the victim of a sexual assault that occurred on the premises during the 90-calendar day period preceding the family's move or request to move is not required to believe that he or she was threatened with imminent harm from further violence if he or she remained in the dwelling unit. 24 CFR 982.354

n. **Confidentiality.**

(1) The Landlord shall maintain in strict confidence any information the Tenant (or someone acting on behalf of the Tenant) submits to the Landlord concerning incidents of domestic violence, dating violence, sexual assault or stalking, including the fact that the tenant is a victim of domestic violence, dating violence, sexual assault, or stalking.

(2) The Landlord shall not allow any individual administering assistance on its behalf, or any persons within its employ, to have access to confidential information unless explicitly authorized by the Landlord for reasons that specifically call for these individuals to have access to the information pursuant to applicable Federal, State, or local law.

(3) The Landlord shall not enter confidential information into any shared database or disclose such information to any other entity or individual, except to the extent that the disclosure is requested or consented to in writing by the individual in a time-limited release; required for use in an eviction proceeding; or is required by applicable law.

**10. Eviction by court action**

The owner may only evict the tenant by a court action.

**11. Owner notice of grounds**

(1) At or before the beginning of a court action to evict the tenant, the owner must give the tenant a notice that specifies the grounds for termination of tenancy. The notice may be included in or combined with any owner eviction notice.

(2) The owner must give the PHA a copy of any owner eviction notice at the same time the owner notifies the tenant.

(3) Eviction notice means a notice to vacate, or a complaint or other initial pleading used to begin an eviction action under State or local law.

**12. Lease: Relation to HAP Contract**

If the HAP contract terminates for any reason, the lease terminates automatically.

**13. PHA Termination of Assistance**

The PHA may terminate program assistance for the family for any grounds authorized in accordance with HUD requirements. If the PHA terminates program assistance for the family, the lease terminates automatically.

**14. Family Move Out**

The tenant must notify the PHA and the owner before the family moves out of the unit.

**15. Security Deposit**

a. The owner may collect a security deposit from the tenant. (However, the PHA may prohibit the owner from collecting a security deposit in excess of private market practice, or in excess of amounts charged by the owner to unassisted tenants. Any such PHA-required restriction must be specified in the HAP contract.)

b. When the family moves out of the contract unit, the owner, subject to State and local law, may use the security deposit, including any interest on the deposit, as reimbursement for any unpaid rent payable by the tenant, any damages to the unit or any other amounts that the tenant owes under the lease.

c. The owner must give the tenant a list of all items charged against the security deposit, and the amount of each item. After deducting the amount, if any, used to reimburse the owner, the owner must promptly refund the full amount of the unused balance to the tenant.

d. If the security deposit is not sufficient to cover amounts the tenant owes under the lease, the owner may collect the balance from the tenant.

**16. Prohibition of Discrimination**

In accordance with applicable nondiscrimination and equal opportunity laws, statutes, Executive Orders, and regulations, the owner must not discriminate against any person because of race, color, religion, sex (including sexual orientation and gender identity), national origin, age, familial status or disability in connection with the lease. Eligibility for HUD's programs must be made without regard to actual or perceived sexual orientation, gender identity, or marital status.

**17. Conflict with Other Provisions of Lease**

a. The terms of the tenancy addendum are prescribed by HUD in accordance with Federal law and regulation, as a condition for Federal assistance to the tenant and tenant's family under the Section 8 voucher program.

b. In case of any conflict between the provisions of the tenancy addendum as required by HUD, and any other provisions of the lease or any other agreement between the owner and the tenant, the requirements of the HUD-required tenancy addendum shall control.

**18. Changes in Lease or Rent**

a. The tenant and the owner may not make any change in the tenancy addendum. However, if the tenant and the owner agree to any other changes in the lease, such changes must be in writing, and the owner must immediately give the PHA a copy of such changes. The lease, including any changes, must be in accordance with the requirements of the tenancy addendum.

b. In the following cases, tenant-based assistance shall not be continued unless the PHA has approved a new tenancy in accordance with program requirements and has executed a new HAP contract with the owner:

(1) If there are any changes in lease requirements governing tenant or owner responsibilities for utilities or appliances;

(2) If there are any changes in lease provisions governing the term of the lease;

(3) If the family moves to a new unit, even if the unit is in the same building or complex.

c. PHA approval of the tenancy, and execution of a new HAP contract, are not required for agreed changes in the lease other than as specified in paragraph b.

d. The owner must notify the PHA of any changes in the amount of the rent to owner at least sixty days before any such changes go into effect, and the amount of the rent to owner following any such agreed change may not exceed the reasonable rent for the unit as most recently determined or redetermined by the PHA in accordance with HUD requirements.

**19. Notices**

Any notice under the lease by the tenant to the owner or by the owner to the tenant must be in writing.

**20. Definitions**

**Contract unit**. The housing unit rented by the tenant with assistance under the program.

**Family**. The persons who may reside in the unit with assistance under the program.

**HAP contract**. The housing assistance payments contract between the PHA and the owner. The PHA pays housing assistance payments to the owner in accordance with the HAP contract.

**Household**. The persons who may reside in the contract unit. The household consists of the family and any PHA-approved live-in aide. (A live-in aide is a person who resides in the unit to provide necessary supportive services for a member of the family who is a person with disabilities.)

**Housing quality standards (HQS)**. The HUD minimum quality standards for housing assisted under the Section 8 tenant-based programs.

**HUD.** The U.S. Department of Housing and Urban Development.

**HUD requirements**. HUD requirements for the Section 8 program. HUD requirements are issued by HUD headquarters, as regulations, Federal Register notices or other binding program directives.

**Lease**. The written agreement between the owner and the tenant for the lease of the contract unit to the tenant. The lease includes the tenancy addendum prescribed by HUD.

**PHA**. Public Housing Agency.

**Premises**. The building or complex in which the contract unit is located, including common areas and grounds.

**Program**. The Section 8 housing choice voucher program.

**Rent to owner**. The total monthly rent payable to the owner for the contract unit. The rent to owner is the sum of the portion of rent payable by the tenant plus the PHA housing assistance payment to the owner.

**Section 8**. Section 8 of the United States Housing Act of 1937 (42 United States Code 1437f).

**Tenant**. The family member (or members) who leases the unit from the owner.

**Voucher program**. The Section 8 housing choice voucher program. Under this program, HUD provides funds to a PHA for rent subsidy on behalf of eligible families. The tenancy under the lease will be assisted with rent subsidy for a tenancy under the voucher program.