**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RYSHEENA MOORE, et al., | |
| Plaintiffs, | |
| | Case No. 24-cv-12912 |
| v. | Honorable April M. Perry |
| MAC PROPERTY MANAGEMENT, LLC, d/b/a MAC PROPERTIES, | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT MAC PROPERTIES' MOTION TO**
**DISMISS PLAINTIFFS' COMPLAINT AND STRIKE CLASS ALLEGATIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

I.     PLAINTIFFS DO NOT ALLEGE DISCRIMINATORY TREATMENT. ........................... 1

       A.     Complex Discrimination Claims Require Explanatory Factual Allegations. ......... 2

       B.     Conclusory Allegations Regarding Plaintiffs' "Budgets" Are Insufficient. ........... 4

II.    THE IHRA VIOLATES THE FOURTH AMENDMENT ...................................................... 5

III.   THE COMPLAINT FAILS TO ALLEGE DISPARATE IMPACT RACIAL DISCRIMINATION. .................................................................................................. 11

       A.     Plaintiffs Fail To Plead Sufficient Facts To Establish Robust Causality ............. 11

       B.     The Complaint Lacks Sufficient Plausible Facts to Establish A *Prima Facie* Disparate Impact Claim. ............................................................................... 13

IV.   HOUSING SUBSIDIES ARE NOT INCOME. ................................................................. 14

V.    PLAINTIFFS' ICFA CLAIM MUST BE DISMISSED ...................................................... 15

       A.     Plaintiffs' ICFA Claim Is Predicated on Legal Duties Created by the IHRA. .......................................................................................................... 15

       B.     Plaintiffs' Have Not Alleged an ICFA "Unfair Practices" Violation. ................. 18

VI.   THE SUPREMACY CLAUSE BARS PLAINTIFFS' IHRA CLAIMS ......................... 18

VII.  THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS. ............... 20

VIII. HOPE LACKS ARTICLE III STANDING. ..................................................................... 22

CONCLUSION ............................................................................................................ 24

DMS_US.370688284.10

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*216 East 29th Street Trust v. City of New York*,
    No. 24-cv-00595 (ER), 2025 WL 315380 (S.D.N.Y. Jan. 28, 2025) ......................................6

*216 East 29th Street Trust v. City of New York*,
    No. 25-465 (2nd Cir. Feb. 26, 2025)..................................................................................6

*Alexander v. Ne. Illinois Univ.*,
    586 F. Supp. 2d 905 (N.D. Ill. 2008) ..............................................................................16

*Austin Apartment Ass'n v. City of Austin*,
    89 F. Supp. 3d 886 (W.D. Tex 2015).................................................................................19

*Avet v. Dart*,
    No. 21-CV-2354, 2021 WL 5865715 (N.D. Ill. Dec. 10, 2021)........................................4

*Bankhead v. Wintrust Fin. Corp.*,
    No. 22-CV-02759, 2023 WL 6290548 (N.D. Ill. Sept. 27, 2023) .............................3

*Bell v. LaSalle Bank N.A./ABN AMRO N.A., Inc.*,
    No. 03-C-0607, 2005 WL 43178 (N.D. Ill. Jan. 10, 2005).......................................16

*Byrd v. McDonald's USA, LLC*,
    No. 20-C-6447, 2021 WL 2329369 (N.D. Ill. June 8, 2021)........................................3

*Citizens Project v. City of Colorado Springs*,
    No. 1:22-CV-01365-SKC-MDB, 2024 WL 3345229 (D. Colo. July 9, 2024).......................23

*City of Lakewood v. Plain Dealer Publ'g Co.*,
    485 U.S. 750 (1988).......................................................................................................9

*City of Los Angeles v. Patel*,
    576 U.S. 409 (2015).......................................................................................................8

*Cmty. Hous. Improv. Progr. v. City of New York*,
59 F.4th 540 (2d Cir. 2023) .....................................................................................8

*Damato v. Jack Phelan Chevrolet Geo, Inc.*,
    927 F. Supp. 283 (N.D. Ill. 1996) .............................................................................16, 17

*Day v. Humana Ins. Co.*,
    335 F.R.D. 181 (N.D. Ill. 2020)...................................................................................20

iii

*Demos v. City of Indianapolis*,
   302 F.3d 698 (7th Cir. 2002) ...........................................................................7

*Downing v. Abbott Labs.*,
   No. 15-C-05921, 2019 WL 4213229 (N.D. Ill. Sept. 5, 2019) ...............................12

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ...........................................................................22, 23

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
   825 F.3d 149 (3d Cir. 2016) ...........................................................................8

*Garcia v. Complete Bldg. Maint. Co.*,
   No. 12-CV-4891, 2014 WL 652887 (N.D. Ill. Feb. 14, 2014) ...............................16

*Garris v. City of Los Angeles*,
   No. CV 17-1452 MWF, 2017 WL 10543666 (C.D. CA Nov. 7, 2017) ......................8

*Godinez v. Sullivan-Lackey*,
   352 Ill. App. 3d 87 (Ill. App. 5th Dist. ) .............................................................14

*Goodlet v. City of Chicago*,
   No. 22-C-570, 2023 WL 2499862 (N.D. Ill. Mar. 14, 2023) ...............................16

*Graoch Associates # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human*
   *Relations Comm'n*,
   508 F.3d 366 (6th Cir. 2007) .............................................................................13

*Harris v. Topco Associates, LLC*,
   538 F. Supp. 3d 826 (N.D. Ill. 2021) .................................................................18

*Havens Realty Corp. v. Coleman ("Havens")*,
   455 U.S. 363 (1982) ...........................................................................22, 23

*Hulon v. Fitzgerald Law Firm*,
   No. 24-cv-810, 2024 WL 5135810 (W.D. Wis. Dec. 17, 2024), ...........................3

*Hutchens v. Devasiachen*,
   No. 24-CV-00490, 2025 WL 692091 (N.D. Ill. Mar. 4, 2025).................................16

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*,
   920 F.3d 890 (2019).........................................................................................12, 19

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018).........................................................................................14

iv

*Jones v. City of Kansas City*,
No. 4:24-cv-00649-RK (W.D. Mo. Feb. 11, 2025) .............................................6, 7

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
634 F.3d 883 (7th Cir. 2011) .............................................................................20

*Keen v. Merck Sharp & Dohme Corp.*,
No. 15-cv-1178, 2015 WL 6123578 (N.D. Ill. Oct. 16, 2015) ..............................16

*Knapp v. Eagle Prop. Mgmt. Corp.*,
54 F.3d 1272 (7th Cir. 1995) ..................................................................... *passim*

*Salute v. Stratford Greens Garden Apts.*,
136 F.3d. 293 (2d Cir. 1998)...............................................................................19

*Legal Aid Chicago v. Hunter Properties, Inc.*,
No. 23-cv-4809, 2024 WL 4346615 (N.D. Ill. Sept. 30, 2024)............................23

*Make the Rd. New York v. Cuccinelli*,
419 F. Supp. 3d 647 (S.D.N.Y. 2019), ...............................................................22

*In re Marriage of Mitchell*,
692 N.E.2d 281 (Ill. 1998)..................................................................................14

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) .............................................................................2, 3

*McCladdie El v. United Airlines, Inc.*,
No. 24-CV-4385, 2025 WL 50641 (N.D. Ill. Jan. 8, 2025)..................................16

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) .............................................................................21

*Moore v. Chicago Park Dist.*,
978 N.E.2d 1050 (Ill. 2012)................................................................................14

*Mullen v. GLV, Inc.*,
488 F.Supp.3d 695 (N.D. Ill. 2020) ....................................................................18

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .............................................................................21

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
107 F.4th 415 (5th Cir. 2024) ..............................................................................9

*Nesbitt v. Draper & Kramer, Inc.*,
No. 08-C-2684, 2008 WL 4542942 (N.D. Ill. May 23, 2008)...........................5, 17

v

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
   840 F.3d 879 (7th Cir. 2016) ............................................................................10, 17

*People by James v. Commons West, LLC*,
   224 N.Y.S.3d 364 (N.Y. Sup. Ct. Dec. 11, 2024)..................................................6, 7

*Pillows v. Cook Cty. Recorder of Deeds Office*,
   No. 18-C- 7497, 2019 WL 2524149 (N.D. Ill. June 18, 2019)................................2

*Podgorski v. Liberty Mut. Grp. Inc.*,
   No. 16 C 5549, 2016 WL 7187265 (N.D. Ill. Dec. 12, 2016) ...............................18

*Pride v. City of Aurora*,
   No. 23-CV-00259, 2023 WL 3569130 (N.D. Ill. May 18, 2023)............................9

*Puffer v. Allstate Ins. Co.*,
   675 F.3d 709 (7th Cir. 2012) .............................................................................9, 10

*Ragsdale v. Turnock*,
   625 F. Supp. 1212 (N.D. Ill. 1985) .......................................................................11

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
   903 F.3d 415 (4th Cir. 2018) ...........................................................................12, 13

*Schneckenburger v. Securitas Sec. Services USA, Inc.*,
   No. 16-1018, 2016 WL 2642952 (C.D. Ill. May 9, 2016) ....................................16

*Shamim v. Siemens Indus., Inc.*,
   854 F. Supp. 2d 496 (N.D. Ill. 2012) ...................................................................16

*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ................................................................................18

*Sokoya v. 4343 Clarendon Condo Ass'n*,
   No. 96 C 5278, 1996 WL 699634 (N.D. Ill. Nov. 27, 1996)..................................4

*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
   17 F.4th 950 (9th Cir. 2021) .................................................................................13

*Swan v. Bd. of Educ. of City of Chicago*,
   No. 13-C-3624, 2013 WL 4401439 (N.D. Ill. Aug. 15, 2013) ..............................12

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ..................................................................................2

*Thomas v. JBS Green Bay, Inc.*,
   120 F. 4th 1335 (7th Cir. 2024) .............................................................................3

vi

*Torres v. Merck Sharp & Dohme Corp.*,
    255 F. Supp. 3d 826 (N.D. Ill. 2017) ...................................................................16

*Towns v. Peoples Gas Light & Coke Co.*,
    No. 23-CV-16316, 2024 WL 4590595 (N.D. Ill. Oct. 28, 2024) ...........................16

*Vanlaningham v. Campbell Soup Co.*,
    492 F. Supp. 3d 803 (S.D. Ill. 2020) ....................................................................18

*Vann v. Dolly, Inc.*,
    No. 18-C-4455, 2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ................................20

*Waicekauskas v. Burke*,
    336 Ill. App. 3d 436, 784 N.E.2d 280 (2002) .......................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................20

*Wash. State Grange, v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .................................................................................................8

*Wright v. Family Dollar, Inc.*,
    No. 10-C-4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) .............................21

**Statutes, Rules & Regulations**

24 C.F.R. § 982.158 ................................................................................................................7

24 C.F.R. § 982.405 ................................................................................................................7

775 ILCS 5/3-102 ...........................................................................................................15, 17

775 ILCS 5/8-111 .................................................................................................................16

Fed. R. Civ. P. 5.1 ..................................................................................................................5

Fed. R. Civ. P. 8 .....................................................................................................................2

Fed. R. Civ. P. 12 ..........................................................................................................11, 18

Fed. R. Civ. P. 23 .................................................................................................................20

Ill. Comp. Stat. Ann. 70 ........................................................................................................9

**Other Authorities**

S. REP. 105-21 (1997) ..........................................................................................................19

DMS_US.370688284.10

*Moore v. Mac Property Management LLC, et al.*,
Case No. 23-H-38 (CCHR Oct. 29, 2024) ........................................................................4, 5

U.S. Constitution, Fourth Amendment .................................................................. *passim*

viii

## INTRODUCTION

The key missteps of the Plaintiffs' Complaint are evidenced throughout their Response.[1] Plaintiffs have brought a series of complex claims tied to alleged "source of income" discrimination. The viability of their allegations hinge on a series of false, generalized assumptions and legal inaccuracies that Plaintiffs either miss or ignore. Faced with a myriad of legal shortfalls that Mac outlined in its Motion, Plaintiffs respond with faulty and unreliable legal analysis, and fall back on simply asking that the Court defer evaluation of the obvious inadequacies of their claims so Plaintiffs can proceed to burdensome and costly discovery. The Court should deny their requests. As the Plaintiffs' Response reveals, there are no substantive allegations showing actionable discrimination of any sort, and significant constitutional and statutory bars otherwise would preclude their claims even if any such facts existed that discovery might uncover. These cascading infirmities provide a host of independently dispositive reasons why the Court should grant Mac's Motion and dismiss Plaintiffs' Complaint.

## I. PLAINTIFFS DO NOT ALLEGE DISCRIMINATORY TREATMENT.

Plaintiffs' Response confirms they have not plausibly alleged an IHRA disparate treatment claim. *See* Mot. 11-17. The viability of this claim turns on the pleading standard Plaintiffs must satisfy when alleging discrimination based on their "*source* of income." Plaintiffs lose this argument because their claim rests on the false premise that SOI discrimination claims can proceed to discovery without alleging factual details showing how Mac treated them differently because of that protected trait, *i.e.,* their income *source*, rather than their income *amount*.

---

[1] For ease of reference, Mac refers to its Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint and to Strike Class Allegations (Dkt. 33) as "Motion," and Plaintiffs' Opposition to the Motion (Dkt. 37) as "Response." Previously defined terms in the Motion are incorporated by reference.

### A. Complex Discrimination Claims Require Explanatory Factual Allegations.

Plaintiffs' claim turns on a single legal conclusion repeated throughout their Complaint—that the listed rental prices Plaintiffs observed for units in Regents and 5252 were "within" their "budgets." *See* Mot. 12 n.8; Resp. 6. Plaintiffs argue that they are not required to present additional allegations that would plausibly show Mac engaged in actionable disparate treatment, assuring the Court that the "[d]etails" of their case will come later. Resp. at 5. But Rule 8's plausibility standard "protects defendants from having to undergo costly discovery unless a substantial case is brought against them." *Pillows v. Cook Cty. Recorder of Deeds Office*, 2019 WL 2524149, at *1 (N.D. Ill. June 18, 2019). The Court should decline Plaintiffs' request to send their claims to discovery based on a single threadbare allegation.

The Seventh Circuit has repeatedly held that to present "complex" discrimination liability theories, plaintiffs must allege well-pleaded facts to support those theories. *See, e.g.*, *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)) ("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected"). Plaintiffs' Response does not cite *McCauley*; instead, it nods to general principles espoused in inapposite cases and provides scant analysis actually addressing Mac's arguments. *Compare* Mot. 11-17, *with,* Resp. 5-6. Plaintiffs ultimately argue that their allegation that "[Mac] treated Plaintiffs differently because of their Voucher (i.e. source of income) … is plausible and Rule 8 requires nothing more." Resp. 5.

The primary case Plaintiffs cite, *Swanson v. Citibank, N.A.*, undermines their argument. In *Swanson*, the Seventh Circuit reversed a district court's dismissal of a racial discrimination claim against a mortgage company that allegedly undervalued the plaintiff's home. *Swanson*, 614 F.3d

2

at 403. The plaintiff had alleged a "straightforward" discrimination case, and, accordingly, the court found she could satisfy *Twombly/Iqbal* standards with basic discrimination allegations. *See id.* at 404. However, in contrast to a "straightforward" liability theory, the court noted that even in a non-complex employment discrimination case, a plaintiff must allege plausible factual details demonstrating they were otherwise "qualified" for jobs they were denied because of a protected trait. *Id.* Plaintiffs' Response completely ignores this part of *Swanson*, but it is on all fours with the complex discrimination theory they assert in this case. At a minimum, Plaintiffs' SOI disparate treatment claim requires allegations plausibly establishing that they were qualified to rent apartments at Regents and 5252. Mot. 13. They have not done so.

Plaintiffs also ignore *Swanson's* progeny limiting its holding to "uncomplicated" discrimination claims and dismissing inadequately alleged complex discrimination theories. In *McCauley,* the Seventh Circuit held that "[t]he required level of factual specificity rises with the complexity of the claim," explaining that *Swanson* applies only to "uncomplicated" discrimination cases. *See McCauley*, 671 F.3d at 616-17.[2] And courts in this District correctly dismiss discrimination claims for not meeting this requirement. *See, e.g.*, *Byrd v. McDonald's USA*, 2021 WL 2329369 (N.D. Ill. June 8, 2021) (applying *McCauley* and dismissing plaintiffs' complaint because it did not allege basic, plausible facts establishing an "intent" to discriminate); *Bankhead v. Wintrust Fin. Corp.*, 2023 WL 6290548, at *4 (N.D. Ill. Sept. 27, 2023) (dismissing

---

[2] Plaintiffs also cite *Thomas v. JBS Green Bay, Inc.*, 120 F. 4th 1335 (7th Cir. 2024) to support the assertion that they only need to "state a grievance" to maintain their claims. Resp. at 5. But *Thomas* reaffirms the same principle articulated in *Swanson*—"uncomplicated" discrimination theories require less factual allegations than "complex" claims. *See Hulon v. Fitzgerald Law Firm*, 2024 WL 5135810, at *2 (W.D. Wis. Dec. 17, 2024), *reconsideration denied* 2025 WL 104384 (W.D. Wis. Jan. 15, 2025) ("A bare-bones allegation of discrimination might be sufficient in some contexts. [citing *Thomas*] But it's not enough here.").

discriminating claim for insufficient allegations: "In contrast to *Swanson*, [plaintiff] has not pursued a straightforward individual claim based upon the loan officer's animus."); *see also* Mot. at 12. The Court must dismiss Plaintiffs' complex SOI disparate treatment claim here because it is not plausible under this requisite pleading standard.

**B.  Conclusory Allegations Regarding Plaintiffs' "Budgets" Are Insufficient.**

Plaintiffs' Complaint fails to allege, as it must, that Plaintiffs were otherwise qualified to rent the apartments at Regents or 5252. Indeed, the Response concedes this point, stating that the IHRA proscribes SOI discrimination against "an *otherwise qualified* tenant." Resp. 12. Plaintiffs argue that their repeated conclusory allegation that Regents and 5252 apartment listings were "within" their "Voucher budgets" adequately alleges they were otherwise qualified to rent. Resp. 5-6; *see* also Mot. 12, n.8; *id.* 11-17. The Court cannot reasonably infer Plaintiffs were financially qualified to rent in those two buildings based upon this allegation because the equally plausible inference is that their HCVP subsidies did *not* qualify them to rent those apartments. *See* Mot. at 13. By confirming this pleading prerequisite, the Response reveals Plaintiffs' improper artful pleading. Named Plaintiff, RyShenna Moore, previously presented the exact same allegations set forth in the Complaint to the City of Chicago's Commission on Human Relations (the "CCHR").[3] After an evidentiary investigation, the CCHR issued an order finding no substantial evidence because the investigation "revealed that [Moore] was not qualified to rent the subject apartments

---

[3] A copy of a CCHR's *Order Finding No Substantial Evidence* in the matter of *Moore v. Mac Property Management LLC, et al.*, Case No. 23-H-38 (CCHR Oct. 29, 2024) is attached hereto as Exhibit C ("CCHR Order"). The Court can take judicial notice of the CCHR Order. *See Avet v. Dart*, 2021 WL 5865715, at *4 (N.D. Ill. Dec. 10, 2021) (parties may attach documents to a motion to dismiss "to prevent parties from surviving a motion to dismiss by artful pleading[.]'); *Sokoya v. 4343 Clarendon Condo Ass'n*, 1996 WL 699634, at *2 (N.D. Ill. Nov. 27, 1996) (taking judicial notice of a Chicago Commission on Human Relations order); *see also Mitchell v. B-Way Corp.,* 2021 WL 83735, at *1, n.1 (N.D. Ill. Jan. 11, 2021) (taking judicial notice of an IDHR investigative report).

in that the CHA would not have approved the rent amounts for which the subject units were listed…. *As such, [Moore] was not qualified to rent the units*." CCHR Oder at 8 (emphasis added). This finding illustrates the Complaint's core infirmity and reveals the reason for Plaintiffs' ambiguous "qualification" allegations: Plaintiffs are unable to state they could afford to rent the units that are the subject of their claims.[4]

Ultimately, Plaintiffs' Response retreats to the legally insufficient claim that the Complaint is satisfactory because it "state[s] a grievance." Resp. 5. This is not the law. As set forth in Mac's Motion, property owners are authorized to consider applicants' financial ability when evaluating rental applications. Mot. 13.[5] Without allegations of financial viability establishing their qualification to rent, Plaintiffs have not stated a claim, and the Court must dismiss the Complaint for failing plausibly to allege Mac engaged in *actionable* discriminatory conduct.

## II.   THE IHRA VIOLATES THE FOURTH AMENDMENT.[6]

In the last year, two separate courts have found laws requiring landlords to participate in the HCVP to be facially unconstitutional. The laws in both cases were functionally equivalent to

---

[4] Plaintiffs alternatively nod to other alleged acts of disparate treatment set forth in the Complaint, but none of these allegations save their claim from dismissal. Resp. 6. Those other alleged acts—denial of applications, tours, *etc.*—still cannot constitute actionable discriminatory conduct without allegations that Plaintiffs were "otherwise qualified" to rent the subject apartments. *See* Resp. 12 ("[T]he IHRA prohibit[s] only [] *discrimination* against an *otherwise qualified* tenant.").

[5] Plaintiffs' Response misrepresents *Nesbitt v. Draper & Kramer, Inc.*, 2008 WL 4542942 (N.D. Ill. May 23, 2008), which Plaintiffs say holds "that a renter pleads discrimination with the [sole] allegation that, the amount of her rental voucher exceeded the amount of rent for the apartment." Resp. 7 (citation omitted). That is not *Nesbitt's* holding. The plaintiff in *Nesbitt* alleged the financial details regarding the source and amount of her income. *Nesbitt*, 2008 WL 4542942, at *1 (alleging "$850 per month" and "$1,050 per month" from government assistance programs). Plaintiffs' Complaint lacks comparable details.

[6] Plaintiffs argue the Court should strike Mac's constitutionality arguments because it failed to provide notice pursuant to Federal Rule of Civil Procedure 5.1(a) to the Court and the Illinois Attorney General. Resp. 9. Rule 5.1 requires a party questioning the constitutionality of a state statute to "promptly" file a notice identifying the issues raised, which is then served on the state attorney general. Fed. R. Civ. P. 5.1(a)(1)-(2). Mac has timely provided the required notice. *See* Dkt. 38. Moreover, contrary

Plaintiffs' proffered interpretation of the IHRA. And yet, Plaintiffs' Response substantively fails to acknowledge either holding. In *Jones v. City of Kansas City*, Case No. 4:24-cv-00649-RK (W.D. Mo. Feb. 11, 2025) ("Slip Op."), a federal district court enjoined enforcement of an SOI anti-discrimination ordinance as violative of the Fourth Amendment.[7] In *People by James v. Commons West, LLC*, 224 N.Y.S.3d 364 (N.Y. Sup. Ct. Dec. 11, 2024) ("*Commons West II*"), a New York state court similarly held that a state statute prohibiting discrimination against voucher holders was facially unconstitutional. Both *Jones* and *Commons West II* reached the same conclusion because the challenged law in each case compelled landlords to participate in the HCVP, and thereby consent to future administrative searches. *Commons West II*, 224 N.Y.S.3d at 372; *Jones*, Slip Op. at *7. Plaintiffs' Response ignores both *Jones* and *Commons West II* and sidesteps the Fourth Amendment issue with unavailing form over substance arguments.

Plaintiffs first argue that the IHRA does not facially implicate the Fourth Amendment because it does not independently reference the HCVP's mandatory search provisions. Resp. 13-14. This argument ignores what Plaintiffs assert the IHRA SOI provision does—force landlords to participate in every facet of the HCVP regulatory scheme. Mot. 19. In support of their argument, Plaintiffs cite *216 East 29th Street Trust v. City of New York*, No. 24-cv-00595 (ER), 2025 WL 315380 (S.D.N.Y. Jan. 28, 2025), an inapt case that held an as-applied challenge to a New York City housing law was moot under the *Younger* abstention doctrine.[8] Plaintiffs nonetheless rely on

---

to Plaintiffs' argument, Rule 5.1 specifically provides that "a party's failure to file and serve the notice, … does not forfeit a constitutional claim or defense that is otherwise timely asserted." Fed. R. Civ. P. 5.1(d).

[7] A copy of the decision in *Jones v. City of Kansas City*, Case No. 4:24-cv-00649-RK (W.D. Mo. Feb. 11, 2025) ("Slip Op.") is attached hereto as Exhibit D.

[8] The *216 East 29th Street Trust* opinion has been appealed. *See East 29th Street Trust v. City of New York*, No. 25-465 (2nd Cir. Feb. 26, 2025).

DMS_US.370688284.10

it to argue the Court should ignore the regulatory requirements of the HCVP in evaluating Mac's Motion because the IHRA's text does not specifically mention the HCVP search protocols that it incorporates. Resp. 13-15. The argument is a non-starter.

As Mac explained in its Motion, HUD regulations mandate the relevant provisions of the HAP contract that all property owners must accept, including its provisions requiring advance consents to warrantless searches. 24 C.F.R. §§ 982.405, 982.158(c). To the extent Plaintiffs' Response suggests the Court should ignore those regulations because they are not cited in the Complaint, Resp. 15, well-established law allows the Court to take notice of relevant federal regulations. *See, e.g.*, *Demos v. City of Indianapolis,* 302 F.3d 698, 706 (7th Cir. 2002) ("[A] district court can always rely on public statutes.").[9] Finally, the Court may consider the requirements of the HAP contract because they are an integral part of the regulatory regime that provides the subsidies upon which Plaintiffs base their claims. *See* Compl. ¶¶ 161-69; *Commons West II*, 224 N.Y.S.3d at 372 ("[A] landlord who is forced by the statute to participate in the Section 8 program would be compelled by the provisions of federal law to execute a HAP contract providing advance consent for nonconsensual searches."); *Jones*, Slip Op. at *6-7 ("The Court recognizes that the Ordinance does not explicitly mandate participation in the Section 8 program in any express language. However, taking the plain language of the provisions of the Ordinance together, the Court finds that the ultimate effect of the Ordinance is likely to mandate landlord participation in the Section 8 program."). Thus, nothing prevents the Court from considering all aspects of the HCVP in resolving Mac's Motion when Plaintiffs have selectively referenced only

---

[9] Moreover, as Mac argued in its Motion, and which Plaintiffs' Response does not contest, the Court may also take judicial notice of the CHA's Administrative Plan, which requires the HAP contract. *See* Mot. 5; Ex. A § 8-II; Housing Assistance Payments ("HAP") Contract, HUD Form No. 52641 (2023), Mot., Ex. B Part B §§ 3(e), 11.

7

certain characteristics of the program they believe support their case while ignoring others. *Compare* Resp. 15 (arguing that Mac cannot "force" HUD regulations and CHA forms into the record) *with* Resp. 10-11 (arguing that HUD regulations endorse SOI protections).

Plaintiffs next incorrectly frame Mac's argument as an "applied" challenge by raising other potential "applications" of the statute that do not require landlords to consent to warrantless searches, such as rental discrimination based on veterans' benefits or child support, Resp. 14. But critically, "applied" challenges and facial challenges to statutory "application" are distinct concepts. As the Supreme Court explained in *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015), a facial challenge is proper when the law is unconstitutional in all of its applications *for a particular group*. *Patel*, 576 U.S. at 418; *Cmty. Hous. Improv. Progr. v. City of New York*, 59 F.4th 540, 548 (2d Cir. 2023) ("[W]hen the Supreme Court [in *Patel*] referenced 'the group for whom the law is a restriction,' it meant those to whom the law *actually applies*, not those for whom it has no plausible application—that is, those for whom the law is 'irrelevant.'") (emphasis added); *see also Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 168 (3d Cir. 2016) (other examples of searches "are irrelevant" when they "do not involve actual applications of the statute.") (citation omitted). The inquiry is thus whether Plaintiffs' reading of the IHRA's SOI provision facially violates the Fourth Amendment when application of the IHRA would necessarily *require all landlords to accept warrantless searches of their property and business records*. Other applications of the statute that do not implicate Fourth Amendment rights are irrelevant. *See, e.g.*, *Garris v. City of L.A.*, 2017 WL 10543666, *7 (C.D. Cal. Nov. 7, 2017) ("Once a court has culled all of the irrelevant scenarios, it must ask whether the 'law is unconstitutional in all of its applications.'") (citing *Wash. State Grange, v. Wash. State Repub. Party*, 552 U.S. 442, 449 (2008)) (emphasis added). To the extent the IHRA compels landlords' acceptance of *qualified*

8

HCVP beneficiaries into their buildings, it necessarily compels warrantless searches and is facially unconstitutional.

Similarly, to the extent the IHRA requires landlords' participation in the HCVP, the severability doctrine applies, which instructs courts to invalidate the facially unconstitutional application of the SOI provision without invalidating any lawful applications. Severability is a question of legislative intent, *see Pride v. City of Aurora*, 2023 WL 3569130, at *36 (N.D. Ill. May 18, 2023), and of state law. *City of Lakewood v. Plain Dealer Publishing Co.*, 485 U.S. 750, 772 (1988). Illinois' legislature has enacted a general severability provision, stating:

> If any provision of an Act … is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid application or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable, unless otherwise provided by the Act.

5 Ill. Comp. Stat. Ann. 70/1.31.[10]

Plaintiffs additionally assert that Mac does not have standing to raise a facial challenge because it already participates in the HCVP. Plaintiffs waive this argument by not developing it. *See Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012). Regardless, Mac has standing to challenge the facially unconstitutional statue because it has been sued for punitive damages under its provisions, and the law does not require Mac to engineer an as-applied challenge by violating the law to have its day in court. *See Nat'l Horsemen's Benevolent & Protect. Ass'n v. Black*, 107 F.4th 415, 427 (5th Cir. 2024) ("[C]ourts typically do not require a regulated party to 'bet the farm' by violating a regulation before allowing it to test its validity.").

---

[10] The test of severability is whether the "valid and invalid provisions of the Act are so mutually connected with and dependent on each other," that the legislature intended them as a whole and would not have passed the residue independently. *Waicekauskas v. Burke*, 784 N.E.2d 280, 285 (2002). Under this test, the Court can hold the IHRA's application to the HCVP unconstitutional without invalidating the IHRA.

9

Plaintiffs alternatively argue that if the IHRA mandates consent to future warrantless searches, and under Plaintiffs' interpretation, it does—such searches are "reasonable under the specific circumstances." Resp. 17-18. Plaintiffs' undeveloped argument fails because the commercial rental industry is not one of the specific industries that has been identified as a "pervasively regulated" industry. *Id.*[11] The Response fails to cite authority or explain why the housing rental industry would meet the high bar of a "pervasively regulated industry," and Plaintiffs' reference to *Owner-Operator Independent Drivers Association, Inc. v. U.S. Department of Transportation*, 840 F.3d 879 (7th Cir. 2016) is off target. There, the Seventh Circuit noted that the Supreme Court has "recognized four industries that fall within this [pervasively regulated industry] exception," to which it added commercial trucking. *See id.* at 893 (recognizing the liquor, firearms, mining, and automobile junkyards industries to be pervasively regulated but not, for example, hotels).

Plaintiffs also appear to suggest that the IHRA somehow is distinguishable from the litany of cases finding warrantless searches unconstitutional because those cases involved mandatory fines and/or criminal penalties. *See* Resp. 15. (citing cases). Plaintiffs fail to explain why the method of enforcement imposed is material. It isn't. The state cannot compel property owners to consent to warrantless searches, regardless of the penalty imposed.

Finally, Plaintiffs argue that "fact questions" regarding Mac's ongoing participation in the HCVP (and thus its prior consent to the program's search requirements) require the Court to evaluate Mac's objection as an "as-applied" challenge after unnecessary and expensive discovery regarding their past participation. Resp. 14-17. Again, Plaintiffs ignore the universal overreach of

---

[11] Again, Plaintiffs waive this argument by failing to explain it. *See Puffer*, 675 F.3d at 718.

10

a statute that would compel *all* property-owners to consent to warrantless searches of their property and business records, including any individual Mac-managed buildings (which are separate corporate entities) that do not currently rent to HCVP recipients. Moreover, prior participation in the program does not waive Mac's standing to raise a facial challenge to the statute. *See e.g.*, *Ragsdale v. Turnock*, 625 F. Supp. 1212, 1220 n.7 (N.D. Ill. 1985), *vacated on other grounds*, 841 F.2d 1358 (7th Cir. 1988) ("It is axiomatic that those to whom statutes and regulations apply may challenge the constitutionality of such statutes and regulations despite a period of compliance.").[12]

## III.    THE COMPLAINT FAILS TO ALLEGE DISPARATE IMPACT RACIAL DISCRIMINATION.

### A. Plaintiffs Fail To Plead Sufficient Facts To Establish Robust Causality.

The parties agree that *ICP*[13] provides the pleading standard for an FHA disparate impact claim, which requires Plaintiffs to allege well-pleaded facts plausibly showing that Mac's policies *caused* racial disparities. *See* Mot. 25-26; Resp. 18. The parties disagree whether Plaintiffs have satisfied that standard. Mac has the better argument, as the Complaint lacks necessary allegations plausibly showing Mac's policies caused a disproportionate impact on a protected group.

Plaintiffs wave off *Inclusive Communities'* causation element as "not a difficult inquiry," because Mac supposedly made the "deliberate choice to subject only a subset of its customers or constituents to a certain policy." Resp. 22. Contrary to Plaintiffs' assertions, *ICP*'s "robust

---

[12] In attempting to distinguish Mac from property owners that object to HCVP participation, Plaintiffs illustrate the precise reason the Seventh Circuit held that a similar SOI anti-discrimination provision should be read *not* to govern HCVP benefits. In *Knapp v. Eagle Property Management Corp.*, 54 F.3d 1272 (7th Cir. 1995), the court held that an interpretation of a SOI anti-discrimination provision that "could be read to encompass income only when offered by a voucher holder to an owner participating in the program" "would certainly interfere with the purpose of the program…." *Id.* at 1282-83.

[13] *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015) ("*ICP*").

causality requirement" must be plausibly pleaded to survive a Rule 12 motion, and Plaintiffs' Complaint does not. *Cf. ICP v. Lincoln Prop. Co.*, 920 F.3d 890, 902 (5th Cir. 2019) ("[A] disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."). Plaintiffs allege disparate impact to the detriment of all Chicago Voucher holders (the majority of whom happen to be Black), Resp. 3, but the Complaint fails to provide allegations to show any statistical disparity that was *caused* by Mac's alleged policies, nor could it. *See id.*

Plaintiffs contend they "do not need to plead (or prove) that Defendant caused a 'statistical incongruence in Hyde Park or Chicago,'" Resp. 22, but the *Reyes* decision they cite says the exact opposite. *Reyes* holds that plaintiffs "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion [complained of] because of their membership in a protected group." *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 425 (4th Cir. 2018); *see also Downing v. Abbott Labs.*, 2019 WL 4213229, at *14 (N.D. Ill. Sept. 5, 2019), *aff'd*, 48 F.4th 793 (7th Cir. 2022) (holding that plaintiff failed to allege a specific, actionable statistical disparity caused by defendant's alleged conduct); *Swan v. Bd. of Educ. of City of Chicago,* 2013 WL 4401439, at *19 (N.D. Ill. Aug. 15, 2013) (same).

The *Reyes* plaintiffs alleged that the defendant's policy requiring tenants to provide citizenship documentation directly caused more Latinos to be evicted compared to non-Latinos. *Reyes*, 903 F.3d at 429. The court found that this satisfied the robust causality requirement because the challenged policy "*was likely to cause* Latino tenants at the Park to be disproportionately subject to eviction compared to non-Latino tenants at the Park." *Id*. (emphasis added). The difference between *Reyes*' successful causal showing and Plaintiffs' deficient one is that defendant's policy in *Reyes* (the cause) resulted in Latinos disproportionately facing eviction (the

12

effect). In contrast, Plaintiffs simply declare that Mac's "policies and procedures" resulted in Black people facing disproportionate but indirect discrimination because Black people comprise 89 percent of all HCVP beneficiaries in Chicago. But absent the defendant's policy in *Reyes*, Latinos would not have suffered a disproportionate number of evictions, thereby providing a plausible causal chain under *ICP*. While here, the percentage of HCVP beneficiaries in Chicago who are Black *would still be 89 percent* with or without Mac's supposed policies. Plaintiffs' disparate impact theory in the Complaint thus is not viable.[14]

### B. The Complaint Lacks Sufficient Plausible Facts to Establish A *Prima Facie* Disparate Impact Claim.

Plaintiffs are adamant but incorrect in asserting that they do not need plausibly to allege the demographics of Regents or 5252 to plead a *prima facie* disparate impact case. Resp. 20. Their own cases say the opposite. *See* Resp. 20, 22 (citing *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 963 (9th Cir. 2021) ("When a defendant makes a deliberate choice to subject only a subset of its customers or constituents to a certain policy, it is proper to compare the demographics of that subset to the larger population of clients to which the policy does not apply to discern whether the decision to limit a policy to that subset produced any disproportionate effect."); *Graoch Associates #33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 378 (6th Cir. 2007) ("The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied.").

---

[14] Mac showed the illogic of Plaintiffs' theory by describing a hypothetical application of Plaintiffs' approach to HBCU students. Mot. 28. Tellingly, Plaintiffs' Response fails to acknowledge, let alone respond to that hypothetical.

Here, the Court must be able to compare the impact Mac's alleged policies had on Black HCVP beneficiaries in Regents or 5252 to a comparative population of non-HCVP beneficiary tenants who are Black at those same buildings. *See id.* at 378. Yet, the Complaint fails to provide any data regarding the tenants at Regents, the 5252, or even the tenant population of Hyde Park. *See* Mot. 28. This is fatal to their disparate impact claims. *See Sw. Fair Hous.*, 17 F.4th 950 at 960 (explaining Plaintiffs need to point to "correct comparative populations" in assessing the plausibility of a statistically based disparate-impact claim).

## IV. HOUSING SUBSIDIES ARE NOT INCOME.

The Response critiques Mac's evaluation of the IHRA's actual text. Resp. 7-8. When interpreting a statute, courts gleam legislative intent from its language, and only if the text is unclear and ambiguous does a court have an ability to depart from its plain meaning. *Moore v. Chicago Park Dist.*, 978 N.E.2d 1050, 1054 (Ill. 2012); *In re Marriage of Mitchell*, 692 N.E.2d 281, 283 (Ill. 1998) (courts look first to the statute's plain meaning before resorting to other aids of construction). Plaintiffs' Response ignores the plain and obvious meaning of the IHRA's SOI definition and instead jumps straight to legislative history and the construction of other statutes. Resp. 8. The plain meaning of IHRA's definition precludes the need for extrinsic evidence. Of course, this is the approach the Seventh Circuit used in evaluating a different but similar SOI definition in *Knapp. See* Mot. 17.

Applying the plain meaning rule to "source of income" and not reading Vouchers into its definition has the added benefit of avoiding the multiple constitutional bars outlined in Mac's Motion. Mot. 18-24. Plaintiffs' interpretation, in contrast, contravenes the statutory canon of constitutional avoidance. *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018) ("Under the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations,

14

a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."). Again, the Seventh Circuit recognized these principles in rejecting vouchers as a SOI in *Knapp*. Mot. 17. Finally, Plaintiffs cite *Godinez v.* Sullivan-Lackey, 815 N.E.2d 822 (Ill. 1st Dist. 2004), but that case is not persuasive as it is inconsistent with *Knapp*, and also evaluates the Chicago Fair Housing Ordinance, not the IHRA.

## V. PLAINTIFFS' ICFA CLAIM MUST BE DISMISSED.

### A. Plaintiffs' ICFA Claim Is Predicated on Legal Duties Created by the IHRA.

The IHRA preempts Plaintiffs' ICFA claim because it depends entirely on repackaged allegations that Mac discriminated against Plaintiffs in violation of the IHRA.[15] In their Response, Plaintiffs try to recast their ICFA claim as a "unfair practices" violation, or one that is based on conduct "substantially injurious to consumers." Resp. 28-30. The Court should reject this attempt to rebrand the Complaint's allegations because the IHRA preempts these alternative claims, too.

Plaintiffs first argue that Mac's alleged refusal to accept their applications or provide them tours was "unfair, entirely aside from violating public policy." Resp. 27. This argument misleads by ignoring that the IHRA also would prohibit this alleged conduct, just as it prohibits denials of rental applications, which Plaintiffs allege Mac did. *See* 775 ILCS 5/3-102(A)-(H).[16] Denials of tours, rental applications, and the like all concern "the subject of an alleged civil rights violation" encompassed by the IHRA and are thus subject to its preemption bar. Next, Plaintiffs wrongly assert that IHRA preemption is an affirmative defense that cannot be resolved by a motion to

---

[15] Across multiple Complaint paragraphs, Plaintiffs allege that Mac's purported IHRA violation additionally states an ICFA "public policy" violation. *See* Compl. ¶¶ 195, 197-199.

[16] Specifically, the IHRA SOI provision bans, *inter alia*: refusals to engage, discrimination in making available, alteration of terms, conditions or privileges, refusals to receive or accept offers, refusals to negotiate, representations that property is unavailable, refusals to permit inspections (*i.e.,* tours), and use of criteria / methods that subjects persons to unlawful discrimination. 775 ILCS 5/3-102(A)-(H).

dismiss. *See* Resp. 28. But courts routinely dismiss claims on IHRA preemption grounds. *See, e.g.*, *Towns v. Peoples Gas Light & Coke Co.*, 2024 WL 4590595, at *10 (N.D. Ill. Oct. 28, 2024) (dismissing parallel state law claim because the IHRA preempted it).[17]

Plaintiffs separately contend that IHRA preemption somehow exempts statutory claims. Resp. 29. This also is incorrect. The preemption bar reads: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D). Not surprisingly, courts have rejected this argument. *Torres v. Merck Sharp & Dohme Corp.,* 255 F. Supp. 3d 826, 832 n.7 (N.D. Ill. 2017) ("Nor does it matter, for the purposes of Human Rights Act preemption analysis, whether the proposed claim is a common law claim or a statutory claim."). IHRA preemption instead turns on whether the subject claims are based on an IHRA-created legal duties or civil rights. Plaintiffs' ICFA claim necessarily relies on Mac's alleged breach of SOI-related duties and rights conferred by the IHRA (*e.g.*, denials of housing, denials of tours, *etc.*), and therefore is barred. *See, e.g.*, *Hutchens v. Devasiachen,* 2025 WL 692091, at *7 (N.D. Ill. Mar. 4, 2025) (dismissing *statutory* claim because the allegations underlying the claim "only focus on retaliation related to civil rights violations" under the IHRA).[18]

---

[17] *See also, e.g.*, *McCladdie El v. United Airlines, Inc.*, 2025 WL 50641, at *3 (N.D. Ill. Jan. 8, 2025) (dismissing parallel religious discrimination and retaliation claims); *Shamim v. Siemens Indus.*, Inc., 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012) (dismissing parallel retaliation claims); *Goodlet v. City of Chicago*, 2023 WL 2499862, at *5 (N.D. Ill. Mar. 14, 2023) (dismissing preempted parallel state law claim).

[18] Plaintiffs' reading of the IHRA would remove statutes from its scope entirely because statutes would always be "otherwise provided by law." Case after case finding IHRA preemption of state statutes confirms Plaintiffs are wrong on this point. *See Keen v. Merck Sharp & Dohme Corp.*, 2015 WL 6123578, at *2 (N.D. Ill. Oct. 16, 2015) (dismissing statutory claim: "A claim under the Illinois Whistle Blower Act [IWA] is preempted by the IHRA when it is 'inextricably linked' to an alleged civil rights violation such that there is no independent basis for the action apart from the Act itself."); *Schneckenburger v. Securitas Sec. Services USA, Inc.*, 2016 WL 2642952, at *3 (C.D. Ill. May 9, 2016) ( "[T]he exclusive remedy provisions of the IHRA preempt a separate IWA claim."); *Garcia v. Complete Bldg. Maint. Co.*, 2014 WL 652887, at

16

Plaintiffs elsewhere assert that the "logic of [IHRA] preemption does not apply to housing claims," Resp. 29, but this argument is unexplained and fails regardless. Apparently according to Plaintiffs, Article 3 of the IHRA ("Real Estate Transactions") permits claimants to file lawsuits directly in court, and other IHRA claims, *e.g.*, employment (Article 2), consumer credit (Article 4), and public accommodation (Article 5), must first be filed with the Illinois Department of Human Rights. *See id.* (citing 775 ILCS 5/10-102). While true, the point is unclear but ultimately irrelevant—nothing in the IHRA's preemption bar is Article specific, and, tellingly, Plaintiffs cite no authority in support of this construction, which contradicts canons of statutory interpretation.[19]

Finally, Plaintiffs point to municipal and county SOI nondiscrimination ordinances and alternatively federal law, as "independent bas[es]" for their alleged ICFA claim based on a "public policy" violation. *See* Resp. 29. If Plaintiffs intend to pursue violations of these ordinances, however, they must do so in administrative forums. *See, e.g.*, Ex. C; *see also Nesbitt*, 2008 WL 4542942, at *3 (N.D. Ill. May 23, 2008) (Chicago ordinance does not "provide a right of action that plaintiffs can bring initially in state or federal court"). These ordinances, however, were expressly authorized by and/or co-extensive with the IHRA, so each necessarily concerns "the subject of an alleged civil rights violation." 775 Ill. Comp. Stat. 5/8-111(D). Finally, there is no actionable federal law on which to base a "public policy violation" because federal law does not

---

*8 (N.D. Ill. Feb. 14, 2014) (same); *Alexander v. Ne. Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008) (same); *Bell v. LaSalle Bank N.A.*, 2005 WL 43178, at *2 (N.D. Ill. Jan. 10, 2005) (same); *Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283, 292 (N.D. Ill. 1996) (plaintiff's claim under the Illinois Hate Crime Act was preempted by IHRA).

[19] Basic principles of statutory construction require courts to "construe statutes, not isolated provisions," *Owner-Operator Indep. Drivers Ass'n, Inc. v. United States Dep't of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016) (quoting *King v. Burwell*, 576 U.S. 473 (2015)), and to "interpret statutes as a symmetrical and coherent regulatory scheme," *Beeler v. Saul*, 977 F.3d 577, 585 (7th Cir. 2020). Plaintiffs' reading contradicts these principles.

17

prohibit SOI discrimination. *See id.* In sum, whether cast as a public policy, unfair practice, or conduct that is substantially injurious to consumers, Plaintiffs' ICFA claim remains preempted.

### B. Plaintiffs' Have Not Alleged an ICFA "Unfair Practices" Violation.

Even if the IHRA did not bar this claim, Plaintiffs do not allege a plausible basis for it. Plaintiffs assert Mac's conduct "essentially barred them from Hyde Park" because of their "unequal bargaining power." Resp. 27. The Complaint belies this assertion, reflecting Mac's provision of alternative housing choices in Hyde Park that Plaintiffs could afford. Resp. 3 (citing Compl. ¶¶ 96, 98, 106, 116-117, 131). Plaintiffs also fail to plead substantial injuries caused by Mac's alleged unfair actions by acknowledging that they all eventually found residences they could afford with their HCVP benefits. *See Mullen v. GLV, Inc.*, 488 F.Supp.3d 695, 712 (N.D. Ill. 2020) (dismissing plaintiff and class members who could have avoided injury by participating in other programs). Nor have Plaintiffs alleged "actual damages" proximately caused by Mac's conduct. Their pleaded injuries (leasing different apartments, travel expenses, increased rent, missed work, application fees, etc.) would have been incurred regardless of Mac's alleged actions. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 809 (S.D. Ill. 2020).

## VI. THE SUPREMACY CLAUSE BARS PLAINTIFFS' IHRA CLAIMS

In their Response, Plaintiffs contend that Supremacy Clause preemption is an affirmative defense, precluding dismissal under Rule 12. Resp. 9. Contrary to Plaintiffs' assertion, a Rule 12 preemption-based challenge is ripe when a complaint provides bases to find the claim preempted. *See Harris v. Topco Assocs.*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) ("Although preemption is an affirmative defense, the amended complaint reveals that preemption applies to the claims at hand here and so the Court may address it under Rule 12(b)(6)."); *Podgorski v. Liberty Mut. Grp.*

18

*Inc.*, No. 16 C 5549, 2016 WL 7187265, at *2 (N.D. Ill. Dec. 12, 2016) ("Whether a law is preempted is a question of law which a court may decide at the motion to dismiss stage."). Plaintiffs' interpretation of the IHRA impermissibly conflicts with the HCVP because it would coerce property owners' HCVP participation, creating a clear conflict with the voluntary nature of the program and frustrating the Congress' public policy objectives," Mot. 22.[20]

Plaintiffs assert the state statute merely adopts "more stringent regulations" applicable to federal law and advances the HVCP's goals by increasing affordable housing. Resp. 10. This contention is belied by Congress' actions to maintain the HCVP's voluntary participation status. As set forth in Mac's Motion, Congress repealed prior HCVP provisions mandating unqualified participation by landlords once they accepted an HCVP beneficiary for housing, because they "discourage[d] participation by private sector landlords" and caused reductions in the "supply of affordable housing." S. REP. 105-21, 36 (1997); *see* Mot. 23-24. Plaintiffs' alternative reading conflicts with this clearly expressed Congressional intent. Federal appellate courts have reached that same conclusion, as well. *See, e.g., Knapp*, 54 F.3d 1282 , *Salute v. Stratford Greens Garden Apts.*, 136 F.3d. 293, 300 (2d Cir. 1998); *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890 (5th Cir. 2019). Although not decided on constitutional grounds, these opinions support Mac's point that state laws cannot fundamentally alter Congress' determined balance of HCVP participation requirements.[21]

---

[20] Plaintiffs contend Mac's argument "makes no sense" because it cites the FHA rather than the United States Housing Act of 1937. Resp. 10. But preemption may be found when a state statute frustrates a federal legislative scheme and/or congressional purpose—whether found in one statute or several. *See also* Mot. 22.

[21] Ultimately, Plaintiffs' view is that voluntary participation in the HCVP is not a central tenet of the HCVP, relying on several state and out-of-circuit cases that have held that federal law does not preempt state and local laws approving property owners' HCVP participation. *See* Resp. at 11 (citing cases). But those cases are less forceful than Plaintiffs represent. For example, in *Austin Apt. Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 894 (W.D. Tex 2015), the court held that an ordinance potentially requiring participation in HCVP

19

## VII.    THE COURT SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS.

Mac moved to strike Plaintiffs' class allegations because the Complaint's proposed class cannot be certified regardless of any facts Plaintiffs might adduce in discovery. Mot. 33-35. In their Response, Plaintiffs again insist Mac's argument should be deferred to allow them to engage in discovery. "It is well-settled that a motion to strike class allegations ... is an appropriate device to determine whether the case will proceed as a class action," *Day v. Humana Ins. Co.*, 335 F.R.D. 181, 197 (N.D. Ill. 2020), and courts regularly grant such motions where class allegations are "facially and inherently deficient," *Vann v. Dolly, Inc.*, 2020 WL 902831, at *2 (N.D. Ill. Feb. 25, 2020); *Day*, 335 F.R.D. at 198.

Plaintiffs offer no coherent explanation how their class claims could possibly satisfy Rule 23 standards. They concede their proposed four-year class (January 1, 2021 to the present) relies on ICFA because the IHRA did not prohibit SOI discrimination until 2023. *See* Resp. 30. But Plaintiffs seek "actual damages" for their ICFA claim, *see id.* at 28, even though this dooms their Rule 23(b)(2) injunctive class. The Supreme Court has expressly rejected certification of an injunctive class where "monetary relief is not incidental to the injunctive or declaratory relief," and additionally "expressed serious doubt about whether claims for monetary relief may be certified under [Rule 23(b)(2)]" under any circumstance. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 (7th Cir. 2011).

Plaintiffs also propose a temporally and geographically overbroad class—"[v]oucher holders who sought to rent an apartment from Mac Properties in Chicago any time on or after

---

was not preempted. But the court acknowledged its holding was in tension with *Knapp*, and *Knapp* remains binding authority in this district. *Austin Apartment Ass'n*, 89 F. Supp. 3d at 896; Mot. 23-24.

December 17, 2021." Compl. ¶149. As noted above, this proposed class predates enactment of the IHRA's SOI provision. *See supra*. It also encompasses a vast geographical scope that is unsupported by Complaint allegations that target only two high-rise apartment buildings in Hyde Park. Mot. 34. Yet, in Plaintiffs' view, their allegation that Mac "controls the leasing of its Hyde Park properties through a unified team of leasing agents and 'a set of portfolio-wide policies and practices'" opens discovery to a roving inquiry across all Mac-managed properties throughout Chicago for at least four years. Resp. 32.[22] They make this argument without explaining what "portfolio-wide" means, what other buildings are included in that "portfolio," or whether alleged discriminatory practices occurred at any other Mac-managed properties besides Regents or 5252. Plaintiffs bear the burden on a motion to strike to justify their proposed class. *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff"). They have not come close here.[23]

Plaintiffs also incorrectly contend that a class of individuals who "sought to rent" is an objectively identifiable group. Resp. 31 (an "objective action."). It is not. This proposed definition would include, for example, HCVP beneficiaries who (i) "sought" a Mac apartment but did not submit an application, (ii) later rescinded their applications, and/or (iii) were denied applications at one of Mac's buildings, but not others, which Plaintiffs concede occurred. *See* Resp. 3. This

---

[22] Plaintiffs actually seek discovery beyond the four-year period, raising a supposed "continuing violation" argument to target out-of-time conduct, even though it was not prohibited by the IHRA. Resp. at 6-7, 31.

[23] Plaintiffs err by invoking *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) to support a proposed class that would include members who have not suffered cognizable harm. Resp. at 31. The *Messner* Court emphasized that if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification." *Id.* at 824; *see also* Mot. 33 (citing cases).

21

definition would spin out countless individualized inquiries of what constitutes "seeking to rent" an apartment and when and where that occurred. *See Mullins v. Direct Digital, LLC,* 795 F.3d 654, 660 (7th Cir. 2015) ("[T]o avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way.").

## VIII.  HOPE LACKS ARTICLE III STANDING.

Plaintiffs misread the essential caselaw on  organizational standing. Most significantly, Plaintiffs err in interpreting *FDA v. Alliance for Hippocratic Medicine (*"*Alliance*"*)*, 602 U.S. 367 (2024) as reaffirming *Havens Realty Corp. v. Coleman ("Havens")*, 455 U.S. 363 (1982). Resp. 35-37, when *Alliance* articulated significant limitations on organizational standing. While the Court did not overrule *Havens*, it limited its application, noting *Havens* "unusual" nature and cautioning against "extending the *Havens* holding beyond its context." *Alliance*, 602 U.S. at 396. Plaintiffs nonetheless base their standing argument entirely on *Havens*, analogizing HOPE to the organizational plaintiff in that case, "HOME." Resp. 34-36.

In *Alliance,* the Court held that to have organizational standing, an advocacy group must allege a perceptible, real and measurable injury that does not arise out of the same work the organization regularly performs. 602 U.S. at 395-396. This undermines HOPE's path to standing through *Havens*, including because unlike HOME, which alleged that the defendant's actions caused it to expend greater resources and engage in new work that impaired its core function, thereby impairing its mission, *see Havens*, 455 U.S. at 379, HOPE does not allege Mac's actions injured its ability to perform core services. Rather HOPE alleges that Mac's actions caused it to perform the same services that were already part of its mission. *See* Compl. ¶ 16 (describing HOPE's mission as providing "activities and programs, including education and outreach, client services, public policy initiatives, training advocacy and investigation and referral of complaints

concerning fair housing violations"); *id.* at ¶ 141. The resources HOPE allocated to this mission-related work cannot constitute an Article III injury, however, because standing exists only when a defendant's alleged acts force an organizational plaintiff to divert its resources to new services or incur separate, additional costs, not where the organization existed to perform the work at issue. *See Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647, 657 (S.D.N.Y. 2019), *aff'd as modified* (citations omitted); *see also N. Y. v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42 (2d Cir. 2020) (collecting comparative organizational standing cases); *Citizens Proj. v. City of Colorado Springs,* , 2024 WL 3345229, at *6 (D. Colo. July 9, 2024) (similar). Thus, while HOPE alleges that "the more time it had to spend on [Mac's alleged] discrimination, the less resources it had available for other activities," Compl. ¶¶ 138-148, this alleged allocation does not itself infer a cognizable injury under Article III.

Instead, HOPE must allege that Mac's conduct has "perceptibly impair[ed]" its mission. *Havens*, 455 U.S. at 395. In *Alliance*, the court noted that the *Havens* plaintiff's standing claim was "not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer" because in that example, the manufacturer would have "directly affected and interfered" with the retailer's "core business activities." *Alliance*, 602 U.S. at 395. That is not the case here. Building on the *Alliance* analogy, HOPE's standing claim is more akin to *Consumer Reports*™ conducting market diligence on those same goods.

The shortcomings in HOPE's standing allegations are substantially identical to what the court found insufficient in *Legal Aid Chicago v. Hunter Properties, Inc.* ("*Hunter Properties*"), 2024 WL 4346615 (N.D. Ill. Sept. 30, 2024); *see* Mot. 38-39. In their Response, Plaintiffs take issue with Mac's use of *Hunter Properties*, incorrectly characterizing the decision as vacated. That is incorrect. The *Hunter Properties* opinion *has not been vacated* and remains good—and

23

persuasive—law. In particular, following the court's entry of a final judgment dismissing the plaintiff's complaint, *id*. at Dkt. 49 ("Judgment"), the plaintiff moved the court to amend the judgment and grant the plaintiff leave to file an amended complaint. *Id.* at Dkt. 50 ("Mot. to Alter or Amend the Judgment and for Leave to File First Amended Complaint"). The Court granted the motion, holding that "*[t]he judgment* (Dkt. No. [49]) is hereby vacated." *Id.* at Dkt. 52 (emphasis added). Because the court did not vacate the opinion preceding the judgment, Dkt. 48, the decision and its persuasive reasoning remains on the books, and evidences why HOPE lacks standing in this case.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint.

Dated: April 18, 2025

Respectfully submitted,

*/s/ Joel M. Hammerman*

DMS_US.370688284.10

Joel M. Hammerman
Joshua P. Mahoney
Tiffany Kamara Nwosu
Naomi Duru
FAEGRE DRINKER BIDDLE & REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000
joel.hammerman@faegredrinker.com
josh.mahoney@faegredrinker.com
kamara.nwosu@faegredrinker.com
naomi.duru@faegredrinker.com

*Counsel for Mac Property Management, LLC*

25

## **CERTIFICATE OF SERVICE**

I, Joel Hammerman, certify that on April 18, 2025, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants who had filed appearances in this case.


_/s/ Joel M. Hammerman_
Joel M. Hammerman

26