**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RySheena Moore, Cadeidga Coleman, Janishia Fleming, and Sheliah Ayanwale, on behalf of themselves and all others similarly situated, and H.O.P.E., Inc., d/b/a HOPE Fair Housing Center, | ) ) ) ) ) | Case No. 24-cv-12912 |
| Plaintiffs, | ) ) | Hon. April M. Perry |
| v. | ) ) | |
| Mac Property Management, LLC, d/b/a Mac Properties, | ) ) ) | **JURY DEMANDED** |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF MAC PROPERTIES'**
**RULE 12(C) MOTION REGARDING PLAINTIFF MOORE'S**
**CLAIMS AND MOTION TO STRIKE PLAINTIFFS' AMENDED CLASS**

## **TABLE OF AUTHORITIES**

**Cases**

*Alhassid v. Bank of Am.,*
    *N.A.*, 307 F.R.D. 684 (S.D. Fla. 2015)................................................................13

*Alqaq v. CitiMortgage, Inc.*,
    2014 WL 1689685 (N.D. Ill. Apr. 29, 2014)........................................................9

*Amchen Prod., Inc. v. Windsor,*
    521 U.S. 591, 626 (1997)........................................................................................11

*Arango v. Work & Well, Inc.*,
    2012 WL 3023338 (N.D. Ill. July 24, 2012) ........................................................9

*Bergal v. Roth*,
    2020 WL 10233008 (N.D. Ill. April 15, 2020) ....................................................19

*Bieniek v. Cent. States, Se. & Sw. Areas [&] Pens. Funds*,
    2023 WL 4473018 (N.D. Ill. July 11, 2023) ......................................................13

*Bolden v. Walsh Const. Co.*,
    688 F.3d 893 (7th Cir. 2012)................................................................................13

*Campbell v. Nat'l R.R. Passeng. Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018)......................................................................13

*Chicago Teacher's Union, Local No. 1 v. Bd. Of Educ. Of City of Chicago,*
    797 F.3d 426 (7th Cir. 2015)..........................................................................14, 15

*Connectors Realty Group Corp. v. State Farm Fire & Cas. Co.*,
    2021 WL 1143513 (N.D. Ill. Mar. 25, 2021) ....................................................17

*Cook County v. MidCon Corp.*,
    574 F. Supp. 902 (N.D. Ill. 1983) ......................................................................24

*Czajkowski v. City of Chicago*,
    Ill., 810 F. Supp. 1428 (N.D. Ill. 1992) ..............................................................20

*Dexia Credit Local v. Rogan*,
    629 F.3d 612 (7th Cir. 2010)................................................................................23

*Dookeran v. Cnty. of Cook*,
    2013 IL App (1st) 111095 ....................................................................................23

*East Food & Liquor, Inc. v. United States*,
    50 F.3d 1405 (7th Cir. 1995)................................................................................20

*Ellis v. Elgin Riverboat Resort*,
    217 F.R.D. 415 (N.D. Ill. 2003) ........................................................................... 11

*Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, Inc.,
    2011 WL 4381912 (D.N.D. Sept. 20, 2011) ...................................................... 12

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .............................................................................................. 11

*Genenbacher v. CenturyTel Fiber Co. II*,
    244 F.R.D. 485 (C.D. Ill. 2007) .......................................................................... 13

*Gorski v. Troy*,
    929 F.2d 1183 (7th Cir. 1991) ............................................................................. 24

*Hamilton v. O'Connor Chevrolet, Inc.*,
    2006 WL 1697171 (N.D. Ill. June 12, 2006) ...................................................... 16

*Hill v. Wells Fargo Bank, N.A.*,
    946 F. Supp. 2d 817 (N.D. Ill. 2013) .................................................................... 5

*Howard v. Cook Cty. Sheriff's Office*,
    989 F.3d 587 (7th Cir. 2021) ........................................................................ 10, 11

*Ill. Health Maint. Org. Guar. Ass'n v. Department of Ins.*,
    372 Ill. App. 3d 24 (1st Dist. 2007) .................................................................... 23

*In re Fluidmaster, Inc. Prod. Liab. Litig.*,
    2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ..................................................... 16

*In re Wells Fargo Mortg. Discrim. Litig.*,
    2025 WL 2223432 (N.D. Cal. Aug. 5, 2025) ...................................................... 10

*Inter'l Ass'n of Firefighters Local No. 23 v. City of East St. Louis*,
    213 Ill. App. 3d 91 (5th Dist. 1991) ................................................................... 24

*Jacks v. DirectSat USA, LLC*,
    118 F.4th 888 (7th Cir. 2024) .............................................................................. 16

*Jamie S. v. Milwaukee Pub. Sch.*,
    668 F.3d 481 (7th Cir. 2012) ............................................................................... 10

*Jefferson v. Ingersoll Int'l Inc.*,
    195 F.3d 894 (7th Cir. 1999) ............................................................................... 14

*Johnson v. Oystacher*,
    2019 WL 4749913 (N.D. Ill. Sept. 30, 2019) ..................................................... 22

*Lemon v. Int'l Union of Operat. Eng'rs, Loc. No. 139, AFL-CIO,*
　　216 F.3d 577 (7th Cir. 2000) .................................................................................. 15

*Looper Maint. Serv. Inc. v. City of Indianapolis,*
　　197 F.3d 908 (7th Cir. 1999) .................................................................................. 24

*Messner v. Northshore Univ. HealthSystem,*
　　669 F.3d 802 (7th Cir. 2012) ................................................................... 12, 16, 17

*Milwaukee Police Ass'n v. Flynn,*
　　863 F.3d 636 (7th Cir. 2017) .................................................................................. 19

*Morgan v. Highland Heights of Kentucky, LP,*
　　2013 WL 6909960 (E.D. Ky. Dec. 31, 2013) ......................................................... 25

*Murdock-Alexander v. Tempsnow Emp.,*
　　2016 WL 6833961 (N.D. Ill. Nov. 21, 2016) ............................................................ 8

*Nelson v. Jefferson County, Ky.,*
　　863 F.2d 18 (6th Cir. 1988) .................................................................................... 20

*O'Rourke v. Access Health, Inc.,*
　　282 Ill. App. 3d 394 (1st Dist. 1996) ..................................................................... 23

*Ortega v. Holder,*
　　2010 WL 4625580 (N.D. Ill. Nov. 5, 2010) ........................................................... 19

*Oxford Invs., L.P. v. City of Philadelphia,*
　　21 F. Supp. 3d 442 (E.D. Pa. 2014) ....................................................................... 25

*Phillips Petroleum Co. v. Shutts,*
　　472 U.S. 797 (1985) ................................................................................................ 15

*Phillips v. Sheriff of Cook Cty.,*
　　828 F.3d 541 (7th Cir. 2016) .................................................................................... 8

*Pruitt v. City of Chic.,*
　　2004 WL 1146110 (N.D. Ill. May 20, 2004) .......................................................... 17

*Puffer v. Allstate Ins. Co.,*
　　255 F.R.D. 450 (N.D. Ill. 2009) ............................................................................. 12

*Randall v. Rolls-Royce Corp.,*
　　637 F.3d 818 (7th Cir. 2011) .................................................................................. 15

*Reed v. AMAX Coal Co.,*
　　971 F.2d 1295 (7th Cir. 1992) ........................................................................... 20, 21

*Scherr v. Marriott Int'l, Inc.*,
    703 F.3d 1069 (7th Cir. 2013) ............................................................................... 5

*Semenko v. Wendy's Int'l, Inc.*,
    2013 WL 1568407 (W.D. Pa. Apr. 12, 2013) .................................................... 10

*Smith v. City of Chicago*,
    340 F.R.D. 262 (N.D. Ill. 2021) ......................................................................... 17

*Sokoya v. 4343 Clarendon Condo Ass'n*,
    1996 WL 699634 (N.D. Ill. Nov. 27, 1996) ....................................................... 19

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ............................................................................... 11

*State Bldg. Venture v. O'Donnell*,
    239 Ill.2d 151 (2010) ...........................................................................................23

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*,
    576 U.S. 519 (2015) .............................................................................................. 9

*Tyus v. Urb. Search Mgmt.*,
    102 F.3d 256 (7th Cir. 1996) ............................................................................... 15

*United States v. Utah Constr. & Mining Co.*,
    384 U.S. 394 (1966) .......................................................................................19, 21

*United States v. Wood*,
    925 F.2d 1580 (7th Cir. 1991) ............................................................................ 19

*University of Tennessee v. Elliott*,
    478 U.S. 788 (1986) ............................................................................................ 19

*Van v. Ford Motor Co.*,
    332 F.R.D. 249 (N.D. Ill. 2019) ........................................................................... 9

*Vann v. Dolly, Inc.*,
    2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ........................................................ 8

*Wallace v. Chicago Hous. Auth.*,
    321 F. Supp. 2d 968 (N.D. Ill. 2004) ................................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................... passim

*Wilson v. Souchet*,
    168 F. Supp. 2d 860 (N.D. Ill. 2001) .................................................................23

*Wright v. Family Dollar, Inc.*,
    2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ........................................................ 8

*Yassan v. J.P. Morgan Chase & Co.*,
    708 F.3d 963 (7th Cir. 2013) ............................................................................... 19

*Yellow Cab. Co. v. City of Chicago*,
    938 F. Supp. 500 (N.D. Ill. 1996) ....................................................................... 21

**Statutes**

42 U.S.C. § 3602 ...........................................................................................................9, 24

42 U.S.C. § 3613 .............................................................................................................. 24

**Rules**

Fed. R. Civ. P. 23(c)(4) ................................................................................................... 16

**Treatises**

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 12:5 (6th ed. 2025) ....... 16

**Regulations**

CCHR Rules § 210.250 ..................................................................................................... 20

CCHR Rules § 210.292 ..................................................................................................... 20

CCHR Rules § 210.294 ..................................................................................................... 20

CCHR Rules § 220.120 ..................................................................................................... 20

CCHR Rules § 220.310 ..................................................................................................... 20

CCHR Rules § 220.330 ................................................................................................20, 21

CCHR Rules § 220.410 ..................................................................................................... 20

CCHR Rules § 250.110 ..................................................................................................... 20

CCHR Rules § 250.150 ..................................................................................................... 20

## INTRODUCTION

The First Amended Complaint ("FAC") scurrilously alleges Mac employs a "No-Vouchers" leasing policy at high-end high-rise apartment buildings in Chicago. This narrative is false. As Mac has advised the Court, it regularly rents to Housing Choice Voucher Program ("HCVP") beneficiaries at buildings that will support rent approved by the Chicago Housing Authority ("CHA"). Private owners, like those Mac represents, do not commit "discriminatory housing practices" under the Fair Housing Act ("FHA") or Illinois Human Rights Act ("IHRA") when they confirm that a prospective tenant's income will qualify her for a lease. Nor is a prospective lessee *injured by* a "discriminatory housing practice" if her Voucher-supported income was insufficient to rent the apartment of her choice. And, ultimately, those owners cannot be compelled to participate in the HCVP.

Nonetheless, Plaintiffs seek to represent a class encompassing all "Voucher holders" who "contacted" Mac about renting apartments at buildings allegedly "subject to Mac's *restrictive* policies regarding Voucher holders." *See* Dkt. 53, FAC ¶ 150. They assert twelve "common" class question, which they contend can be answered using "common evidence." *Id.* 153(a)-(l). They cannot. Plaintiffs ignore that each of their questions puts individual class member's "budgets" and the apartments they purportedly wanted to rent squarely in dispute. Common evidence cannot answer the question of whether Mac's supposed "policies" **caused** an apartment to be unavailable—*i.e.*, "restricted"—without first showing that a prospective class member had the ability to rent that apartment. In short, the Court cannot certify any class based on the allegations in the FAC because none would satisfy the required Rule 23(a) commonality test.

As alleged, any future class proceeding would require the adjudication of each class member's divergent evidentiary proffers, along with Mac's evidentiary rebuttals, just to determine

Mac's *liability* on each class member's claim. Rule 23 does not authorize certification when it would require a continuous parade of minitrials, but that is exactly what a certification of their alleged class would require. For example, the Plaintiffs' individual claims will require particularized evidence sufficient to establish at least the following facts: (1) whether each Plaintiff had an eligible Voucher when she "contacted" Mac; (2) the amount of her Voucher; (3) the apartment(s) she considered renting; (4) the *total* costs to rent that apartment (rent, utilities, and building service fees); (5) her financial qualifications; and (6) whether the CHA would have approved the Plaintiff's lease of the subject apartment. Mac's rebuttal evidence, in turn, will challenge each of these Plaintiff-specific showings with Plaintiff-specific evidence. Common evidence thus is not available to establish Mac's liability even across Plaintiffs' claims, dooming their ability to satisfy commonality under Rule 23(a) *for any class*.

Plaintiffs try to mask the need for these class-splintering individualized adjudications with a series of summary assertions. They allege, for example, that class membership "can be readily determined from records possessed and maintained by Mac Properties." *Id.* ¶ 160. This is patently false. Mac does not have records reflecting putative class members' Voucher subsidies—such information would need to be adduced from each putative class member or from another source. Similarly, Mac does not have records identifying the specific apartments that prospective class members would claim Mac unlawfully precluded them from renting. Perhaps most significantly, Mac does not have records that would show whether or not the CHA would then have approved leases for class members to rent those apartments.

The disparate array of compensatory damages Plaintiffs seek further eliminates the assertion that adjudicating their claims would provide any "common" answers in a class proceeding. Plaintiffs seek damages for emotional distress, application fees, "increased rents,"

2

forfeited "Mobility Area" Vouchers, related stipends, and a diminished quality of life caused by Mac's alleged conduct. These are textbook compensatory and non-incidental damages, and Rule 23(b)(2) classes may not pursue them. Nor can the Court certify Plaintiffs' alleged "hybrid" class structure with multiple classes certified under different Rule 23 subsections, because each class would still need to satisfy Rule 23(a) requirements, and any Rule 23(c)(4) "issues class" would need to pass the far-more exacting "predominance" test under Rule 23(b)(3). Courts routinely reject Rule 23 certification bids for *any* class where individual class damages inquiries beget the extensive and individualized fact-finding excursions like those Plaintiffs put in dispute here.

The Court must also strike the class allegations because the class minitrials that Mac wins would resolve nothing. That is because Plaintiffs' proposed class envisions a "heads-we-win, tails-Mac-loses" proceeding—a "*failsafe*" class disallowed by longstanding Seventh Circuit precedent. *Failsafe* classes are putative classes in which class membership depends on the validity of each putative member's claim and thereby front-loads merits determinations before class membership can be determined. Here, class membership depends on whether Mac's alleged policies "*restricted*" their ability to rent an apartment at any building subject to a person's class claim. When a factfinder adjudicates that any "Voucher holder" was not financially qualified to lease a specified apartment, however, that person necessarily did not suffer an injury *caused by* Mac's allegedly "*restrictive* policies" and thus would fall outside the class definition and any resulting judgment.

The myriad of gating issues demonstrating why Plaintiffs' proposed class is not viable are evident in the failed allegations of Plaintiff RySheena Moore, which are separately barred by the doctrine of collateral estoppel. Moore already unsuccessfully adjudicated the facts underlying her FAC claims in a Chicago Commission on Human Relations ("CCHR") proceeding. *See* Ex. 1-1

("CCHR Order Finding No Substantial Evidence"), at 5-13. The CCHR found that Moore "*was not qualified* to rent" the apartments that are the subject of her FAC claims because "the *CHA would not have approved* the rent amounts for which the subject units were listed" *See* Ex. 1-1, at 12. (emphasis added). That adverse determination bars her claims in this case because Illinois law gives preclusive effect to this prior proceeding's findings.

Crucially, Moore's experience in the CCHR proceeding disproves Plaintiffs' contention that a class proceeding would resolve collective issues of fact. Rather, as Moore's claims demonstrate, the Court would need to conduct minitrials involving similar disputed and inherently individualized facts just to determine Mac's liability *for each class claim*. The Court would engage in countless more adjudications of varying factual issues bearing on Mac's liability, along with determinations of each class member's supposed damages, if their claims were to advance farther than Moore's. The Court should therefore grant Mac's Motion and strike Plaintiffs' amended class.

## **BACKGROUND**

### A. Procedural History

Mac moved to dismiss Plaintiffs' original complaint and to strike its class allegations.[1] The Court granted Mac's motion to strike because Plaintiffs' class definition (i) used an improper "subjective element," (ii) was overbroad in "geographical scope," and (iii) lacked a necessary "racial element" for Plaintiffs' disparate impact claims. *See* Dkt. 51, Sept. 4, 2025, Oral Ruling & Decision ("Tr."), at 22.[2] The Court also dismissed Plaintiffs' "source of income" ("SOI")

---

[1] Plaintiff HOPE does not seek to represent the alleged class in the FAC. *See* FAC ¶ 16. Thus, for the purposes of this Motion, "Plaintiffs" refers to the Individual Plaintiffs identified in the FAC.

[2] Plaintiffs' original class definition was, "Voucher holders who sought to rent an apartment from Mac Properties in Chicago any time on or after December 17, 2021." *See* Dkt. 1, ¶ 149.

discrimination claim which depended on the Court identifying Voucher recipients as a protected class under the IHRA. *Id.* at 19. As the Court explained, that claim "raise[d] very complex and novel issues of state law" as well as a potential constitutional issue to the extent the IHRA could be read to compel private landlords to participate in the HCVP, and with it, the Program's advance consent to warrantless searches. *See id.* at 17-19.

The Court denied Mac's motion with respect to Plaintiffs' state and federal racial discrimination claims, which rely on HCVP subsidies as a proxy for race, holding that Plaintiffs had adequately alleged that Mac's purported "no-voucher policy disproportionately impacted black renters." Tr. at 11. The Court cautioned, however, that Plaintiffs would need to adduce evidence in discovery of that alleged policy, or they would lose summary judgment. *Id.* at 15.

### B. The Individual Plaintiff Allegations[3]

Plaintiffs are four Black women who are HCVP beneficiaries and who allegedly contacted Mac about renting apartments in one of two high-rise buildings in Hyde Park, Regents Park ("Regents"), *see* FAC ¶¶ 93, 106, 116 (Moore, Coleman, and Fleming), and the 5252 Apartments ("5252"), *see id.* ¶ 125 (Ayanwale). Plaintiffs allege Mac declined to provide them tours of and/or allow them to apply to lease apartments in those buildings after learning of their reliance on HCVP subsidies. *See id.* ¶¶ 97-98, 108-11, 116, 127-34.

Each Plaintiff alleges they saw Mac apartments listed online "within" their "Voucher budgets." *See id.* ¶¶ 96, 106, 116 & 124. Only Ayanwale identifies the supposed value of her

---

[3] Despite the Court's prior ruling, the FAC largely sticks to Plaintiffs' original allegations. Thus, Mac only recounts the facts relevant to its current Motions and incorporates by reference the more fulsome recitation of the Plaintiffs' allegations set forth in its motion to dismiss the original complaint. *See* Dkt. 33. For purposes of both Motions, the Court accepts Plaintiffs' allegations as true. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-833 (N.D. Ill. 2013) (motion to strike); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (judgment on the pleadings).

Voucher, *see* FAC ¶¶ 126, 129, and only Moore identifies the actual apartments she wanted to tour/rent, *id.* ¶96. Plaintiffs generally allege Mac maintained "policies" to steer HCVP beneficiaries away from pursuing leases at upmarket, high-rise buildings toward lower quality buildings elsewhere in Hyde Park. *See, e.g.*, *id.* ¶ 5. Plaintiffs acknowledge that the Mac leasing agents tried to help them find other Mac-managed apartments in Hyde Park, but they rejected those alternative offerings because they desired apartments near the lake. *See id.* ¶¶ 97, 107, 117, 132. Hyde Park, according to Plaintiffs, is a singularly attractive Chicago neighborhood because of its affluence and low crime rates. FAC ¶ 24. They allege that Hyde Park's qualities make it a "competitive rental housing market" with "rapidly rising housing costs," and that the number of apartments Mac manages or services in Hyde Park give it market power. *See, e.g.*, *id.* ¶¶ 30, 33.

Plaintiffs seek a myriad of compensatory damages related to Mac's alleged conduct. They seek damages for emotional distress, *id.* ¶¶ 105, 113, 122, 138; "higher" rents they paid to renew existing or obtain new leases, *id.* ¶ 105; and application, travel expenses and move-in fees, FAC ¶¶ 104, 114, 121, 137. Fleming additionally seeks reimbursement for a "$1,000 CHA Mobility Program stipend and months of [lost] Voucher benefits." *Id.* ¶ 122. Finally, Plaintiffs allege damages for apparent diminished quality of life. *Id.* ¶¶ 103, 115, 120, 138.

### C. Class Allegations

Plaintiffs purport to allege claims on behalf of themselves and a class of similarly situated individuals under Rule 23(b)(3)(2), which authorizes "final injunctive relief or corresponding declaratory relief" in cases where "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and under Rule 23(c)(4), which states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *Id.* ¶ 151. Plaintiffs purport to define their putative class as:

6

> Voucher holders who are Black and who contacted Mac properties about renting a Hyde Park area apartment in a building that was subject to Mac Properties' restrictive policies regarding Voucher holders on or after December 17, 2022.

FAC ¶ 150. They claim that "[t]he identities of all members of the class can be readily determined from records possessed and maintained by Mac Properties." *Id.* ¶ 160. They further purport to list a series of legal conclusions as their supposed "common" class questions. Plaintiffs claim common evidence will yield common answers to those questions. *Id.* ¶ 153. Among the questions Plaintiffs allege are whether "Mac Properties' policies and practices for Voucher holders" "*have a disparate impact* on Black renters," whether they "*violate the Fair Housing Act*," whether Mac "*knew and was warned*" that they "*violated the law*" but nonetheless engaged in unlawful discrimination, and whether Mac's "*brazen*" conduct warrants punitive damages. *See id.* ¶ 153(h)-(l) (emphasis added). Plaintiffs' other "common questions" include similar global legal inquiries couched as factual issues relating to whether Mac "*refuses to engage in real estate transactions with Voucher holders.*" FAC ¶ 153(a)-(g) (emphasis added).[4] Plaintiffs do not assert any common questions concerning whether the qualifications of their class, as a whole, made them eligible to lease at the buildings Mac allegedly denied them because of their HCVP subsidies. *See id.* ¶ 153.

### D. Moore's Proceeding Before the Chicago Commission on Human Rights

Among the Plaintiffs' FAC allegations are claims by RySheena Moore that Mac refused to show her rental units at Regents because she was a HCVP beneficiary. This is not the first venue in which Moore has made these allegations. Moore first presented her claims in an administrative proceeding before the CCHR. After reviewing multiple sources of evidence, that agency found

---

[4] This allegedly "common" class question seeks to answer whether Mac violated housing discrimination laws on a classwide basis by "steering Voucher holders," "lying about apartment availability," "refusing to show or provide tours of available apartments," "using a "minimum income" policy, charging "hidden fees," and/or "refusing to negotiate" monthly rent. *See id.* ¶ 153(a)-(g).

Moore's SOI discrimination allegations failed because the CHA never would have approved a lease for the apartments Moore claims she was unlawfully denied. Ex. 1-1, at 12.

## ARGUMENT

## I.  PLAINTIFFS DO NOT ALLEGE A CERTIFIABLE CLASS.

Rule 12(f) authorizes district courts to strike class allegations when they are "facially and inherently deficient," *Vann v. Dolly, Inc.*, 2020 WL 902831, at *2 (N.D. Ill. Feb. 25, 2020), as they are here. Courts "may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *see also Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) ("The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage.").

### A.  Plaintiffs' Alleged Class Does Not Satisfy Rule 23's "Commonality" Requirement Because Their Claims Are Inherently Individualized.

Rule 23(a)(2) authorizes class certification when there are "questions of law or fact common to [the] class" that supply the necessary "glue" to bind the class's claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 352 (2011). In *Dukes*, the Court emphasized that "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. at 350. Plaintiffs must therefore allege facts that show "a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350; *see Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550 (7th Cir. 2016) ("[A] prospective class must articulate at least one common question that will actually advance all of the class

8

members' claims."). Analysis of "commonality under Rule 23(a)(2) begins ... with the elements of the underlying cause of action.'" *Van v. Ford Motor Co.*, 332 F.R.D. 249, 273 (N.D. Ill. 2019) (cleaned up). A fair housing disparate impact claim requires an "aggrieved person" to identify a specific, facially neutral policy, and prove that the challenged policy causes a disproportionate impact on a protected class that is not justified by a "legitimate rationale." *See* 42 U.S.C. § 3602(i); *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 524 (2015).[5]

Plaintiffs assert that their class claims can be resolved by adjudicating twelve ostensibly "common" questions supposedly relevant to a putative class of "Voucher holders." *See* FAC ¶ 153(a)-(l). But each of these questions falsely assumes that the varying subsidies of "Voucher holders" (which they inaptly refer to as their "budgets") and how those subsidies could have been spent are homogeneous. They are not. Plaintiffs cannot prove Mac discriminated against all HCVP beneficiaries because each prospective class member must first prove that Mac's purported unlawful "policies" restricted them from renting apartments that they were otherwise qualified to rent. Courts do not hesitate to strike putative classes in discrimination cases where the alleged class incorporates a non-homogenous group trait with individualized liability burdens because it negates any "commonality" showing. *See, e.g., Alqaq v. CitiMortgage, Inc.*, 2014 WL 1689685, at *5 (N.D. Ill. Apr. 29, 2014) (striking class claims when "resolution of the issues in this case will require individual inquiry into each purported class member's circumstances"); *Arango v. Work & Well, Inc.*, 2012 WL 3023338, at *3 (N.D. Ill. July 24, 2012) (striking class claims when "it must be shown with respect to each class member that the purportedly illicit FMLA policy prevented the plaintiff's ongoing employment"); *Semenko v. Wendy's Int'l, Inc.*, 2013 WL 1568407, at *8

---

[5] Illinois courts look to federal law when addressing IHRA housing claims. *See Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 807-08 (N.D. Ill. 2011).

9

(W.D. Pa. Apr. 12, 2013) (Rule 23(a) "commonality" is often lacking in class discrimination cases because courts "must determine not just whether the employer acted improperly, but also whether class members are 'qualified'" before determining a defendant's classwide liability) (cleaned up).[6] The Court should strike the alleged class here for the same reasons.

The named Plaintiffs' allegations demonstrate how the supposed class claims lack the "glue" that a certification requires. *Dukes*, 564 U.S. at 352. Each Plaintiff allegedly contacted Mac about apartments they believed to be "within" their "Voucher budgets." *See* FAC ¶¶ 96, 106, 116 & 124. However, the FAC fails to provide details concerning the Plaintiffs' "budgets," the apartments (and listed rents) in which they were interested, whether the advertised rents were inclusive of utilities and building services fees, or, if not, what those were. In addition, the FAC fails to recognize that the CHA would have needed to approve any proposed lease subject to CHA-specific criteria. Significantly, none of Plaintiffs' common questions target any of these key liability issues, which would be implicated for each class claim. Adjudicating the import of these facts and the questions they raise would require intensive minitrials for these and the scores of other individualized inquiries required by Plaintiffs' claims.

Rule 23 does not support a class proceeding that includes these types of claim-by-claim adjudications for each class claim. *See, e.g.*, *Howard v. Cook Cty. Sheriff's Office,* 989 F.3d 587, 604-05 (7th Cir. 2021), (no commonality where claims were "fact intensive" and allegedly common policy did not "manifest[] in the same way" for all members of the class); *In re Wells Fargo Mortg. Discrim. Litig.*, 2025 WL 2223432, at *9 (N.D. Cal. Aug. 5, 2025) (denying class

---

[6] *See also, e.g.*, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (commonality requires that a putative class "share[s] some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claim") (emphasis added).

certification in FHA case in which there was no commonality to link together "hundreds of thousands of home loan decisions" in a way that produced a "common answer").

The fallacy of Plaintiffs' proposed class is further evident from RySheena Moore's prior experience alleging identical claims in another forum. As outlined below, before filing this lawsuit, Moore alleged the same exact facts in an administrative proceeding before the CCHR. After reviewing multiple evidentiary sources, the CCHR found Moore's SOI discrimination allegations failed because the CHA would not have approved of Moore leasing either apartment she claims Mac unlawfully withheld. Ex. 1-1, at 12. Like Moore, putative class members would each need to adduce evidence regarding their income qualifications and show that the CHA would have approved of whatever lease they requested. *See, e.g.*, *Howard*, 989 F.3d at 604 (reversing class certification on commonality grounds because "plaintiffs have not proven" that "class members will have had comparable experiences"). When a court "must consider numerous variables to resolve each class member's claim," the purpose and benefits of a class proceeding are "defeat[ed]." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 427 (N.D. Ill. 2003).

### B. Plaintiffs Cannot Satisfy Rule 23 "Typicality" Because Their Claims Rest on Dissimilar Allegations About Their Voucher Income.

The Court should also strike the FAC's class allegations because Plaintiffs cannot satisfy Rule 23(a)'s "typicality" standard, which requires "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011); *see also Amchen Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (together with commonality, typicality examines whether "the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence") (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Plaintiffs' amended class allegations lack this

11

necessary congruence because while Plaintiffs' race may be "typical" to that of the putative class, class members' HCVP eligibility and participation is atypical *even among the individual Plaintiffs*.

Tellingly, the FAC artfully pleads around identifying the Plaintiffs' Voucher "budgets" and/or interest in the specific apartments Mac allegedly restricted. Although the Plaintiffs claim they pursued apartments in two Mac-managed buildings, their class allegations purport to target at least seven additional high-rises. *See* FAC ¶¶ 35(a)-(b).[7] Plaintiffs presumably intend to extend their putative class to any HCVP beneficiaries who would have inquired about apartments in buildings allegedly subject to MAC's "restrictive policies." FAC ¶ 150. But, "[w]here, as here, a court would have to examine numerous individualized factors to determine the parameters of individual claims, the typicality requirement is not met." *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 469 (N.D. Ill. 2009); *see also Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt.*, Inc., 2011 WL 4381912, at *5 (D.N.D. Sept. 20, 2011) (the "fact-finder [would] have to make a case-by-case determination as to whether the Fair Housing Act was violated as to each [class] member" because "putative class members do not necessarily share the same injury" as the individual plaintiffs, or even between members of the putative class itself).

### C. Plaintiffs Allege an Improper "Failsafe" Class.

The Court also must strike Plaintiffs' amended putative class because it is a *failsafe* class, which is prohibited by well-established Seventh Circuit law. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). A *failsafe* class is an alleged class in which "whether a person qualifies as a member depends on whether the person has a valid claim." *Id.* Such classes are prohibited because, by definition, they "preclude[] the possibility of an adverse

---

[7] Despite their claims to the contrary, Mac does not actually manage all the buildings attributed to it in the FAC. Of course, for purposes of this motion, Mac adopts that erroneous allegation as true.

judgment against class members; the class members either win or are not in the class." *Genenbacher v. CenturyTel Fiber Co. II,* 244 F.R.D. 485, 488 (C.D. Ill. 2007).

Here, the FAC purports to define a putative class as all "Voucher holders who are Black and who contacted Mac Properties about renting a Hyde Park area apartment in a building that was *subject to Mac Properties restrictive policies regarding Voucher holders.*" FAC ¶ 150 (emphasis added). This definition is a classic *failsafe* class because class membership cannot be determined until the Court adjudicates which class members have valid claims. *See Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 694 (S.D. Fla. 2015) (a *failsafe* class "front-ends a merits determination" on liability because it is "essential element in class composition"). "Voucher holders" with insufficient funds or who did not qualify under CHA rules to rent an identified unit could not be injured by any "restrictive" policy and thus would fall outside Plaintiffs' putative class.

Courts have repeatedly rejected *failsafe* class definitions in racial discrimination cases for the same reasons the Court should reject the alleged class definition here. In *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 895 (7th Cir. 2012), for example, the Court reversed a district court's certification of a putative class where class membership included Black "persons who did not earn more 'because of their race,'" because it made it "impossible to determine who was in the class until the case ends," and if the defendant "should prevail on the merits, [it] would deprive the judgment of preclusive effect" because "any other former worker could file a new suit, given that the losing "class" lacked any members. *See also Bieniek v. Cent. States, Se. & Sw. Areas [&] Pens. Funds*, 2023 WL 4473018, at *5 (N.D. Ill. July 11, 2023), (striking an alleged *failsafe* class because it would include "employees who were denied a reasonable accommodation," which meant "people who state a failure-to-accommodate claim"); *Campbell v. Nat'l R.R. Passeng. Corp.*, 311 F. Supp. 3d 281, 314 (D.D.C. 2018) (striking four subclasses of different groups of Black workers

who were "discriminated against because of" their race and who were "exposed to a racially hostile work environment" because each proposed class required the court "to answer a critical question" of whether "an individual suffer[ed] racial discrimination" as a prerequisite to class membership).

### D. The Court Cannot Certify Any Rule 23 Class From the Face of the FAC.

Finally, Plaintiffs allege a Rule 23(b)(2) injunctive class and a Rule 23(c)(4) "issues class," neither of which can certified alone or in combination. While the Court retains discretion to identify a class based on a different Rule 23 subsection than the one alleged in a complaint, *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999), that does not help Plaintiffs because Rule 23 does not authorize certification of any kind in this case.

#### 1. The Court Cannot Certify An Injunctive Class Because Plaintiffs Seek Non-Incidental Compensatory Damages For Their Class Claims.

To start, the Court cannot certify a Rule 23(b)(2) injunctive class because that subsection only allows class damages that are "incidental" to the requested declaratory and injunctive relief. *See Dukes*, 564 U.S. at 360. The Seventh Circuit instructs that monetary relief is "incidental" only if "it appears that the calculation . . . will be mechanical, a formulation not for a trier of fact but for a computer program." *Chicago Teacher's Union, Local No. 1 v. Bd. Of Educ. Of City of Chicago*, 797 F.3d 426, 441 n.8 (7th Cir. 2015); *see also Jefferson*, 195 F.3d at 898 (monetary relief must be "tangential" to the requested injunctive relief).

In contravention of this principle, Plaintiffs seek an injunctive class while also alleging a cornucopia of individualized damages that the Court must adjudicate with Plaintiff-specific evidence.[8] Plaintiffs' claims for monetary damages, however, "predominate" over their injunctive

---

[8] Plaintiffs seek damages for, *inter alia*: emotional distress, FAC ¶¶ 105, 113, 122, 138; travel costs, *id.* ¶¶ 121, 137; application fees, *id.* ¶¶ 114, 121, 137; and lost Voucher stipends, *id.* ¶ 122.

14

relief request, or at least raise this "serious possibility," thereby precluding certification. *Dukes*, 564 U.S. at 363. In comparison to their alleged damages, Plaintiffs' injunctive relief here is too slight—they effectively seek an order directing Mac to "stop discriminating." *See* FAC, Prayer for Relief (f)-(g) ("Enjoin [Mac] from engaging in the foregoing illegal conduct now and in the future" and "[o]rder [Mac] to revise its policies and procedures to comply with the IHRA and FHA").

Nor could Plaintiffs' alleged damages be determined using classwide evidence, much less through an undifferentiated, "mechanical" formula that the Seventh Circuit requires for Rule 23(b)(2) certification. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 825 (7th Cir. 2011). In addition, these types of injunctive classes lack "opt out" rights and are non-certifiable when seeking compensatory damages because of due process concerns. *See Dukes*, 564 U.S. at 363 ([E]ven the "serious possibility" that monetary damages could predominate means the class should not be certified under 23(b)(2)) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)); *see also Lemon v. Int'l Union of Operat. Eng'rs, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000) (affirming denial of 23(b)(2) class because "each individual plaintiff . . . would need to show the magnitude of injury to determine compensatory damages"). Plaintiffs additionally seek punitive damages for their claims. *See* FAC, Prayer for Relief (k). Allegations purportedly supporting punitive damages will require the jury to determine if Mac acted "with reckless or callous disregard" or "intentional[ly] violated [] federal law" by adopting an unlawful restrictive policy. *See Tyus v. Urb. Search Mgmt.*, 102 F.3d 256, 266 (7th Cir. 1996). There is no mechanical approach to this inquiry, either. *See Chicago Teacher's Union*, 797 F.3d at 443.

### 2. The Court Cannot Certify Combined Rule 23 Classes.

The Court also cannot certify a "hybrid" class consisting of a separate Rule 23(b)(2) and Rule 23(c)(4) class, with the latter providing "that an action may be brought or maintained as a

15

class action with respect to particular issues" when appropriate. Fed. R. Civ. P. 23(c)(4). "Rule 23(c)(4) does not exempt class representatives from the threshold requirements of Rule 23(a)," *In re Fluidmaster, Inc. Prod. Liab. Litig.*, 2017 WL 1196990, at *49 (N.D. Ill. Mar. 31, 2017), however, and Seventh Circuit law additionally requires a showing "that common questions predominate in the resolution of the specific issue or issues" before certifying a class under that subsection. *See, e.g.*, *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 897 (7th Cir. 2024).

Plaintiffs do not come close to alleging Rule 23(a)'s "commonality" or "typicality" requirements for either an injunctive class or issues class. Because their alleged Rule 23(c)(4) would need to show that "questions of law or fact common to class members predominate over any questions affecting only individual members," it necessarily is not viable. *Dukes*, 564 U.S. at 350; *Messner*, 669 F.3d at 814 (citation omitted).[9] Ultimately, whether Plaintiffs' alleged "hybrid" class structure is possible depends on whether common evidence could prove Mac's liability. It cannot, and the Court must therefore grant Mac's Motion and strike the alleged class.

### E. Plaintiffs' Class Allegations Remain Facially Overbroad and Seek Remedies that Violate the Fourth Amendment.

Finally, the Court must strike Plaintiffs' alleged class because it is facially overbroad. A class cannot be maintained if it is "defined so broadly as to include many members who could not

---

[9] Predominance requires Plaintiffs to utilize a "common method" for determining individual damages, *e.g.*, mathematical formulae, representative proof, statistical extrapolation, or other means. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 12:5 (6th ed. 2025). But no common method is available to determine damages for intangible harms like emotional distress and others that Plaintiffs allege in the FAC; *see Hamilton v. O'Connor Chevrolet, Inc.*, 2006 WL 1697171, at *9–10 (N.D. Ill. June 12, 2006) (damages for "stress, concern, and anxiety" are a "highly plaintiff- and episode-specific endeavor" that "cut[] against any predominance finding").

16

bring a valid claim" because they "suffered no injury at the hands of the defendant." *Messner*, 669 F.3d at 825; *Smith v. City of Chicago*, 340 F.R.D. 262, 290 (N.D. Ill. 2021) (A class definition is overbroad if it "necessarily includes people who could not have been injured."). The Court struck Plaintiffs' original class for alleging a facially overbroad class relative to the "specific Hyde Park properties" underlying their claim allegations. *See* Dkt. 48, Tr. at 22-23. Plaintiffs' attempt to fix their class definition in the FAC highlights this same problem but does not fix it.

The FAC includes new allegations concerning Mac's alleged "income requirements" at buildings other than Regents or 5252, claiming that Mac "categorized the buildings in its portfolio and applied different income requirements for different categories of buildings." *See* FAC ¶ 51 (naming buildings). This allegation does nothing to cure the overbreadth of Plaintiffs' allegations because the FAC still lacks substantive allegations that Mac's allegedly discriminatory policies caused actual injuries related to those buildings. *Connectors Realty Group Corp. v. State Farm Fire & Cas. Co.*, 2021 WL 1143513 (N.D. Ill. Mar. 25, 2021), at *3 (striking class allegations because they "would capture individuals who have not suffered" the "harms" underlying plaintiffs' claims).There are no facts in the FAC suggesting Mac prohibited HCVP beneficiaries from leasing apartments in those buildings.[10] Absent such allegations, the Court cannot infer a common injury with any nexus to those buildings. *See Pruitt v. City of Chic.,* 2004 WL 1146110, at *4 (N.D. Ill. May 20, 2004) ("To allow Plaintiffs to certify a class to include employees who work for other

---

[10] The allegations pertaining to HOPE's alleged "investigation" do not help Plaintiffs' bid for class certification because that investigation similarly targeted just Regents and 5252. *See* FAC ¶¶ 68-77. Nor does their time-barred allegation that an anonymous Voucher holder was denied housing at the Algonquin Apartments because they do not allege Algonquin Apartments is an apartment subject to Mac's allegedly discriminatory "policies." *Compare* FAC ¶¶ 63-64, *with id.* ¶¶ 35, 51; *see Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 973–74 (N.D. Ill. 2004) (acts before the limitations period are only relevant to a disparate impact claim when the act was "included in the pattern of discriminatory conduct").

supervisors against whom there is no evidence or even allegations of harassment and to allow discovery pertaining to those supervisors would be to condone the ultimate fishing expedition."). Finally, the proposed class does not delineate between individuals who were able to rent the apartments of their choice and those whom Mac allegedly thwarted. Without such a distinction, Plaintiffs have again failed to plead a class of proper scope.

Further, certifying a class of "Voucher holders" who were denied apartments at these additional buildings raises the same constitutional issue that informed the Court's decision to dismiss Plaintiffs' state-law SOI discrimination claim. In requesting injunctive relief, Plaintiffs seek an order that would compel the subject buildings' property owners—which are not enrolled in the HCVP and are not defendants in this case—to accept Vouchers. That proposed remedy would compel each building owner—which are the contractual lessors to the buildings' tenants—to participate in the HCVP and thereby provide advanced consent to the program's warrantless searches. The racial discrimination claims in the FAC thus presents the same Fourth Amendment issue previously raised by Plaintiffs' state-law SOI discrimination claim in that injunctive relief would compel owners to sign HAP contracts authorizing the CHA, the U.S. Department of Housing & Urban Development and the U.S. Comptroller General "full and free" *and warrantless* "access to the contract unit and the premises," Dkt. 33-1, Ex. B ("HAP Contract"), at 244; 24 C.F.R. § 982.4(b); Dkt. 33-1, Ex. A ("CHA HCVP Admin. Plan"), at 147; 24 C.F.R. § 982.405, and "accounts and other records that are relevant to the HAP contract," Dkt. 33-1, Ex. B, at 244. 24 C.F.R. § 982.451(a)(1).[11]

---

[11] As Mac has told the Court, it presently rents approximately 20% of the apartments at Regents to lessees who rely on HCVP subsidies to pay their rents. *See* Dkt. 46, Joint Initial Status Rpt. at 1. While Regent's owner has consented to HCVP's rules, that authorization does not extend to other building-lessors that own the buildings managed by Mac.

## I.   MOORE IS COLLATERALLY ESTOPPED FROM RELITIGATING HER ALLEGATIONS.

A party may move for judgment on the pleadings after the pleadings close. *See* Fed. R. Civ. P. 12(c).  In addressing Rule 12(c) motions, courts "view the facts in the complaint in the light most favorable to the nonmovant." *Bergal v. Roth*, 2020 WL 10233008, at \*1 n.1 (N.D. Ill. April 15, 2020). Collateral estoppel, *i.e.*, "issue preclusion," is an affirmative defense under Federal Rule 8(c). "Dismissing a case on the basis of an affirmative defense is properly done under Rule 12(c)" in those instances in which facts establishing the defense are established in the pleadings or the public record. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013); *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (the court may "take judicial notice of matters in the public record") (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). This includes the CCHR's findings. *See Sokoya v. 4343 Clarendon Condo Ass'n*, 1996 WL 699634, at \*2 (N.D. Ill. Nov. 27, 1996) (taking judicial notice of CCHR records).

### A.   The CCHR Acted in a "Judicial Capacity" In Finding Moore Lacked Sufficient Income to Rent the Apartments That Underlie Her FAC Claims.

Federal law determines whether to give preclusive effect to factual findings from state and local administrative bodies when they act in a "judicial capacity and resolve[] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) (federal agencies); *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (state agencies). In assessing the "judicial capacity" character of state agency proceedings, courts consider a list of "safeguards" that were *available* in the prior proceeding—even if not all safeguards were present or utilized. *See Ortega v. Holder*, 2010 WL 4625580, at \*5 (N.D. Ill. Nov. 5, 2010) (procedural "safeguards" are satisfied so long as parties can take advantage of them); *Czajkowski v. City of Chicago*, Ill., 810 F. Supp. 1428,

19

1446 n.9 (N.D. Ill. 1992) ("It is not necessarily true that all these safeguards need to be available for an agency to be considered to be acting in a judicial capacity."). Those "judicial capacity" safeguards include: "(1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law," *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992).

Sufficient "safeguards" were present in Moore's CCHR proceeding. CCHR rules authorize parties to retain counsel. *See* CCHR Rules § 270.310. Whether a petitioner does so is immaterial. *See East Food & Liquor, Inc. v. United States*, 50 F.3d 1405, 1413 (7th Cir. 1995) ("judicial capacity" only requires the "opportunity" for representation). CCHR rules also allow parties to submit evidence, *see* CCHR Rules §§ 210.250(b), 210.294, which Moore did. The CCHR received documents and written and oral submissions from the parties, and additional documents from the CHA (which was not a party). Ex. 1-1, at 10-12. The CCHR's investigative officer submitted an initial report and allowed the parties to respond to it. Moore provided her reply through a follow-up interview with the investigator, which CCHR independently reviewed and incorporated into its Order. *See* Ex.1-1, at 12; CCHR Rules §§ 220.310, 220.330; § 210.292. The parties were allowed to raise objections to the CCHR's information requests and to receive a copy of the investigative file after the Order was issued. *See* CCHR Rules §§ 220.120(c), 220.410(a). The CCHR's Order could have been appealed to the CCHR, and from there to the Illinois courts. CCHR Rules §§ 250.110, 250.150. Collectively, these available safeguards establish the "judicial capacity" character of the CCHR's adjudicative findings contained in its ultimate Order. *See, e.g., Nelson v. Jefferson County, Ky.*, 863 F.2d 18, 19 (6th Cir. 1988) ("An administrative board acts in a judicial

20

capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and the parties are given an opportunity to seek court review of any adverse findings.").[12]

**B.** **CCHR "Allowed the Parties to Litigate" and Adjudicated the Disputed Issues of Fact That Were "Properly Before It."**

In short, Moore had the opportunity to litigate her allegations in the CCHR proceeding, which properly adjudicated disputed issues of fact that were relevant to her claim. *See Utah Constr. & Mining Co.*, 384 U.S. at 422; *Reed*, 971 F.2d at 1300. Moore's administrative complaint alleges that she was steered away from the two same units identified in the FAC.[13] Like the FAC, Moore alleged those units were priced within her budget.[14] Finally, Moore claimed in both the CCHR proceeding and the FAC that Mac refused to tour or rent to her[15] and steered her to other areas.[16]

---

[12] Moore did not receive a live hearing, but one could have been available had she successfully appealed CCHR's Order, which is dispositive. Instead, she abandoned her right to appeal and filed the same allegations raised in the CCHR proceeding in this case, which was filed less than two months after the CCHR Order issued. *See* CCHR Rules § 220.330(a) (hearings are authorized when CCHR finds that substantial evidence exists to support a claimant's complaint); *see Yellow Cab. Co. v. City of Chicago*, 938 F. Supp. 500, 502 (N.D. Ill. 1996) (a plaintiff "waive[s] [the] claim that it was not afforded pretrial discovery" by not seeking it); *compare* Ex. 1-1, *with* Dkt. 1 (Compl., filed Dec. 17, 2024).

[13] *Compare* FAC ¶ 96 ("Moore sent the leasing agent screenshots of two Regents Park apartment listings that were within her Voucher budget: Apartment N0804 (listed for $2,000) and Apartment N1109 (listed for $1,975)."), *with* Admin. Compl. ("Ex. 1-2"), at 16 (Moore "found two bedroom/two bath units within [her] budget (Unit N 0804 ($2,000) and Unit N 1109 ($1,975))" and "forwarded the units information to [a Mac leasing agent]").

[14] *Compare* FAC ¶ 94 ("When a Mac Properties leasing agent responded to Ms. Moore, she confirmed that she was looking for an apartment with rent up to or around $2,100 and mentioned her Voucher."), *with* Ex. 1-2, at 16 (Moore "disclosed that [she] was a Housing Choice Voucher holder" and told a Mac leasing agent her "budget was $2,000- $2,100 for a two-bedroom unit.").

[15] *Compare*, FAC ¶ 98 ("The Mac Properties leasing agent refused to show Ms. Moore the building or available apartments and refused to rent to Ms. Moore."), *with* Ex. 1-2, at 16 (A Mac leasing agent "refused to show and refused to rent [Moore] available units based on [her] source of income").

[16] *Compare,* FAC ¶ 99 ("Instead, the leasing agent only offered to show her the 'walk-ups' and sent Ms. Moore listings for older, low-rise apartment buildings farther from the lake and that lacked amenities."),

CCHR, as part of its investigation, obtained three sworn affidavits from the Mac agents who interacted with Moore regarding her interest in the Regents apartments. *See* Defendant Mac Properties Supporting Documentation ("Ex 1-4"), at 37-50. The parties, along with the CHA, provided additional evidence regarding Moore's actual "budget" and the costs to rent the two Regents apartments she identified. *See* Ex. 1-1, at 10-12. CCHR interviewed Moore multiple times, including after Mac provided its evidentiary rebuttal. *See id.* at 13. CCHR then made a factual finding that Moore's actual Voucher "budget" amount was $1,712.60 and that the monthly rents for the apartments she claimed were unlawfully restricted, in fact, exceed her Voucher "budget." *Id.* at 12. CCHR thus found that Moore "was not qualified to rent the subject apartments in that the CHA would not have approved the rent amounts for which the subject units were listed." *Id.* Further, it rejected Moore's factual contention that Mac agents steered her toward substandard apartment units. *Id.* at 13. Rather, the "evidence show[ed] that [Mac] attempted to show those rentals to [Moore] because they were within her purported budget." *Id.* at 13. Ultimately, the CCHR held that Moore had failed to support her contention that Mac "practice[s] the steering of tenants with HCVs into specific sections of the properties" it services. *Id.*

### C.    Illinois Law Gives Preclusive Effect to CCHR's Findings.

The CCHR's findings have preclusive effect in this case. An agency operating in a "judicial capacity" with appropriate procedural safeguards has already adversely adjudicated Moore's FAC allegations. The issue of whether to apply collateral estoppel to the CCHR's findings is determined under Illinois law, *see Johnson v. Oystacher*, 2019 WL 4749913, at *4 (N.D. Ill. Sept. 30, 2019),

_____

*with* Ex. 1-2, at 16 (Moore "believed that [a Mac leasing agent] steered [her] to other areas based on [her] source of income.").

22

which applies collateral estoppel to administrative agency findings if the proceedings before the agency were "adjudicatory, judicial, or quasi-judicial." *Dookeran v. Cnty. of Cook*, 2013 IL App (1st) 111095, ¶ 23 (citation omitted). Here, the CCHR proceeding was, at a minimum, "quasi-judicial" because "the parties [were] present, [could] participate, and [could] obtain records of the proceedings." *O'Rourke v. Access Health, Inc.*, 282 Ill. App. 3d 394, 401 (1st Dist. 1996); *see also Wilson v. Souchet*, 168 F. Supp. 2d 860, 866 (N.D. Ill. 2001) (holding that a CCHR proceeding is "adjudicatory" under Illinois law). "Where a decision of an administrative agency is not appealed, the decision is given collateral estoppel effect." *Ill. Health Maint. Org. Guar. Ass'n v. Department of Ins.*, 372 Ill. App. 3d 24, 43 (1st Dist. 2007).

The CCHR's proceeding also satisfies Illinois' three-part test for determining whether to give preclusive effect to a prior factual determination. That test requires that "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *See State Bldg. Venture v. O'Donnell*, 239 Ill.2d 151, 158 (2010). Moore was the complainant in both proceedings, both of which put in dispute whether her Voucher financially qualified her to rent the apartments she wanted. CCHR's findings constitute a "final judgment on the merits" because Moore had a right to, but chose to abandon her appeal. *See O'Donnell*, 239 Ill.2d at, 158; *O'Rourke*, 282 Ill.App.3d at 401.

Finally, it does not matter that Moore alleged an SOI disparate treatment claim in the CCHR proceeding and has alleged disparate impact claims in the FAC. *See, e.g.*, *Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010) ("Issue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the

prior judgment, *even if the issue recurs in the context of a different claim.*") (emphasis added); *Inter'l Ass'n of Firefighters Local No. 23 v. City of East St. Louis*, 213 Ill. App. 3d 91, 93 (5th Dist. 1991) (issue preclusion applies in "cases arising on different causes of action").

### D. Moore Cannot Prove Her FCA Claims Because She Is Not an Aggrieved Person.

The FHA confers subject-matter jurisdiction over a claim brought by an "aggrieved person" alleging a "discriminatory housing practice" as defined by the statute. *See* 42 U.S.C. § 3613. While the "aggrieved person" standard is given a broad construction, *see Gorski v. Troy*, 929 F.2d 1183, 1188 (7th Cir. 1991) (cleaned up), having an injury caused by a "discriminatory housing practice" remains essential to satisfy standing for FHA purposes. *See* 42 U.S.C. §§ 3613(a), 3602(i); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 911-12 (7th Cir. 1999) (a "discriminatory housing practice" is an act that is "unlawful under [the FHA]") (citing 42 U.S.C. § 3602(f)). When collateral estoppel rules preclude plaintiffs from establishing "that they were injured by reason of anything done by defendants," *Cook County v. MidCon Corp.*, 574 F. Supp. 902, 919 (N.D. Ill. 1983), they lose standing to assert new claims based on the same facts.

Moore alleges that Mac made particular apartments "unavailable" to her **because of** its allegedly discriminatory "policies." The CCHR already has found that Mac did not *cause* those apartments to be "unavailable." *See* Ex. 1-1, at 12 (finding Moore "was not qualified to rent the subject apartments in that the CHA would not have approved the rent amounts). Moreover, in light the CCHR's findings, Moore cannot allege an injury *caused* by Mac's alleged steering. The CCHR concluded that Mac "attempted to show those rentals to [Moore] because they were within her purported budget," and that it does not "practice the steering of tenants with HCVs into specific sections of the properties they own and operate." *Id.* at 13.

24

Mac is therefore entitled to judgment. *See, e.g.*, *Morgan v. Highland Heights of Kentucky, LP*, 2013 WL 6909960, at *1-3 (E.D. Ky. Dec. 31, 2013) (granting judgment on FHA claim on collateral estoppel grounds when the Kentucky Commission on Human Rights already determined there was "no probable cause" for racial discrimination); *Oxford Invs., L.P. v. City of Philadelphia*, 21 F. Supp. 3d 442, 453 (E.D. Pa. 2014) ("Precluded issues [were] necessary elements in . . . FHA claims, the ultimate effect of the preclusion requires dismissal.").

## CONCLUSION

For the reasons set forth above, the Court must grant judgment to Mac on Moore's claims and strike Plaintiffs' amended class.

Dated: November 25, 2025

/s/ Joshua Patrick Mahoney
Joel M. Hammerman
Joshua Patrick Mahoney
Tiffany Kamara Nwosu
Naomi Duru
FAEGRE DRINKER BIDDLE &
REATH LLP
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 212-6500
joel.hammerman@faegredrinker.com
josh.mahoney@faegredrinker.com
kamara.nwosu@faegredrinker.com
naomi.duru@faegredrinker.com

*Counsel for Defendant Mac Properties*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2025, I caused a copy of the foregoing document to be filed electronically with the Court's CM/ECF system and thereby served electronically upon all ECF-registered counsel of record.

*/s/   Joshua Patrick Mahoney      /*