# Exhibit 1

**CCHR Proceeding Records**

**Complainant Rysheena Moore v. Mac Property Management, LLC d/b/a Mac Properties, *et al.*, Case No. 23-H-38**

**Date Complaint Filed: April 10, 2023**
**Date of CCHR Order Finding No Substantial Substance: Oct. 29, 2024**

# Exhibit 1-1

# CCHR Order Finding No Substantial Substance



**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**
740 N. Sedgwick, Suite 400 Floor, Chicago, IL 60654
312/744-4111 (Voice), 312/744-1081 (Fax), 312/744-1088 (TDD)

**IN THE MATTER OF:**

Rysheena Moore,
**Complainant,**

**v.**

Mac Property Management LLC d/b/a Mac
Properties, Donell Chenault, and Salamatu
Labaran,
**Respondents.**

**Case No.:** 23-H-38

**Date Mailed:** October 29, 2024

**TO:**

Rysheena Moore

Chicago, IL 60605

Jillian S. Cole, Attorney
Taft Stettinius and Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601

## ORDER FINDING NO SUBSTANTIAL EVIDENCE

The Chicago Commission on Human Relations has determined that there is no substantial evidence of the ordinance violations alleged in this matter. Accordingly, the case is DISMISSED.

The enclosed Investigation Summary and Determination highlights evidence the Commission found relevant to its decision but does not necessarily describe all evidence received and reviewed. It states the reasoning of the Commission's senior staff who made the decision.

Parties or their attorneys may now inspect the investigation file pursuant to Rule 220.410. Requests must be made at least two business days before the requesting person wishes the service.

**Complainant may seek review of this order by filing and serving a "request for review" within 28 days of the date of mailing shown above, pursuant to Rule 250.110.** An optional form is available from the Commission. A request for review may not exceed ten pages without leave of the Commission and must clearly state that the party is seeking reconsideration or review. The request for review must be served on all other parties. It must state with specificity the reasons, evidence, or legal authority requiring reversal or modification of this dismissal order. Any newly discovered evidence must be provided with the request.

See the next page for the text of rules about file access and requests for review. Any requests for file access or communications about a request for review should be directed to Kristen Lee, Director of Compliance, 312-744-2861. Do not direct further communications about this case to any investigator.

CHICAGO COMMISSION ON HUMAN RELATIONS
Entered: October 18, 2024

**SELECTED RULES**
**Applicable After Findings of No Substantial Evidence**

*A full set of rules is available from the Commission or at www.chicago.org/cchr.*

## REQUEST FOR REVIEW

**Rule 250.110. Review of Dismissals.** A complainant seeking review of the full or partial dismissal of a complaint by the Commission or a hearing officer must file and serve a request for review within 28 days of the mailing of the dismissal order. The request must be served on all other parties and the hearing officer (if any). Leave may be granted to respond or reply.

**Rule 250.130(a). Content of a Request for Review.** A request for review must state with specificity the reasons, evidence, or legal authority requiring reversal or modification of the decision in question. The request may not exceed 10 pages without leave from the Commission and must clearly state that the party is seeking reconsideration or review. Any new testimonial or documentary evidence must be provided with the request.

**Rule 250.130(b). Grounds for a Request for Review.** Grounds for reversal or modification may include relevant evidence which is newly discovered and not available at the time of the original decision; new and dispositive legal precedent not available at the time of the original decision; a material misrepresentation, misstatement, or omission which was a basis for the decision; or a material error by the Commission or hearing officer. If a complaint was dismissed for failure to cooperate, the request for review must (1) establish good cause for the complainant's noncompliance, at the time required, with the requirement which was the basis for dismissal; and (2) include any missing material which was a basis for the dismissal or show good cause for not doing so.

**Rule 250.140. Grant or Denial of Request for Review.** For dismissal orders entered by the Commission, the Commission shall rule on any request for review. For dismissal orders entered by a hearing officer, the hearing officer shall rule on any request for review. The Board of Commissioners shall rule on any request for review submitted with objections to a hearing officer's recommended ruling. If granting a reversal or modification pursuant to a request for review, the order shall describe any further proceedings in the case.

## ACCESS TO INVESTIGATIVE FILES

**Rule 220.410(a). Access to Files: General Nondisclosure and Access by Parties.** Neither the Commission nor its staff shall disclose any information obtained in the course of investigation or mediation of a case except where otherwise required by law or intergovernmental agreement, or as ordered by a hearing officer pursuant to Reg. 240.370. However, after providing the Commission with notice of at least two business days, parties or their attorneys of record may inspect files pertaining to their own cases at any time after issuance of an order concluding the investigation process or dismissing the case in its entirety.
(1)      Notwithstanding the above, the Commission shall not allow parties to inspect internal memoranda, work papers, or notes generated by Commission staff or agents in the course of an investigation, or other materials reflecting the deliberative process, mental impressions, or legal theories and recommendations of the staff or agents of the Commission.
(2)      If a party files a written motion establishing good cause or if the Commission *sua sponte* determines that good cause exists, the Commission may require parties seeking access to an investigative file to comply with a protective order limiting use of the information to Commission or related state court proceedings and prohibiting other disclosure of information from the file.

**Rule 220.410(c). Access to Files: Copying Costs.** The Commission shall furnish copies of documents available for inspection at a charge not to exceed 20 cents per page plus any delivery costs. Copies shall not

be released to the requester until the Commission has received payment in full. A party may seek waiver of these charges pursuant to Section 270.600.

**Section 270.600. Waiver of Commission Fees.** A party may by written motion request that the Commission waive its fees for copies of Commission documents. The motion shall be granted only on submission of an affidavit or other statement under oath plus any additional documentation establishing by objective evidence that the requesting party is unable to pay the charges and that the copies sought are necessary for pursuit of the party's claims or defenses in a Commission case. If the party's attorney of record was obtained through a not-for-profit legal assistance provider, the attorney's certification that the provider has determined the party to be indigent is sufficient objective evidence of inability to pay.

4

**Case No.** 23-H-38



### City of Chicago
### COMMISSION ON HUMAN RELATIONS

### INVESTIGATION SUMMARY

| | |
|---|---|
| **Case Number** 23-H-38 | **Date of Determination** October 2024 |

**Complainant** Rysheena Moore

**Respondents** Mac Property Management LLC d/b/a Mac Properties, Donell Chenault, and Salamatu Labaran.[1]

**Type of Case** __Employment  X Housing  __Public Accommodation  __Credit  __Bonding

| CLAIM | BASIS | DETERMINATION |
|---|---|---|
| Refusal to Rent and Steering | Source of Income | No Substantial Evidence |

| | |
|---|---|
| **Date Complaint Filed** April 10, 2023 | **Date of Violation** February 22, 2023 |

### 1.    COMPLAINANT'S POSITION

Complainant, whose income derives in part from a Housing Choice Voucher (HCV) administered by the Chicago Housing Authority (CHA), alleges that Respondents refused to rent available apartments to her and subsequently steered her to other rental properties based on her source of income.

Complainant states that on February 13, 2023, she contacted the Regents Park apartment complex, located at 5035 S. East End Ave., in Chicago, through Regents Park's website and the Zillow.com website. Complainant states that she was interested in renting any available two-bedroom apartment at Regents Park. Complainant alleges that on February 13, Respondent Mac Properties' Leasing Agent Donell Chenault responded to her communication, providing her with screening questions. Complainant states that in her reply, she disclosed her HCV income source. Complainant states that on February 14, Chenault e-mailed Complainant and asked her to schedule a tour. Complainant states that she replied to Chenault to inform him that she already had a tour scheduled for February 16.

Complainant alleges that on February 15, 2023, Chenault contacted Complainant to confirm that Complainant's rental budget was $1,700. Complainant states that she corrected

---

[1] Complainant erroneously named "Labaran Salmatu" as a Respondent in the Complaint. Respondent's correct name is Salamatu Labaran.

1

Chenault by replying that her budget was $2,000 to $2,100 per month for a two-bedroom apartment. Additionally, Complainant states that they agreed to meet on February 17, but had not agreed to a time. Complainant alleges that by February 17, Chenault had not provided her with a meeting time.

Complainant alleges that on February 20, 2023. Chenault e-mailed Complainant, said that Regents Park had no units within Complainant's budget, and directed Complainant to view other listings on the Macapartments.com website. Complainant further alleges that on February 21, she viewed the Macapartments.com listings and found two available apartments at Regents Park that met her preferences and were within her budget. Complainant states that the apartments were N 0804, listed at $2,000 per month, and N 1109, listed at $1,975 per month. Complainant alleges that she forwarded these listings to Chenault and asked if the apartments were available, but that Chenault did not respond.

Complainant alleges that on February 22, 2023, she visited Regents Park, approached the concierge, and asked for a tour of the property. Complainant states that the concierge said tours were typically scheduled ahead of time but that the concierge would check if an exception could be made for Complainant. Complainant states that the concierge led her to the office of Leasing Agent Salamatu Labaran of MAC Properties. Complainant states that she told Labaran that she was having difficulties scheduling a tour with Chenault. Complainant states that Labaran then looked Complainant up in a database, commented that Complainant was assigned to Chenault, and told Complainant to contact Chenault for further assistance. Complainant states that she reiterated to Labaran the scheduling difficulties. Complainant alleges that Labaran then called Chenault, and that Chenault said he was out of the office.

Complainant alleges that when she asked Labaran whether she could schedule a tour of the building, Labaran asked, "Do you have your moving papers?" Complainant further alleges that when she told Labaran she did not, Labaran said Complainant would not be shown apartments without moving papers, that "they [do not] hold units," and that no building in Hyde Park will show apartments without moving papers. Complainant states that she asked Labaran to direct her to someone who could further assist. Complainant states that Labaran provided the address to MAC Properties, located at 1364 E. 53rd St., in Chicago. Complainant alleges she asked Labaran whether Housing Choice Voucher holders should lie about their vouchers to avoid poor treatment, and that Labaran replied, "I [did not] say that."

Complainant states that upon arriving at MAC Properties' office, she met with a male staff person (name unknown). Complainant alleges that she told the staff person that Labaran said Complainant could not view apartments without moving papers and that the male said, "That is illegal." Complainant further alleges that Chenault, who according to Labaran was out of the office, appeared and escorted Complainant to a room. Complainant states that Chenault told her that he needed to complete a call and would meet with Complainant afterwards.

Complainant alleges that during her meeting with Chenault, Complainant told Chenault of Labaran's behavior and Chenault provided Complainant with Labaran's full name. Complainant further alleges that during their meeting, Chenault referenced the wrong Housing Choice Voucher and Lyft income documents as the reason why Regents Park was outside of Complainant's budget. Complainant states that she corrected Chenault by saying that she did not work for Lyft and that her monthly income was $2,000. Complainant alleges that Chenault maintained that Regents Park was not within Complainant's budget and that Chenault offered to show her the "walk-ups." Complainant states that she was provided with the information of apartment buildings on Drexel Blvd., Woodlawn Ave., and Hyde Park Blvd. Complainant states that she was not interested in these properties.

## 2.    RESPONDENTS' DESCRIPTION & BACKGROUND

MAC Property Management, LLC, d/b/a MAC Properties, constructs, renovates, and operates properties for rent throughout Chicago, Illinois. MAC Properties also operates in St. Louis, MO and Kansas City, MO. It is the owner and operator of the subject property, which is known as Regents Park. Regents Park is an apartment complex located at 5035 S. East End Ave. in Chicago. It has about 1,026 units, is situated on the lakefront, and offers luxury amenities. Donnell Chenault and Salamatu Labaran are Leasing Agents for MAC Properties.

## 3.    RESPONDENTS' POSITION

Respondents acknowledge that Complainant disclosed that her income includes a Housing Choice Voucher (HCV) but they deny that they refused to rent available apartments to Complainant or that they steered her to other rental properties based on her source of income. Respondents assert that they rent to Voucher holders at the subject property.

Respondents acknowledge that on February 13, 2023, Complainant contacted Respondents through the Regents Park website and Zillow.com website. Respondents acknowledge that Chenault contacted Complainant on February 13, that Complainant underwent an initial questionnaire process, and that Complainant disclosed that she had an HCV. Respondents further acknowledge that Chenault e-mailed Complainant on February 14 to ask Complainant to schedule a tour. Respondents also acknowledge that Complainant said she already had a tour scheduled for February 16, but Respondents assert that the February 16 tour was not confirmed.

Respondents acknowledge that on February 15, 2023, Chenault inquired whether Complainant's monthly budget was $1,700, and that Complainant corrected Chenault by saying that her monthly budget was $2,000 to $2,100 per month. Respondents also acknowledge that Chenault and Complainant scheduled a tour for February 17, but that Chenault did not provide a meeting time. Additionally, Respondents acknowledge that Chenault did not contact Complainant regarding a meeting time for the February 17 tour.

3

Respondents acknowledge that on February 20, 2023, Chenault e-mailed Complainant and told her that Regents Park was not within Complainant's budget and that Chenault directed Complainant to the MAC Properties listings website. Respondents further acknowledge that Complainant forwarded Chenault the listings of Regents Park apartments N 0804, listed at $2,000 per month, and N 1109, listed at $1,975 per month, that Complainant asked whether the two apartments were available, and that Chenault did not respond to the inquiry.

Respondents acknowledge that on February 22, 2023, Complainant visited Regents Park and met with Labaran. Respondents further acknowledge that Complainant told Labaran that she was having issues with scheduling a tour with Chenault, that Labaran found Complainant on a database which showed Chenault was assisting Complainant, that Labaran told Complainant to follow-up with Chenault, and that Complainant reiterated Chenault's scheduling difficulties to Labaran. Respondents deny that Labaran said that Chenault was out of the office when Labaran called Chenault and assert that Chenault was providing a tour of a property at that time.

Respondents deny that Labaran told Complainant that she would not be shown apartments because Complainant had no moving papers or that MAC Properties "does not hold units." Respondents further deny that Labaran said buildings in Hyde Park will not show Complainant apartments without moving papers. Respondents assert that a concierge had told Complainant that Labaran might be able to give Complainant a tour of Regents Park depending on Labaran's availability. Respondents further assert that Labaran was unavailable to provide a tour to Complainant at the time and that Labaran already had a tour scheduled. Respondents acknowledge that Labaran directed Complainant to MAC Properties' office once Complainant requested further assistance. Additionally, Respondents deny that Complainant asked Labaran whether Housing Choice Voucher holders should lie to avoid poor treatment or that Labaran replied to the question.

Respondents acknowledge that Complainant visited MAC Properties' office, but assert that the male staff person with whom she interacted from the start was, in fact, Chenault. Respondents acknowledge that Complainant told Chenault that Labaran said she would not provide Complainant a tour because Complainant did not have her moving papers, but deny that Chenault replied, "That is illegal." Respondents assert again that Labaran did not make any statements regarding moving papers to Complainant and that Labaran's schedule restricted her from providing a tour to Complainant. Additionally, Respondents acknowledge that Chenault escorted Complainant into an office and that Chenault said he would return after completing a call.

Respondents acknowledge that Chenault provided Complainant with Labaran's information, and that Complainant spoke of Labaran's behavior, but Respondents deny that Labaran mistreated Complainant. Respondents acknowledge that while discussing Complainant's application for Regents Park, Chenault mistakenly referenced income information that did not pertain to Complainant. Respondents acknowledge that Chenault still said that Complainant did not qualify for Regents Park based on Complainant's reported monthly income

4

amount. Respondents acknowledge that Chenault then offered to show Complainant apartment buildings on Drexel Blvd., Woodlawn Ave., and Hyde Park Blvd.

Respondents assert that Chenault expressed to Complainant that Regents Park did not have apartments within her budget and directed her to apartments managed by Respondents within the same area. Respondents further assert that MAC Properties implements non-discriminatory policies, and that the application has verbiage of these policies. Respondents also assert that MAC Properties continued to reach out to Complainant on several occasions in efforts to help Complainant obtain an apartment through Leasing Agent Kenyetta McLaurin. Additionally, Respondents state that on March 29, 2023, McLaurin explained to Complainant Respondents' process of submitting CHA rent requests and that McLaurin attempted to schedule tours with Complainant on April 12 and April 20. Respondents state that Complainant eventually told McLaurin, "Thank you for reaching out. I am no longer moving."

## 4.    COMPLAINANT'S REBUTTAL

Complainant maintains her allegations. Complainant states that she is a disabled United States Army veteran with post-traumatic stress disorder (PTSD) and receives a disability retirement pension. Complainant states that the combined amount of her Housing Choice Voucher (HCV) and disability retirement pension is about $4,500 to $4,700 per month. Complainant states that she did not disclose this total amount to Respondents. Complainant states that she only disclosed her pension income amount, which is about $2,000 per month. Complainant states that she was able to afford rent at Regents Park and that a friend with a HCV was renting an apartment at Regents Park.

Complainant alleges that during her meeting with Labaran, Labaran's demeanor changed to "uninviting and nasty" upon learning that Complainant was an HCV holder. Complainant further alleges that Labaran said "Oh, you have a Voucher," in a condescending manner.

Complainant states that after interacting with Chenault and Labaran, her housing search led her to an available apartment at 5252 S. Cornell, in Chicago. Complainant states that she inquired about the available apartment, and that MAC Properties' agent, McLaurin, responded to her inquiry. Complainant states that she was not aware that 5252 S. Cornell was also affiliated with MAC Properties until McLaurin contacted her. Complainant alleges that the exact same thing happened with McLaurin as with Chenault. Complainant states that at that point, she stopped looking for apartments.

Complainant states that in an attempt to "test" Respondents, Complainant had her long-time friend Curtis Pettigrew, who does not have an HCV, request a tour of Regents Park. Complainant states that Labaran provided a tour of Regents Park to Pettigrew, that Complainant accompanied Pettigrew on the tour, and that Labaran did not recognize Complainant. Complainant states that Labaran treated Pettigrew "wonderfully" and that Labaran followed up with Pettigrew to apply for an apartment. Complainant states that she was never given the

5

Case No.   23-H-38

opportunity to apply for an available apartment at Regents Park.

5.      **DESCRIPTION OF RELEVANT DOCUMENTS** *This may not include every document obtained, but includes any evidentiary documents (other than Complaints, Verified Responses, and Position Statements) on which the Commission bases its determination.*

    a.      **Title or Description:** E-mail Message between Complainant and Chenault, dated February 14 to February 21, 2023
        **Source:** Complainant
        **Relevant Content:** The exchange shows that Complainant and Chenault attempted to coordinate a tour of Regents Park. On February 15, Chenault asks Complainant if her budget is about $1,700 for a two-bedroom. Complainant replies, "2000/2100."

On February 20, Chenault says, "We may have to explore other buildings. I don't have a [two-bedroom] for the price at Regents Park. Have you reviewed our website www.macapartments.com?"

On February 21, Complainant replies, "Yes, I did. I keep seeing units going for that price or similar. Other buildings are fine as well." Complainant then provides Chenault with screenshots of the listings for unit N 1109, listed for $1,975, and unit N 0804, listed for $2,000. Complainant asks whether the two units were available, but the exchange shows no further correspondence.

    b.      **Title or Description:** CHA Rent Burden Worksheet, dated March 8, 2023
        **Source:** Complainant
        **Relevant Content:** The document states that Complainant's voucher number is # CHA-T0206041. The voucher further states that the voucher is for a two-bedroom unit and that Complainant can expect to pay between $416 to $554. Under the "Suggested Budget" portion of the document, it states that rent and utilities should be between $1,497 and $2,485 within mobility areas. It also states that rent and utilities should be between $1,497 and $1,635 for non-mobility areas.

    c.      **Title or Description:** E-mail Messages between Complainant and McLaurin, dated March 29 and March 30, 2023
        **Source:** Respondents
        **Relevant Content:** The exchange shows that McLaurin provided Complainant with links to available properties. McLaurin states that the links meet Complainant's criteria. There are six links which consist of units located at "Algonquin Apartments", "The Blackwood", "Paramour", "The Del Prado", and 5222-38 S. Drexel Ave. Complainant replies by asking if Regents Park or a property known as "Twin Towers" had availability.

6

Case No.  23-H-38

    d.    **Title or Description:** <u>E-mail Message from McLaurin to Complainant, dated April 4, 2023</u>
**Source:** <u>Complainant</u>
    **Relevant Content:** In the exchange, McLaurin states that Respondents do not own a property known as the "Twin Towers." McLaurin then says, "I listed some options in my previous email that are within your voucher amount." McLaurin also explains MAC Properties' process of submitting rental requests to the CHA and that it is based on a unit's rental price plus the utility fee of the building. McLaurin provides an example with Regents Park apartment number N 0504. The rent for this apartment is $2,184, the utility fee is $210, and so MAC Properties would send a rental request to the CHA in the amount of $2,394. McLaurin further explains that the CHA will approve this sum if it is less than the voucher amount.

    e.    **Title or Description:** <u>E-mail Message from Labaran to Pettigrew, dated March 28 and April 12, 2023</u>
**Source:** <u>Complainant</u>
    **Relevant Content:** In the messages, Labaran provides Pettigrew with a list of available apartments at Regents Park. Labaran states that she has also provided application links for the two apartments that they viewed on April 5, 2023, at Regents Park.

    f.    **Title or Description:** <u>E-mail Messages between Complainant and McLaurin, dated April 20 and April 24, 2023</u>
**Source:** <u>Respondents</u>
    **Relevant Content:** In the exchange, McLaurin attempts to schedule an appointment with Complainant for the "Algonquin Apartments" or any other property. On April 24, Complainant says that she is no longer moving.

    g.    **Title or Description:** <u>Affidavits of Donell Chenault, Salamatu Labaran and Kenyetta McLaurin, dated June 15, 2023</u>
**Source:** <u>Respondents</u>
    **Relevant Content:** In his affidavit, Chenault states that on February 20, 2023, he advised Complainant that Regents Park did not have units within Complainant's budget. Chenault further states that he sent her available alternative units in the area. Chenault also states that he never told Complainant that Labaran had done anything illegal.

    In her affidavit, Labaran states that on February 22, 2023, she met Complainant. Labaran further states that she told Complainant that she already had a tour scheduled for a different applicant. Labaran also states that moving papers were never discussed during the meeting.

    In her affidavit, McLaurin states that on March 29, 2023, she e-mailed Complainant to schedule a tour. McLaurin further states that she advised Complainant of pricing and how MAC Properties sends rent requests to the CHA. McLaurin states that Complainant replied to an attempt to schedule Complainant for a tour by saying that she was no longer moving.

7

Case No. 23-H-38

h.    **Title or Description:** Signed CHA Leases with Accompanying Housing Assistance Payments (HAP) Contracts, received August 11, 2023
**Source:** Respondents
**Relevant Content:** The documents indicate that there are at least twenty Housing Choice Voucher recipients renting apartments at Regents Park.

i.    **Title or Description:** CHA Rent Determinations, dated July 17, 2024
**Source:** CCHR
**Relevant Content:** The rent determination from the CHA indicates that the listed rental amounts for 5035 S. East End Ave., apartments N 1109 listed at $1,975 per month, N 0804 listed at $2,000 per month, and N 0504 listed at $2,184 per month, would not have been approved by the CHA. The CHA would have approved $1,712.60.

## 6.    DETERMINATION

Complainant alleges that Respondents refused to rent available apartments to her and steered her to other properties because her source of income includes a Housing Choice Voucher (HCV). Respondents deny the allegations and assert that they rent to HCV holders at the subject property.

The Chicago Fair Housing Ordinance (CFHO) explicitly states that a property owner or manager may not refuse to rent to a housing applicant based on their legal source of income; and the Commission has long held that a CHA Housing Choice Voucher is a legal source of income. A respondent must allow an applicant to apply for the housing, at which time the applicant is able to initiate the application process with the CHA to have the housing unit inspected and possibly approved for occupancy. Complainant alleges that Respondents refused to rent available apartments to her based on her income source when she was refused tours of the Regents Park apartment complex, when Labaran said that Complainant would not be shown apartments without moving papers, and when Complainant was never given the opportunity to apply for an apartment at Regents Park.

In this matter, Complainant cannot establish a *prima facie* case of housing discrimination. To establish a *prima facie* case, Complainant must establish that she is a member of a protected class that is known to Respondents; that she is qualified to rent the housing in question; that Respondents subjected her to an adverse action; and that others outside of her protected class were treated more favorably in similar circumstances. Here, the investigation revealed that Complainant was not qualified to rent the subject apartments in that the CHA would not have approved the rent amounts for which the subject units were listed. The CHA indicated that it would only approve up to $1,712.60 for the subject units, but they were listed for $1,975 and $2,000 per month, above the CHA approval amount. As such, Complainant was not qualified to rent the units. Additionally, during an investigation interview, Complainant stated that she did not disclose all her income to Respondents. Complainant states that she only disclosed her pension amount and that it amounted to about $2,000 per month. The evidence shows that

8

Case No.  23-H-38

Chenault and McLaurin both informed Complainant that apartments at Regents Park were outside of Complainant's stated budget. The evidence also shows that McLaurin explained Respondents' CHA rental amount request process to Complainant, presumably as an attempt to demonstrate how some units were outside of Complainant's claimed budget. Finally, the investigation revealed that Respondents rent apartments to 20 HCV holders; however, Respondents are cautioned that the CHA may approve the listed market rate rent for other applicants, depending on their circumstances, or that HUD could update the payment standard. Respondents should ensure that the application of their minimum income requirement is consistent with the CFHO.

The CFHO states that a property owner, property manager or leasing agent may not steer an applicant to housing based on source of income. Steering is defined as encouraging, discouraging, or assigning housing rentals to a particular section of a community, development, or building based on a person's membership within a protected class. Complainant alleges that Respondents steered her when Respondents attempted to show her other apartments that Complainant had no interest in, based on her income source. The evidence shows that Respondents attempted to show those rentals to Complainant because they were within her purported budget. The investigation also did not reveal, and no objective evidence has been presented which shows that Respondents practice the steering of tenants with HCVs into specific sections of the properties they own and operate.

Accordingly, the Commission finds no substantial evidence of housing discrimination based on source of income.

9

# Exhibit 1-2

# Administrative Complaint

COPY



**CCHR CASE NO: 23 H 38**

RECEIVED
CITY OF CHICAGO

APR 1 0 2023

COMMISSION ON
HUMAN RELATIONS

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**
740 N. Sedgwick, Suite 400, Chicago, IL 60654
312/744-4111 (Voice), 312/744-1081 (Fax), 312/744-1088 (TDD)
www.Chicago.gov/cchr, cchrfilings@cityofchicago.org

## COMPLAINT

| **COMPLAINANT'S NAME** | | | **TELEPHONE** | | | |
|---|---|---|---|---|---|---|
| Rysheena Moore | | | | | | |
| | | | **E-MAIL** | | | |
| **STREET ADDRESS** | | | **CITY, STATE, ZIP CODE** | | | |
| ▮ | | | Chicago, IL 60605 | | | |
| **RESPONDENT'S NAME(S)** | | | **TELEPHONE** | | | |
| MAC Properties | | | | | | |
| Leasing Agent Donell Chenault | | | | | | |
| Leasing Agent Labaran Salmatu | | | | | | |
| **STREET ADDRESS** | | | **CITY, STATE, ZIP CODE** | | | |
| 1364 E. 53rd Street (All Respondents) | | | Chicago, IL 60615 | | | |
| **TYPE OF COMPLAINT:** | ❑ EMPLOYMENT | ■ HOUSING | ❑ PUBLIC ACCOMMODATION | | ❑ CREDIT | ❑ BONDING |

**CHECK EACH DISCRIMINATION BASIS,** and state your status in the space provided. For example, if you claim national origin discrimination, state your national origin. If age, state your age.

| | | |
|---|---|---|
| ❑ RACE | ❑ SEX <br> ❑ SEXUAL HARASSMENT | ❑ DISABILITY |
| ❑ COLOR | ❑ SEXUAL ORIENTATION | ❑ AGE (over 40) |
| ❑ NATIONAL ORIGIN | ❑ GENDER IDENTITY | ■ SOURCE OF INCOME |
| ❑ ANCESTRY | ❑ MARITAL STATUS | ❑ MILITARY STATUS |
| ❑ RELIGION | ❑ PARENTAL STATUS | ❑ RETALIATION |
| ❑ CREDIT HISTORY <br> (Employment Only) | ❑ CRIMINAL RECORD/HISTORY <br> (Employment only) | ❑ RETALIATION (under <br> Hotel Workers Ordinance) |
| ❑ BODILY AUTONOMY <br> ORDINANCE <br> (Housing & Employment Only) | | |

| **DATE OF THE ALLEGED DISCRIMINATION** | February 22, 2023 |
|---|---|
| Month, day, and year. For *latest* incident if more than one. | |

**ALLEGED DISCRIMINATORY CONDUCT.**

1. I am a Housing Choice Voucher holder. I believe that Respondents, based on my source of income, refused to rent to me available units at Regents Park Apartments and steered me away to other areas.

2. On or about February 13, 2023, I was looking for a two-bedroom apartment at Regents Park Apartments, located at 5035 S. East End, Chicago, Illinois. I contacted Regents Park Apartments through their own website and through Zillow.com website.

3. On or about February 13, 2023, I was contacted by Leasing Agent Donell Chenault, of MAC Properties, who asked me screening questions about Regents Park Apartments. During the screening process, I disclosed that I was a Housing Choice Voucher holder.

I swear or affirm that I have read this complaint and that it is true and correct to the best of my knowledge, information and belief. I give permission to each named respondent to release to the Commission on Human Relations any records or other evidence relevant to the allegations in this complaint, including but not limited to internal investigations, personnel records, and medical records.

| **COMPLAINANT SIGNATURE:** | **DATE SIGNED** (month/day/year) |
|---|---|
| *R Moore* | 04-10-2023 |

4. On February 14, 2023, Chenault emailed me and asked if I was still interested in Regents Park Apartments. If I was interested in Regents Park Apartments, I was to email him back my availability and answer his screening questions again.

5. On February 14, 2023, I emailed Chenault back that I had scheduled a tour for February 16, 2023.

6. On February 15, 2023, via email, Chenault and I agreed to meet on February 17, 2023. However, Chenault did not provide me with any specific time. In the email, Chenault indicated that my budget was $1,700 for a two-bedroom unit. I responded that my budget was $2,000- $2,100 for a two-bedroom unit.

7. Between February 16-17, 2023, Chenault did not contact me regarding the time to meet him for the agreed tour.

8. On February 20, 2023, I received an email from Chenault. Chenault explained that Regents Park Apartments did not have apartments in my budget. Chenault directed me to macapartments.com.

9. On February 21, 2023, I viewed the macapartments.com website and found two bedroom/two bath units within my budget (Unit N 0804 ($2,000) and Unit N 1109 ($1,975)). I forwarded the units information to Chenault. However, Chenault never responded.

10. On February 22, 2023, I went to the Regents Park's office, located at 5035 S. East End Avenue, Chicago, Illinois, where I met Leasing Agent Labaran Salmatu.

11. I told Salmatu that I was having problems scheduling a tour. When I provided Salmatu with my name, she looked me up in some type of database and it showed that Chenault was trying to assist me. Salmatu told me to follow-up with Chenault. I explained to her the problems I was having with Chenault and scheduling tours.

12. Salmatu confirmed that I was a Housing Choice Voucher holder. While in the office, Salmatu called and spoke with Chenault. Salmatu said that Chenault told her that he was out of the office. I asked Salmatu if I could schedule a tour. Salmatu replied, "Do you have your moving papers?" I explained that I did not have my moving papers because my lease did not end until May 31, 2023. I said that I did not know that I needed moving papers to tour available units.

13. Salmatu said, "We don't schedule tours with Housing Choice Voucher holders if they do not have their moving papers in hand." I asked Salmatu why did she bring me back to her office. The concierge said that you would take me on your scheduled tour. Salmatu claimed that the concierge was incorrect. Salmatu restated that I could not be shown any units because I did not have my moving papers with me. Additionally, Salmatu said that, "They don't hold units." Salmatu claimed that no buildings in the Hyde Park area would show me any unit without my moving papers."

14. I asked Salmatu to direct me to a person who could resolve the situation. Salmatu gave me the address for MAC Properties, located at 1364 E. 53rd Street. I asked Salmatu should a Housing Choice Voucher holder lie about his or her source of income to avoid the poor treatment which I received. Salmatu said, "I did not say that." I left and went to MAC Properties office.

15. When I arrived at MAC Properties' office, I was greeted by a male. I explained how Salmatu would not allow me to tour any available units because I did not have my moving papers with me. The man said, "That is illegal."

16. Chenault, who was supposedly out of the office according to Salmatu, appeared and escorted me into a room. Chenault said that he needed to finish a call and he would be right back.

17. When Chenault came to the office, I asked him to write Salmatu's name on a piece of paper which he did. I told Chenault how I was treated by Salmatu. Chenault confirmed again that I was searching for a two-bedroom unit.

18. Chenault said that my Lyft documents and my Housing Choice Voucher would not be enough for Regents Park Apartments. I told Chenault that he confused me with someone else and I do not work for Lyft. Chenault then asked me again for my monthly income and I replied that my monthly income was $2,000.

19. Chenault said that I did not qualify for Regents Park Apartments with my three-bedroom voucher and sent me an email with other units (5320-5326 S. Drexel, 5300 S. Drexel, 5034 S. Woodlawn Avenue, and 1101 E. Hyde Park Boulevard).

20. I believe that Salmatu refused to show and refused to rent me available units based on my source of income. I also believed that Chenault steered me to other units based on my source of income.

RECEIVED
CITY OF CHICAGO

APR 1 0 2023

COMMISSION ON
HUMAN RELATIONS

**CCHR CASE NO: 23 H 38**

The above conduct is a violation of the Chicago Fair Housing Ordinance, Chapter 5-8 of the Chicago Municipal Code. I seek all relief available under law.

RECEIVED
CITY OF CHICAGO

APR 1 0 2023

COMMISSION ON
HUMAN RELATIONS



**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**
740 N. Sedgwick, 4th Floor, Chicago, IL 60654
312/744-4111 (Voice), 312/744-1081 (Fax), 312/744-1088 (TDD)
cchrfilings@cityofchicago.org

IN THE MATTER OF:

|

Rysheena Moore
**Complainant,**                                          |    **Case No.:** 23-H-38
v.                                                       |    **Investigator:** Connie Simonelli, (312) 744-9387
MAC Properties, Leasing Agent Donell Chenault,           |    **Email: Connie.Simonelli@cityofchicago.org**
and Leasing Agent Labaran Salmatu                        |
**Respondent(s).**                                       |    **Filing Date of Complaint:** April 10, 2023

**MAILED ON TO THE FOLLOWING RESPONDENT: APRIL 18, 2023**
MAC Properties
Attn: Leasing Agents Donell Chenault & Labaran Salmatu
1364 E. 53rd St.
Chicago, IL 60615

# NOTICE OF DISCRIMINATION COMPLAINT

**Your *written response* and *supporting documentation* are due on or before MAY 18, 2023.**

The complainant named above has filed a discrimination complaint against you. It accuses you of violating the Chicago Fair Housing Ordinance. A copy of the complaint is enclosed. The Commission on Human Relations will conduct an investigation. If there is substantial evidence of an ordinance violation, the case will proceed to an administrative hearing and a ruling by the Board of Commissioners. If not, the case will be dismissed.

**Your responsibilities while the case is pending:**
·     You must preserve all records and other material, which may be relevant to the case.
·     You must keep the Commission informed of your contact information and status.
·     You must comply with all Commission orders and regulations.

See the next pages of this notice for details about your responsibilities. Also enclosed are the Commission's publication *Information for Respondents* as well as forms which you may use to submit your response, supporting documentation, proof of service, and a motion for extension of time if needed.

Please direct all filings and communications in this case to **Investigator Connie Simonelli, at (312) 744-9387**, until further notice.

**Penalties for ordinance violations.** If the complainant proves that you violated the ordinance, the Board of Commissioners can impose any of the following penalties against you:
·     **Fines** up to $10,000 per violation.
·     **Injunctions** requiring you to take specific steps to eliminate discriminatory practices.
·     **Damages** to be paid to the complainant, including punitive damages if the violation was egregious.
·     **Attorney fees** and costs to be paid if an attorney represented the complainant.

*La persona (complainant) mencionada en la queja ha comenzado un procedimiento legal en su contra. Favor lea idadosamente el material incluido y responda como se le indica. Si no responde apropiadamente puede tener serias consequencias.*

1

# YOUR RESPONSIBILITIES AS A RESPONDENT

You have certain obligations if you are a respondent a case filed at the Commission on Human Relations. The most important ones are listed on this page, along with the text of the applicable Commission regulations. See the next page for information on possible penalties if you fail to comply with procedural requirements.

## 1.   You must preserve all relevant records and other material.

**Reg. 210.270(a):** Once a respondent has knowledge of the complaint, the respondent shall preserve all records and other material which may be relevant to the case until the matter is closed. If a respondent knowingly destroys or fails to maintain records and other material (i)in anticipation of the filing of the complaint, (ii)due to the filing of complaint or the Commission's investigation, or (iii)otherwise with intent to defeat the purposes of the ordinances, the Commission or hearing officer, as applicable, may impose appropriate sanctions including those set forth in Subpart 235.

## 2.   You must keep the Commission informed of your contact information and status.

**Reg. 210.270(b):** Once a respondent has knowledge of a complaint, it has a continuing obligation to keep the Commission informed of current contact information and status, as follows:

(1)     Any **business**, corporation, organization, or other non-individual entity must inform the Commission of any change in its own or its contact person's name, address, and telephone number. In addition, it must inform the Commission whenever the status of the entity changes, such as when it closes, files for bankruptcy protection, or is sold in whole or in part, and then must provide the current name, address, and telephone number for its representative/s or successor/s.

(2)     Any **individual** respondent must inform the Commission of any change in address or telephone number. A representative must inform the Commission when an individual respondent dies and provide the name, address, and telephone number of the individual's successor.

If a respondent fails to update the Commission about contact information and status, the Commission shall send orders, notices, and other documents to the most recent address the Commission has and that shall be deemed sufficient. A respondent that does not update contact information cannot later rely on failure to receive any order, notice, or other document as a defense.

## 3.   You may be penalized if you fail to submit a written response.

**Reg. 210.260:** If a respondent fails to file or serve a timely, complete response, the Commission may take one or more of the following actions:

(a)     Order the respondent to cure any deficiency and then enter an order of default if the respondent fails to comply.

(b)     Deem admitted any allegation in the complaint for which there is no response, when determining whether there is substantial evidence of an ordinance violation.

(c)     Proceed to determine whether there is substantial evidence of an ordinance violation without further inquiry to the respondent.

## 4.   You have a continuing duty to provide information relevant to the case.

**Reg. 220.130:** Complainants and respondents have a continuing obligation, throughout the investigative process, to provide the Commission with documents and information which may be relevant to the case. In particular, if a party discovers documents or other information relevant to an order or request previously made by the Commission, the party must submit the information.

2

# SANCTIONS FOR PROCEDURAL NONCOMPLIANCE

Even if the Commission decides you did not discriminate or retaliate, you may still be penalized if you fail to comply with a procedural regulation, notice, or, order. The extent of the penalties (procedural sanctions) will depend on the severity of the noncompliance. See Reg. 235.100.

**Order of Default.** This is the harshest penalty the Commission can order against a respondent for a procedural violation. Please note these regulations about the grounds for default and the consequences:

**Reg. 235.310:** An order of default may be entered if, without good cause, a respondent–

(a)   Fails to comply at all with a Commission or hearing officer order, or provides a response which is tantamount to no response.

(b)   Fails to file and serve any written response to a complaint after being ordered to do so, or provides a response which is tantamount to no response.

(h)   Knowingly destroys or fails to preserve records and other material which may be relevant to the case.

(i)   Fails to attend a scheduled proceeding.

(j)   Fails to comply at all with a subpoena directed to the respondent or a person controlled by the respondent.

(k)   Engages in conduct which violates Reg. 210.410 prohibiting frivolous pleadings or representations, or which is contemptuous or threatening to the Commission, its personnel, another party, or a witness.

**Reg. 235.320:** A defaulted respondent is deemed to have admitted the allegations of the complaint and to have waived any defenses to the allegations including defenses concerning the complaint's sufficiency. An administrative hearing after an order of default shall be held only to allow the complainant to establish a *prima facie* case and to establish the nature and amount of relief to be awarded. A complainant may present a *prima facie* case through the complaint alone or may present additional evidence. Although the defaulted respondent may not contest the sufficiency of the complaint or present any evidence in defense, the Commission itself must determine whether there was an ordinance violation and so must determine whether the complainant has established a *prima facie* case and whether it has jurisdiction. A defaulted respondent may present evidence as to relief to be awarded.

**Fines and Costs.** The Commission can also impose fines or costs (monetary sanctions) if you fail to comply with a procedural requirement. Please note the regulations about these penalties:

**Reg. 235.420. Fines.** The Commission may impose a fine up to $1,000 for each incident of procedural noncompliance, which shall be payable no later than 28 days after issuance of the order imposing the fine if no other date is specified. For continuing noncompliance including failure to pay the initial fine or costs to a party when due, the Commission may impose additional fines of up to $100 per day until the earlier of full compliance or entry of the final order in the case. In setting the amount of the fine, the Commission may take into consideration, among other factors, the costs to the Commission due to the noncompliance including costs for a mediator, hearing officer, interpreter, or court reporter.

**Reg. 235.430. Costs to a Party.** On the motion of a party, the Commission may order payment of part or all of the party's own costs, including attorney fees, due to procedural noncompliance. The requested costs must be supported by affidavits or other documentation. Unless otherwise ordered, such motion must be filed and served no later than 21 days after issuance of the Commission's order imposing monetary or other sanctions, and the noncompliant party shall have 14 days from the filing of the motion to respond.

**Reg. 235.440. Monetary Sanctions on Attorneys.** Monetary sanctions may be imposed on an attorney in whole or in part if the attorney's conduct contributed to the procedural noncompliance.

**Reg. 235.450. Recovery from Other Payments in Case.** To the extent that a party has unpaid monetary sanctions, the Commission may order that any monetary relief or costs awarded to that party in the same case (other than attorney fees and associated costs) be paid first to the Commission or to any other party to satisfy the unpaid monetary sanctions, with any balance to the party receiving the award. Amounts awarded as attorney fees and associated costs may be so redirected only if the attorney receiving the award has unpaid monetary sanctions.

# Exhibit 1-3

# Defendant Mac Properties' Response to Administrative Complaint

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

RECEIVED
CITY OF CHICAGO

JUN 2 0 2023

**IN THE MATTER OF:**

Rysheena Moore

**Complainant**

v.

MAC Properties, Leasing Agent Donell Chenault and

Leasing Agent Labaran Salamatu

**Respondent(s)**

COMMISSION ON
HUMAN RELATIONS

Case Number ___23-H-38___

## NOTICE OF FILING & CERTIFICATE OF SERVICE

**Document(s) filed**

Response to Complaint

**Name of each party filing the document(s)**

MAC Properties,

Leasing Agent Donell Chenault

Leasing Agent Labaran Salamatu

**Certificate of Service**

**I certify that I served a copy of the document(s) listed above on each person listed below, directed to the address or fax number stated below, by the following method of service:**

|   |   |
|---|---|
| ___ | I put a copy in a U.S. mailbox with postage prepaid on _____ (date). |
| ___ | I sent a copy by fax at or about _____ (time) on _____ (date). |
| X | I ~~personally~~ will personally delivered a copy on ___June 20, 2023___ (date). |
| X | Other delivery method and |
|   | date: ___June 19, 2023___ ___via email___ |

**Name and delivery address of each person served**

City of Chicago - Hand Delivered

Commission on Human Relations c/o Connie Simonelli

740 N. Sedgwick, Suite 400

Chicago, Illinois 60654

cchrfilings@cityofchicago.org

Rysheena Moore

Chicago, Illinois 60605

**Signature and contact information of the person causing service:**

Signature ___/s/ Jillian S. Cole___

Date signed ___June 19 2023___

Printed name, title, organization, address:
Jillian S. Cole, Attorney

Taft Stettinius & Hollister LLP

111 E. Wacker Dr., Suite 2600

Chicago, Illinois 60601

File original and one copy at

**Chicago Commission on Human Relations**
**740 N. Sedgwick, 4th Floor, Chicago, IL 60654**
**Fax 312-744-1081, Phone 312-744-4111, TTY 312-744-1088**
**cchrfilings@cityofchicago.org**

COPY RECEIVED
CITY OF CHICAGO

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

JUN 2 0 2023

IN THE MATTER OF:

Rysheena Moore
**Complainant**
**v.**
MAC Properties, Leasing Agent Donell Chenault, and
Leasing Agent Labaran Salamatu
**Respondent(s)**

COMMISSION ON
HUMAN RELATIONS

**Case Number** 23-H-38

## RESPONSE TO COMPLAINT

1.  **This is a response to Complaint filed by Rysheena Moore.**

2.  **Name, mailing address, telephone, and fax of each respondent filing this response:** For a business or other organization, be sure to include (a) the full legal name of each owner or operator and (b) the name and title of the representative who will serve as contact person. Use additional pages if needed.

| | |
|---|---|
| Mac Property Management, LLC<br>Mac Properties<br>1364 E. 53rd Street<br>Chicago, IL 60615<br>Attn: Ken Hall | |

3.  **Statements admitting or denying allegations of complaint.** See Page 2.

4.  **Position statement.** See attached position statement.

5.  **Signature and certification:** See below and attached appearance of attorney.

**I certify that a reasonable inquiry of known and readily available information has been made and that the statements set forth in this response are true and correct except as to those stated to be on information and belief, as to which I certify that I believe them to be true.**

Signature                                    Date Signed Print name. Title & organization if signing for a business

                                             June 19, 2023          Jillian S. Cole, Esq.
                                                                    Taft Stettinius & Hollister LLP
                                                                    Attorney for Respondent

Signature                                    Date Signed Print name. Title & organization if signing for a business

                                             June 19, 2023          Kenyetta McLaurin
                                                                    MAC Property Management

This Response contains 5 pages including this one.

**You must SERVE a copy of this response on every other party and file proof of service.** A Notice of Filing and Certificate of Service form is available from the Commission. See Regs. 270.210 and 270.220.

File original and one copy at          **Chicago Commission on Human Relations**
                                       **740 N. Sedgwick, Suite 400, Chicago, IL 60654**
                                       **Fax 312-744-1081, Phone 312-744-4111, TTY 312-744-1088**
                                       **cchrfilings@cityofchicago.org**

**Response to Complaint, Case No. 23-H-38**                                       **Page 2 of 5**

**Instructions & Examples:** Make copies of this blank page as needed, or use your own sheets to respond to every fact alleged in the complaint. Any allegation for which there is no responding statement will be treated as admitted when the Commission decides whether there is substantial evidence of an ordinance violation. Reg. 210.260(b). If the complaint was written in numbered paragraphs, please number your response statements in the same way. You do not need to respond to legal conclusions (e.g. "I believe these actions are discriminatory"), but you can address them in your position statement. Some examples:

  *I admit that the complainant asked to be seated in a booth at the restaurant.*

  *I deny telling the complainant she was too old to learn to use the new equipment.*

  *I admit that complainant has been a tenant in my building but I deny that he has paid his rent on time.*

If you do not know whether an allegation is true or not, make a statement like this:

  *I do not have sufficient knowledge to admit or deny the allegation that our sales manager told the complainant that young single women are better sales representatives.*

Example:

  **Allegation:** *Paragraph 1: I use a wheelchair due to my disabilities, including rheumatoid arthritis.*
  **Response:** *I admit the complainant was using a wheelchair but do not know the nature of her disabilities.*

## STATEMENTS ADMITTING OR DENYING ALLEGATIONS OF COMPLAINT

**Paragraph 1:** I am a Housing Choice Voucher holder. I believe that Respondents, based upon my source of income, refused to rent to me available units at Regents Park Apartments and steered me away to other areas.

**Response:** Respondents admit that Ms. Moore claims to be a Housing Choice Voucher Holder. Mac denies the remaining allegations in Paragraph 1.

**Paragraph 2:** On or about February 13, 2023, I was looking for a two-bedroom apartment at Regent Park Apartments, located at 5035 S. East End, Chicago, Illinois. I contacted Regents Park Apartments through their own website and through Zillow.com website.

**Response:** Respondents admit the allegations in Paragraph 2.

**Paragraph 3:** On or about February 13, 2023, I was contacted by Leasing Agent Donell Chenault, of Mac Properties, who asked me screening questions about Regents Park Apartments. During the screening process, I disclosed that I was a Housing Choice Voucher holder.

**Response:** Respondents admit the allegations in Paragraph 3.

**Paragraph 4:** On February 14, 2023, Chenault emailed me and asked if I was still interested in Regents Park Apartments. If I was interested in Regent Park Apartments, I was to email him back my availability and answer his screening questions.

**Response:** Respondents admit the allegations in Paragraph 4, but deny that the questions were of a screening nature.

**Paragraph 5:** On February 14, 2023, I emailed Chenault back that I had scheduled a tour for February 16, 2023.

**Response:** Respondents admit that on February 14, 2023, Ms. Moore emailed Chenault back that she had scheduled a tour for February 16, 2023. Respondents deny that a tour for February 16, 2023 was actually confirmed.

**Paragraph 6:** On February 15, 2023, via email, Chenault and I agreed to meet on February 17, 2023. However, Chenault did not provide me with any specific time. In the email, Chenault indicated that my budget was $1,700 for a two bedroom unit. I responded that my budget was $2000-$2,100 for a two bedroom unit.

**Response:** Respondents admit the allegations in Paragraph 6.

**Paragraph 7:** Between February 16-17, 2023, Chenault did not contact me regarding the time to meet him for the agreed tour.

**Response:** Respondents admit the allegations in Paragraph 7.

**Paragraph 8:** On February 20, 2023, I received an email from Chenault. Chenault explained that Regents Park did not have apartments in my budget. Chenault directed me to macapartments.com.

**Response:** Respondents admit the allegations in Paragraph 8.

**Paragraph 9:** On February 21, 2023, I viewed the macapartments.com website and found two bedroom/two bath units within my budget (Unit N 0804 ($2000) and Unit N 1109 ($1,975). I forwarded the units information to Chenault. However, Chenault never responded.

**Response:** Respondents are without knowledge or information sufficient to form a belief as to the truth of whether Ms. Moore viewed the macapartments.com website on February 21, 2023. Respondents admit that Moore forwarded Unit N 0804 and Unit N 1109 to Chenault. Respondents admit that Chenault did not respond via email, but deny that he never responded by phone.

**Paragraph 10.** On February 22, 2023, I went to Regent Park's office, located at 5035 S. East End Avenue, Chicago, Illinois, where I met Leasing Agent Labaran Salamatu.

**Response**: Respondents admit the allegations in Paragraph 10.

**Paragraph 11.** I told Salamatu that I was having problems scheduling a tour. When I provided Salamatu with my name, she looked me up in some sort of database and it showed that Chenault was trying to assist me. Salamatu told me to follow-up with Chenault. I explained to her the problems I was having with Chenault and scheduling tours.

**Response**: Respondents admit the allegations in Paragraph 11.

**Paragraph 12.** Salamatu confirmed that I was a Housing Choice Voucher holder. While in the office, Salamatu called and spoke with Chenault. Salamatu said that Chenault told her he was out of the office. I asked Salamatu if I could schedule a tour. Salamatu replied, "Do you have your moving papers?" I explained that I did not have my moving papers because my lease did not end until May 31, 2023. I said that I did not know that I needed moving papers to tour available units.

**Response**: Respondents deny the allegations in Paragraph 12.

**Paragraph 13**.    Salamatu said, "We don't scheduled tours with Housing Choice Voucher Holders if they do not have their moving papers in hand." I asked Salamatu why did she bring me back into her office. The concierge said that you would take me on your scheduled tour. Salamatu claimed that the concierge was incorrect. Salamatu restated that I could not be shown any units because I did not have my moving papers with me. Additionally, Salamatu said that "they don't hold units." Salamatu claimed that no buildings in the Hyde Park area would show me any units without my moving papers."

**Response:** Respondents deny that Salamatu stated that Ms. Moore could not be shown any units because she did not have moving papers with her. Respondents further deny that Salamatu stated that Mac does not hold units and further deny that Salamatu stated that no buildings in the Hyde Park area would show me her any units without her moving papers. Respondents admit that the concierge told Ms. Moore that Salamatu *may* be able to give Ms. Moore a tour, but only if she was available. Respondents further state that Salamatu was not available for a tour that day because she had another tour scheduled.

**Paragraph 14**.  I asked Salamatu to direct me to a person who could resolve the situation. Salamatu gave me the address for MAC Properties, located at 1364 E. 53rd Street. I asked Salamatu should a Housing Choice Voucher holder lie about his or her source of income to avoid the poor treatment which I received. Salamatu said, "I did not say that." I left and went to MAC Properties office.

**Response**:  Respondents admit that Salamatu gave Ms. Moore the address for Mac located at 1364 E. 53rd Street and that Ms. Moore did go to the Mac office.  Respondents deny the remaining allegations in Paragraph 14.

**Paragraph 15.**  When I arrived at MAC Properties' office, I was greeted by a male.  I explained how Salamatu would not allow me to tour any available units because I did not have my moving papers with me.  The man said, "That is illegal."

**Response:**  Respondents admit that Ms. Moore was greeted by a male (Chenault) upon her arrival to Mac's office.  Respondents further admit that Ms. Moore claimed that Salamatu would not give her a tour because she did not have any moving papers.  Respondents deny that the man (Chenault) told Ms. Moore that Salamatu did anything illegal.  Respondents further deny that  Salamatu refused to give her a tour because she did not have her moving papers.  Respondents further state that Chenault told Ms. Moore that Salamatu could not give Ms. Moore a tour on that day because it conflicted with one of her previously scheduled tours.

**Paragraph 16**.  Chenault, "who was supposedly out of the office according to Salamatu, appeared and escorted me into a room.  Chenault said that he needed to finish a call and he would be right back.

**Response:**  Respondents deny that Chenault was out of the office, but rather was giving a tour when Ms. Moore had previously asked for him.  Respondents admit the remaining allegations in Paragraph 16.

**Paragraph 17**.  When Chenault came to the office, I asked him to write Salamatu's name on a piece of paper which he did.  I told Chenault how I was treated by Salamatu.  Chenault confirmed again that I was searching for a two-bedroom unit.

**Response**:  Respondents admit the allegations in Paragraph 17, but deny Ms. Moore's allegations that

Salamatu was improper to and/or mistreated Ms. Moore.

**Paragraph 18**. Chenault said that my Lyft documents and my Housing Choice Voucher would not be enough for Regents Park Apartments. I told Chenault that he confused me with someone else and I do not work for Lyft. Chenault then asked me again for my monthly income and I replied that my monthly income was $2,000.

**Response**: Respondents admit the allegations in Paragraph 18.

**Paragraph 19**. Chenault said that I did not qualify for Regents Park Apartments with my three-bedroom voucher and sent me an email with other units (5320-5326 S. Drexel, 5300 S. Drexel, 5034 S. Woodlawn Avenue and 1101 E. Hyde Park Boulevard.

**Response:** Respondents admit the allegations in Paragraph 19.

**Paragraph 20**. I believe that Salamatu refused to show and refused to rent me available units based on my source of income. I also believe that Chenault steered me to other areas based upon my source of income.

**Response**: Respondents are without knowledge or information sufficient to form a belief as to the truth of what Ms. Moore's beliefs are/were. Respondents deny that Salamatu refused to show Ms. Moore available units based upon her source of income and further deny that Chenault steered Ms. Moore to other areas based upon her source of income.

**Response to Complaint, Case No. 23-H-38**                                    **Page 5 of 5**

**Instructions:** Make copies of this blank page or attach additional sheets if needed. Briefly state your position and defenses in response to the complaint. For example, explain why the Commission should rule that you did not violate the applicable ordinance. If you believe the Commission does not have jurisdiction, explain why. If you have affirmative defenses you want considered in determining whether there is substantial evidence, you must state them in this response. You may include a memorandum of law. If there are documents or witnesses that support your position, you should submit that information as well; you may use the Commission's Supporting Documentation form.

# Exhibit 1-4

# Defendant Mac Properties
# Supporting Documentation

COPY

RECEIVED
CITY OF CHICAGO

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

JUN 2 0 2023

COMMISSION ON
HUMAN RELATIONS

IN THE MATTER OF:

Rysheena Moore

**Complainant**

v.

MAC Properties, Leasing Agent Donell Chenault and

Leasing Agent Labaran Salamatu

**Respondent(s)**

**Case Number** 23-H-38

# SUPPORTING DOCUMENTATION

**Name of each party submitting this information:** Mac Property Management, LLC

**Witnesses.** The Commission may not interview every proposed witness, so please summarize what you believe each one can tell us. **It is your responsibility to keep track of your witnesses, so we can reach them when ready to interview.**

| Name & Title of Witness | Telephone | Address | Summary of Relevant Testimony |
|---|---|---|---|
| Ken Hall, Director of Leasing | 773-825-6651 | 1364 E. 53rd Street Chicago, IL 60615 | Has facts concerning Ms. Moore and her dealings with Mac Property Management, LLC ("Mac") as well as Mac's Policies and Procedures |
| David Kuker | 773-825-6651 | 1364 E. 53rd Street Chicago, IL 60615 | same as above |
| Donell Chenault | 773-825-6651 | 1364 E. 53rd Street Chicago, IL 60615 | same as above |
| Labaran Salamatu | 773-825-6651 | 1364 E. 53rd Street Chicago, IL 60615 | same as above |

**Relevant Documents.** If you have a document, send two *photocopies.* Keep the original to introduce as evidence if there is an administrative hearing. If you do not have a document, describe it as specifically as you can, then state who has it and where it is located.

| Title or description of document or group of documents | √ Enclosed | -or- Name & address of business or individual who has the document(s) |
|---|---|---|
| Exhibit 1 - Rysheena Moore Complaint | x | |
| Exhibit 2 - Application | x | |
| Exhibit 3 - Policy | x | |
| Exhibit 4 - Affidavit of Donell Chenault | x | |
| Exhibit 5 - Affidavit of Labaran Salamatu | x | |
| Exhibit 6 - Affidavit of Kenyetta McLaurin | x | |
| Exhibit 7 - Motion for Extension of Time and Notice of Filing | x | |

**Signature and address of person making this submission:** If signing for a business or organization, include your title or position in it (e.g. owner, manager). If signed by an attorney, note Reg. 270.310 on attorney appearances. It is not necessary to serve supporting documentation on other parties to the case, although you may do so.

Print title, organization, address:
Jillian S. Cole, Attorney
Taft Stettinius & Hollister LLP
111 E. Wacker Dr., Suite 2600
Chicago, Illinois 60601

File original and one copy at

Chicago Commission on Human Relations
740 N. Sedgwick, Suite 400, Chicago, IL 60654
Fax 312-744-1081, Phone 312-744-4111, TTY 312-744-1088
cchrfilings@cityofchicago.org

# Exhibit 1-4

# Lease Application

# Lease  Application

| First  Name | Last  Name | Date  of Birth |
|---|---|---|

| US Social Security  # | Passport or Foreign  Social  Security  # |
|---|---|

| Street  Address | City |
|---|---|

| State | Zip Code | Country |
|---|---|---|

| Home Phone | Mobile  Phone | Email  Address |
|---|---|---|

| Driver  License  # | State |
|---|---|

| Present Landlord: Name, Address and  Phone | Lease  Term |
|---|---|

| Lease Start | Lease End | Rent Amount |
|---|---|---|

| Previous Landlord: Name, Address  and  Phone (if less than 2 years at present residence) | Lease  Term |
|---|---|

| Lease Start | Lease End | Rent Amount |
|---|---|---|

**School Enrollment Information**

| Check  if Student | Select Degree Level | | |
|---|---|---|---|
| Institute Name | Area  of Study | Enrollment Date | Expected Graduation Date |

**Referral Information**

| Have  you  been  referred by mac  resident? | Referral Name | |
|---|---|---|

**Employment Information**

Select Employment Status

| Current Employer | Position | Date of Employment | Annual  Salary |
|---|---|---|---|
| Contact Name | Phone Number | | |

**Other Income/Assets**

Please list additional income you want to factor into your eligibility.

| Monthly | Type | Received From | Phone Number |
|---|---|---|---|

**Leasing Policies**

**Equal Housing** Mac Property Management, LLC is pledged to the letter and spirit of Title VII of the Civil Rights Act of 1968, the Fair Housing Amendments Act of 1988, applicable state and local laws, including the Illinois Human Rights Act of 1979, and other fair housing laws and ordinances that make it unlawful to discriminate in the rental of a dwelling or in the provision of services and facilities on the basis of race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, order of protection status or source of income or other characteristic protected by law.

**Availability** Applications for apartments will be accepted on a first come, first served basis, based on the date and time of receipt of the Administrative Fee described below, and subject to the availability of the apartment type requested.

**Rental Applications** An Application must be completed and maintained for each adult (18 years of age or older) prospective resident who will be living in the apartment.

**Application Fee** A Non-Refundable Application Fee of $25 (Kansas City), $40 (St. Louis) or $50 (Chicago) is required for each adult applicant at the time the Lease Application is submitted.

**Administrative Fee** An Administrative Fee (based on the size of the Apartment being applied for) is required in order to take an Apartment off the market and hold it for an applicant. The Administrative Fee is **non-refundable** unless the Lease Application is declined by management, or the Lease Application is cancelled by the applicant within 24 hours of an approval notification.

I certify that all the information entered above in this Lease Application is true and correct. I understand that falsifying information is cause for rejection of this Lease Application or termination of the Lease if such falsification is discovered after commencement of the Lease term. In compliance with federal, state and local laws, routine inquiries may be made regarding the information I have provided. I hereby consent to allow Mac Property Management, LLC, by itself or through its designated agents or employees, to obtain a consumer report and criminal record information on my Lease Application and to obtain and verify credit and employment information.

Applicant's

Signature Date

# Exhibit 1-4

# Mac Properties Policies



mac **properties**

**General Rental Criteria and Occupancy Criteria Guidelines**

Lease Applications must be processed simultaneously on all prospective residents 18 years of age and older. A Non-Refundable Application Fee of $25 (Kansas City), $40 (St. Louis) or $50 (Chicago) per applicant must be paid for each applicant 18 years of age and older. All Applications for residency will be evaluated using, among others, the following criteria:

**I.    OCCUPANCY**

All prospective residents must be disclosed and identified on the Lease Application. Mac Properties applies occupancy standards that are consistent with the requirements of federal, state, and local laws. In the event of a change in status impacting the number of authorized persons occupying the Apartment that exceeds the occupancy limit of the Apartment, residents will have until the expiration of the lease term to transfer to the appropriate size Apartment to comply with occupancy limits.

**II.    SCORING OF YOUR CONSUMER CREDIT REPORT**

Mac Properties uses an independent credit reporting agency, Corelogic, to obtain and evaluate your consumer credit report. Your consumer credit report contains information about you and your credit experiences, including but not limited to such items as your bill-payment history, the number and type of accounts on which you have had late payments, collection actions, outstanding debts, bankruptcy filings and the age of your accounts. Corelogic, may also obtain, review and evaluate other relevant criteria about you, including but not limited to information regarding any judgment in an eviction, unlawful detainer, or similar action that was previously entered against you. Based on this evaluation of your consumer credit report and any other relevant criteria, Corelogic sends a recommendation regarding your application. Current or previous residents at a Mac Properties building will also be subject to additional internal Mac Properties accounting and management approval. Based upon the Corelogic recommendation, your application will either be Approved, Approved with Conditions or Declined. If Corelogic makes a recommendation of "Declined" or "Approved with Conditions", you will be given the name, address and telephone number of Corelogic and of the consumer reporting agencies that provided your consumer information to Corelogic, as well as other information required by law.

- An Administrative Fee (except in cases of certain programs where such fee is not permitted by applicable law) is required in order to take an Apartment off the market and hold it for the applicant, as follows:
    **Chicago: ($350-Studio and 1 Bedroom, $450-2 Bedroom, $550-3 Bedroom, $650-4 Bedroom and Above)**
    **St. Louis: ($300 for all rental types)**
    **Kansas City: ($225- Studio, $275-1 Bedroom, $325-2 Bedroom, $375-3 Bedroom, $425-4 Bedroom, $625-6 Bedroom)**
- The Administrative Fee will only be refunded if the result of the application "Declined", or if the applicant cancels or withdraws within 24 hours of notification of application results. **If the Application is not cancelled or withdrawn by the applicant within 24 hours of an approval notification, the Administrative Fee will be retained. Any refunds shall be made in accordance with the requirements of applicable  law.**

**III.    CONDITIONAL APPLICATIONS**

- When a Corelogic application recommendation is returned as "Approved with Conditions" because of credit and/or income, applicants may be required to provide a Guarantor subject or be required to pay a non-refundable Assurance Fee as follows:
    **Chicago ($500 – all rental types)**
    **Kansas City ($500 – all rental types),**
    **St. Louis ($500 – all rental types).**
- APPLICANTS WITH AN OUTSTANDING NSF CHECK FROM PAYMENT OF APPLICATION, ADMINISTRATIVE OR ASSURANCE FEES MAY BE DECLINED.
- If such an application recommendation from Corelogic is accepted, this will result in a recommendation of "Approved with Conditions", and a non-refundable Assurance Fee will be due. Such applicants will also be required to make the first month's rent and any other move-in payments due on or before the lease start date by cashier's check or money order.

**IV.    DECLINED APPLICATIONS**

If any of the following apply, the application will result in a Decline, regardless of Consumer Credit Report outcome, and the Administrative Fee will not be refunded:

- Unable to provide a valid government issued photo ID.
- Any false statements made on the Application or the omission of any material information.
- Anyone submitting an Application with an outstanding unpaid rental and/or utility collection debt.
- Anyone having an unsatisfied monetary judgment currently pending against him/her.
- Criminal Record – Subject to the requirements of applicable law, and depending upon the nature and severity of the offense and the time that has passed since the conviction occurred, an applicant may be denied on the basis of a criminal conviction.
- For other reasons that may be objectively documented that could materially adversely impact the integrity of the tenancy.

**V.    GUARANTOR (IF APPLICABLE)**

- Guarantor must show verification to substantiate income equal to or greater than 3 times (Chicago), 3 times (St. Louis), or 5 times (Kansas City) the effective rent for the Apartment using the type of documentation listed in section VIII. below.
- Guarantor must complete an Application and be processed through Corelogic as a co-signer.
- Guarantor must reside within the United States and earnings must be in US Dollars.
- Guarantor signs a required Guaranty Agreement (but will not be a Resident and will not have access to the Apartment).

**VI.**      **APPLICANTS WITHOUT A SOCIAL SECURITY NUMBER**

- Must show verification to substantiate income equal to or greater than 2.0 - 3.0 times the effective rent of the Apartment being applied for, using the type of documentation listed in section VIII. below.
- Applications will be processed using all information readily available through credit reporting agencies if such information can be obtained.
- Applications that are returned with "Approved with Conditions" as a result of not having a Social Security number, may be supplemented with documentation of proof of income, as evidence of sufficient ability to pay the applicable rent for the Apartment may result in the non-refundable Assurance fee being waived.

**VII.**      **RESIDENT TRANSFER ON-SITE**

All current residents transferring on-site or within Mac Properties will not be subject to a credit screening, but will be screened for Criminal Background only. However, residents transferring to Solstice on the Park or 5252, or where there is a change in household members (i.e. addition or removal of roommate), will need to be re-screened fully as a new applicant. All transferring residents will be required to show substantiation of income equal to or greater than 2.0 - 3.0 times the effective rent at the Community for the Apartment being applied for using the type of documentation listed in section VIII. below.

**VIII.**      **PROOF OF INCOME**

Mac Properties must substantiate the income information provided on the Application, which must be equal to or greater than 2.0 - 3.0 times the effective rent at the Community for the Apartment being applied for. Income verification must be provided **prior** to the final Application approval. Mac accepts any and all lawful sources of income. Verification documentation may include, but are not limited to, the following:
- Two recent pay stubs from current employer
- Offer letters from employers with prior year W2 and most recent pay stub
- Three most recent bank statements in PDF form
- Pension fund payments/401K/investment fund accounts in PDF form
- Court ordered alimony or child support payments
- Proof of government payments
- Housing Vouchers
- Proof of retirement income
- Proof of self-employment income (e.g. prior year's tax return, financial statements, bank statements , etc. – all in PDF form)
- Proof of student loan income or current I-20 Documentation.

**IX.**      **INSURANCE REQUIREMENTS**

Renter's insurance is required at all communities as a condition of residency with minimum general liability coverage of $100,000 and the inclusion of contractual liability coverage. Personal property coverage is not required but recommended. Applicant may contract for this required insurance from **ResidentKey (ResidentKey.com; 1-800-434-2955)**. However, applicant is free to contract for this required insurance with a provider of applicant's choosing, so long as that carrier and the policy the applicant buys from that carrier meet the applicable requirements under the lease. Applicant will ensure that any such policy obtained identifies **SafeRent, PO Box 10870, Canoga Park, CA 91309** and, to the extent permitted by such policy, Mac Properties and the legal owner of the Community, as a "party of interest", "interested party", "additional interested party" or words of similar import. If the Applicant fails at any time during the lease to provide sufficient written proof of insurance as required by the lease, Mac Properties may add the applicant to its own Landlord Protection Policy to address the breach, and the applicant will be required to pay Mac Properties a $25 lease violation fee each month until the required policy is purchased and provided to Mac Properties. This fee is non-refundable and will not be prorated.

**X.**      **NON-SMOKING AND DRUG FREE COMMUNITY**

There is a no smoking policy at all communities and in all Apartments. There is no smoking permitted in the buildings, garages, balconies, or common area of any community at any time. Any smoking must be off the property. In addition, every Mac Properties community follows and complies with federal law regarding marijuana use and thus is, and will continue to be, a drug free community. Possession, use, manufacture, or sale of any illegal or controlled substances, including marijuana, or any use of marijuana by any resident(s), occupant(s), guests or invitees anywhere in or around the Apartment or the Community is strictly prohibited, regardless of its permissibility under any state or local medical or recreational marijuana use laws.

**XI.**      Individuals applying for an Apartment with a property that has a specific Regulatory Agreement will be required to meet additional guidelines in accordance with applicable federal, state, and local laws and regulations and/or may be exempt from certain requirements above.

**XII.**      **CONSIDERATION OF CRIMINAL HISTORY INFORMATION:**

Mac Properties considers an applicant's criminal history according to the guidelines of applicable federal, state, and local law. For applicants in Chicago, pursuant to the Cook County Human Rights Ordinance, Mac Properties does not inquire about, consider, or require disclosure of an applicant's criminal history prior to determining whether the applicant has satisfied all other application criteria for the desired Apartment. Applicant has the right to provide Mac Properties with any and all evidence demonstrating inaccuracies within any conviction history of applicant, or evidence of rehabilitation and/or other mitigating factors. Applicant may produce any evidence that disputes the accuracy or relevance of information related to any criminal conviction(s) of applicant.

The website of the Cook County Commission on Human Rights is available at:
https://www.cookcountyil.gov/agency/commission-human-rights-0

The address & phone number of the Cook County Commission on Human Rights are: 69 W. Washington Street, Suite 3040, Chicago, Illinois 60602, (312) 603-1100



Revised
04/01/2022

# Exhibit 1-4

# Affidavit of Mac Leasing Agent Donell Chenault

City of Chicago
**COMMISSION ON HUMAN RELATIONS**

IN THE MATTER OF:

Rysheena Moore
**Complainant**
**v.**
MAC Properties, Leasing Agency Donell Chenault, and
Leasing Agent Salamatu Labaran
**Respondent(s)**

### SUPREME COURT RULE 113 AFFIDAVIT

I, Donell Chenault, being first duly sworn on oath, state and affirm the following facts:

1.      I am over the age of eighteen years and I have authority to make this affidavit because I am currently employed at Mac Property Management LLC ("Mac").   I currently a *leasing agent at* Mac.

2.      Rysheena Moore ("Moore") filed a Complaint with the Illinois Department of Human Rights (the "Complaint") against Mac.   To the extent terms are not defined herein, they have the same meaning ascribed to them in the Complaint and the Preliminary Statement filed by Mac in this case.

3.      I am familiar with the allegations contained in the Complaint because I have personally reviewed a copy of the Complaint.  I hereby incorporate into this affidavit by express reference the Complaint and its exhibits to the extent that I have relied upon the same in making the statements contained herein.

4.      I am also familiar with the allegations contained in the Complaint because upon Mac's receipt of the Complaint, and I dealt with Ms. Moore personally.

127653441v1

5.      On or about February 13, 2023, after Ms. Moore made inquiry on Mac's website about a Regents Park Apartment, and I contacted Ms. Moore to better assist her in her search for an apartment.

6.      Thereafter, on February 14, 2023, I followed up with Ms. Moore to see if she was still interested in Regents Park Apartments.

7.      Ms. Moore and I tentatively agreed to meet for a tour on February 16, 2023, but that tour was never confirmed.

8.      Thereafter, On February 20, 2023, I advised Ms. Moore that Regents Park did not currently have units within her budget, but immediately sent her alternative units in the same area.

9.      I later spoke with Ms. Moore concerning the units by telephone, but not by email.

10.     I never told Ms. Moore that Ms. Salmatu did anything illegal.

FURTHER AFFIANT SAYETH NAUGHT.


## VERIFICATION

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein in this **Affidavit of Donell Chenault** are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as foresaid that I verily believe the same to be true.


Date: June 15, 2023                      Donell Chenault

# Exhibit 1-4

# Affidavit of Mac Leasing Agent
# Salamatu Labaran

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

IN THE MATTER OF:

Rysheena Moore
**Complainant**
**v.**
MAC Properties, Leasing Agent Donell Chenault, and
Leasing Agent Salamatu Labaran
**Respondent(s)**

## SUPREME COURT RULE 113 AFFIDAVIT

I, Salamatu Labaran, being first duly sworn on oath, state and affirm the following facts:

1.      I am over the age of eighteen years and I have authority to make this affidavit because I am currently employed at Mac Property Management LLC ("Mac"). I currently a Leasing Agent at Mac.

2.      Rysheena Moore ("Moore") filed a Complaint with the Illinois Department of Human Rights (the "Complaint") against Mac.   To the extent terms are not defined herein, they have the same meaning ascribed to them in the Complaint and the Preliminary Statement filed by Mac in this case.

3.      I am familiar with the allegations contained in the Complaint because I have personally reviewed a copy of the Complaint. I hereby incorporate into this affidavit by express reference the Complaint and its exhibits to the extent that I have relied upon the same in making the statements contained herein.

4.      I am also familiar with the allegations contained in the Complaint because upon Mac's receipt of the Complaint, and I dealt with Ms. Moore personally.

5.     On February 22, 2023, I met Ms. Moore.  I advised Ms. Moore that I had a previously scheduled tour that I needed to attend and that Donell Chenault was assigned as her rental agent since they had previously spoken.

6.     During this meeting, I never stated that moving papers were necessary in order to have a tour of any units.

7.     In fact, Ms. I never discussed moving papers with Ms. Moore at all.

FURTHER AFFIANT SAYETH NAUGHT.

### VERIFICATION

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the statements set forth herein in this **Affidavit of Salamatu Labaran** are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as foresaid that I verily believe the same to be true.

Date: June 15, 2023

Salamatu Labaran

# Exhibit 1-4

# Affidavit of Mac Leasing Agent
# Kenyetta McLaurin

**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

IN THE MATTER OF:

Rysheena Moore
**Complainant**
**v.**
MAC Properties, Leasing Agent Donell Chenault, and
Leasing Agent Salamatu Labaran
**Respondent(s)**

### SUPREME COURT RULE 113 AFFIDAVIT

I, Kenyetta McLaurin, being first duly sworn on oath, state and affirm the following

facts:

1.      I am over the age of eighteen years and I have authority to make this affidavit

because I am currently employed at Mac Property Management LLC ("Mac").  I currently a

*Leasing Agent* Mac.

2.      Rysheena Moore ("Moore") filed a Complaint with the Illinois Department of

Human Rights (the "Complaint") against Mac.   To the extent terms are not defined herein, they

have the same meaning ascribed to them in the Complaint and the Preliminary Statement filed by

Mac in this case.

3.      I am familiar with the allegations contained in the Complaint because I have

personally reviewed a copy of the Complaint.  I hereby incorporate into this affidavit by express

reference the Complaint and its exhibits to the extent that I have relied upon the same in making

the statements contained herein.

4.      I am also familiar with the allegations contained in the Complaint because upon

Mac's receipt of the Complaint, and I dealt with Ms. Moore personally.

5.      On March 29, 2023, I emailed Ms. Moore apartments and asked to set up a tour any time between Tuesday and Saturday of that week.  A true and accurate copy of the March 29, 2023 email is attached hereto as Exhibit A.

6.      In response to that email, Ms. Moore asked about available units at Regents or Twin Towers.  I McLaurin advised her, *inter alia*, of Mac's pricing and how Mac submits all requests to the CHA, but Ms. Moore did not respond.

7.      Nevertheless, I followed up with Ms. Moore on April 12, 2023, and asked her if she any questions about the leasing process or if she is still interested in leasing in Hyde Park.  Ms. Moore responded as follows:, "I am still interested in an apartment in Hyde Park.  Thank you for following up."  A true and accurate copy of the April 12, 2023 email is attached hereto as Exhibit B.

8.      On April 20, 2023, I again specifically asked Ms. Moore is she  wanted to set up an appointment to tour units at any of Mac's properties.  However, Ms. Moore failed to respond to my offer.  Nevertheless, in an effort to make certain that Ms. Moore has an opportunity to tour units, I emailed Ms. Moore once again and asked again if she would like to schedule an appointment to view any of Mac's properties. In response, Ms. Moore stated, "[t]hank you for reaching out. I am no longer moving.  A true and accurate copy of the April 20, 2023 email is attached hereto as Exhibit C.

FURTHER AFFIANT SAYETH NAUGHT.

**VERIFICATION**

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the

statements set forth herein in this **Affidavit of Kenyetta McLaurin** are true and correct, except

as to matters therein stated to be on information and belief and as to such matters the

undersigned certifies as foresaid that I verily believe the same to be true.

Date: June 15 , 2023                 KENYETTA MCLAURIN

**From:** R Moore
**Sent:** Thursday, March 30, 2023 6:34 PM
**To:** Kenyetta McLaurin <kmclaurin@macapartments.com>
**Subject:** Re: Mac Properties: Start Your Apartment Search Here!

You don't often get email from                          Learn why this is important

Hello,

Thank you. Is there anything in regents available or twin towers?

On Wed, Mar 29, 2023, 6:41 PM Kenyetta McLaurin <kmclaurin@macapartments.com> wrote:

mac **◢** properties

Hi Rysheena,
It was a pleasure speaking with you!
Per our conversation, see below for apartment options that best match your criteria:

   http://www.macapartments.com/unit/Algonquin-Apartments-04-007D-2BR
   http://www.macapartments.com/unit/Algonquin-Apartments-04-009E-2BR
   http://www.macapartments.com/unit/The-Blackwood-0710-2BR
   http://www.macapartments.com/unit/Paramour-302-2BR
   http://www.macapartments.com/unit/The-Del-Prado-308-2BR
   http://www.macapartments.com/unit/5222-38-S-Drexel-Ave-30-3NE-2BR

I am available **Tuesday-Saturday,** what day and time works best for you to tour?

Looking forward to hearing from you, feel free to reach out with any questions that you
may have at **773.729.6056.**

Thank you,
**Kenyetta McLaurin**
**Leasing Agent**
Mac Leasing Department

Mac Properties
**macapartments.com**
p 773 729 6056

**From:** R Moore ▉▉▉▉▉▉▉▉▉▉▉▉▉
**Sent:** Thursday, April 13, 2023 9:11 PM
**To:** Kenyetta McLaurin <kmclaurin@macapartments.com>
**Subject:** Re: Mac Properties: Start Your Apartment Search Here!

Hello,

I am still interested in an apartment in Hyde Park. Thank you for following up.

On Wed, Apr 12, 2023, 5:39 PM Kenyetta McLaurin <kmclaurin@macapartments.com> wrote:
Hi Rysheena,

Just following up with my last email.
Did you have any questions about the leasing process?

Were you still looking for an apartment in Hyde Park?

With Gratitude,

**Kenyetta McLaurin**
**Leasing Agent**
(she/her/hers)

Mac Properties
**macapartments.com**

p    **773 729 6056**

**From:** Kenyetta McLaurin <kmclaurin@macapartments.com>
**Sent:** Thursday, April 20, 2023 6:08 PM
**To:** R Moore ▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Re: Mac Properties: Start Your Apartment Search Here!

Hi Rysheena,

Did you want top set up an appointment to view the Algonquin Apartments or any of our other properties?
With Gratitude,

**Kenyetta McLaurin**
**Leasing Agent**
(she/her/hers)

Mac Properties
**macapartments.com**
p ⁝ **773 729 6056**

**Comments**

Additional To: ▮▮▮▮▮▮▮▮
CC:
BCC:
Attachment: Outlook-no4gzwu.png

Subject: Re: Mac Properties: Start Your Apartment Search Here!
Body:
Thank you for letting me know.

Have a great rest of your week!

With Gratitude,

Kenyetta McLaurin

Leasing Agent

(she/her/hers)

Mac Properties

macapartments.com<https://www.macapartments.com/>

p [cid:c109de5e-e0ef-48aa-9c17-7824c48438821 ▮ 773 729 8056

---

From: R Moore ▮▮▮▮▮▮▮▮▮
Sent: Monday, April 24, 2023 10:40 PM
To: Kenyetta McLaurin <kmclaurin@macapartm
Subject: Re: Mac Properties: Start Your Apartment Search Here!

Hello,

Thank you for reaching out. I am no longer moving.

On Mon, Apr 24, 2023, 4:03 PM Kenyetta McLaurin <kmclaurin@macapartme   com<mailto:kmclaurin@maca   com>> Here!
Hi Rysheenaf

Just following up with you.

Would you like to schedule an appointment to view any of our properties?

I am available to tour Wednesday - Saturday of this week.

With Gratitude,

Kenyetta McLaurin

Leasing Agent

(she/her/hers)

Mac Properties

macapartments.com<https://www.macapartments.com/>

p [cid:31b8a92b-408e-4507-9809-5ed7258cbc85] ▮ 773 729 8056

From: Kenyetta McLaurin <kmclaurin@macapartments.com<mailto:kmclaurin@macapartments.com>>
Sent: Thursday, April 20, 2023 6:08 PM
To: R Moore ▮▮▮▮▮▮▮mailto:rmoore▮▮▮
Subject: Re: Mac ▮▮▮▮▮Apartment Search ▮▮▮▮▮

Hi Rysheena,

Did you want top set up an appointment to view the Algonquin Apartments or any of our other properties?

With Gratitude,

Kenyetta McLaurin

Leasing Agent

# Exhibit 1-4

# Mac Properties Letter Submission

**Taft/**

111 East Wacker, Suite 2800
Chicago, IL 60601
Tel: 312.527.4000 | Fax: 312.527.4011
taftlaw.com

**Jillian S. Cole**
Direct Dial: (312) 836-4019
*e*-Facsimile: (312) 275-7580
E-Mail: jcole@taftlaw.com

IN REFERENCE TO: 102139-00016



RECEIVED
CITY OF CHICAGO

JUN 2 0 2023

COMMISSION ON
HUMAN RELATIONS

COPY

June 19, 2023

**VIA EMAIL AND HAND DELIVERY**
City of Chicago
Commission on Human Relations
c/o Investigator Connie Simonelli
740 N. Sedgwick, 4th Floor
Chicago, Illinois 60654

>    *Re:    IDHR Chart Number:  23-H-38*
>    *Complainant:  Rysheena Moore*

Dear Investigator Simonelli:

    This letter is the statement of position of Mac Property Management, LLC ("Mac"), Donell Chenault ("Chenault") and Labaran Salamatu ("Salamatu," and sometimes collectively with Mac and Chenault, the "Respondents"), and is submitted to assist the Illinois Department of Human Relations ("Department") in its investigation of the above-referenced complaint of discrimination filed by Ms. Rysheena Moore ("Ms. Moore" and/or "Complainant").[1]  The information in this letter is confidential and should not be released to any person or entity without Respondents' prior written consent.  This preliminary position statement is based on information obtained from business records of Respondents and interviews with Mac's employees.  Respondents reserve the right to submit additional information relating to this complaint.[2]

## I.    THE COMPLAINT, BACKGROUND AND MS. MOORE'S CLAIM

    Ms. Moore filed her discrimination complaint on April 10, 2023 (the "Complaint"), a true and accurate copy of which is attached hereto as Exhibit 1.  In the Complaint, Ms. Moore alleges that she

---

1 For purposes of this response, the Respondents assume that Ms. Moore meant to name Mac Property Management, LLC, instead of MAC Properties, as a respondent herein.

2 This position statement does not constitute an affidavit or a binding statement of Respondents' legal positions, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with Ms. Moore's claims. Because additional facts likely would be uncovered through discovery or following a full investigation, Respondents in no way waive their right to present new or additional information at a later date, for substance or clarification.  Moreover, by responding to this charge, Respondents do not waive, and hereby preserve, any and all substantive and procedural defenses that may exist to the charge and Ms. Moore's allegations. Respondents request that any efforts to contact the Respondents be directed through their counsel.

127534976v1                                   52

was subject to discriminatory terms, conditions, privileges, or services and facilities related to housing because of her income.

### A. Respondent's Business and its Properties

Mac is a well-established company that builds, renovates and manages apartments for rent in Chicago and in other cities. Mac is committed to providing its tenants with an exemplary living experience through the preservation, restoration and renovation of its properties in, *inter alia*, Chicago, Illinois. It is able to provide the best possible living experience for its residents through, among other things, its dedication to preserving the environment, improving infrastructures and enhancing the beauty of neighborhoods. Mac offers a wide range of residences in Chicago from studios to six (6) bedroom apartments, walk-ups to high-rises, and with finishes that range from vintage and classic to modern and contemporary which are all conveniently located in communities located near centers of employment, shopping, transportation, arts and entertainment. Mac provides rental properties in Chicago's Hyde Park/Kenwood communities.

### B. Mac's Non-Discriminatory Policies

In order to apply for a Unit at a property managed by Mac, an applicant must submit an application (the "Application"). A true and accurate copy of the Application submitted by Complainant is attached hereto as Exhibit 2. The Application is a joint form that is accepted by the Illinois Housing Department Authority, the City and Cook County. Each applicant must pay a $50.00 fee in order for the application to be processed. The Application states, in pertinent part, as follows:

"[Mac] is pledged to the letter and spirit of Title VII of the Civil Rights Act of 1968, the Fair Housing Amendments Act of 1988, the Illinois Human Rights Act of 1979 and other fair housing laws and ordinances that make it unlawful to discriminate in the rental of a dwelling or in the provision of services and facilities on the basis of race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military discharge status, order of protection status or ***source of income*** or other characteristic protected by law." (Exhibit 2, pg. 2) (emphasis added).

In addition to the Application, each applicant is given a copy of Mac's General Rental Criteria and Occupancy Criteria Guidelines (the "Policy"), a true and accurate copy of which is attached hereto as Exhibit 3. The Policy states, in pertinent part, as follows:

"IX. PROOF OF INCOME.

Must substantiate income information provided on the application and must be equal to or greater than 2-3 (Based on Building) times the effective rent. Income verification must be provided prior to the final approval. ***Mac accepts any and all lawful sources of income.*** Verifications may include, but are not limited to the following: .....Housing Vouchers...Proof of government payments..." (Exhibit 3, pg 1) (emphasis added).

Thus, Mac unequivocally accepts housing vouchers and government payments as sources of income from all prospective tenants. Numerous tenants in Mac Properties are housing voucher holders. All parties submitting an application are held to the same standards and qualified with the same criteria. All applicants are subject to the aforementioned process and Policy. Mac does not deviate from this process under any circumstances to ensure that all applicants are treated equally.

127534976v1

53

### C.     Ms. Moore's Claim.

Ms. Moore specifically claims that Respondent violated Chapter 5-8 of the Municipal Code of the City of Chicago (the "Code") because Respondents purportedly refused to lease Ms. Moore a two-bedroom apartment at Regents Park Apartments (a "Unit") and "steered" her away to other areas. (Complaint, para. 1).   Specifically, she alleges that Salamatu, an employee with Mac, refused to schedule a tour of a Unit because she was a Chicago Housing Authority Housing Choice Voucher (HCV) holder, and did not have her moving papers in hand.  She further claims that a "man" at Mac told her that Salamatu's conduct was "illegal."  Further, she alleges that Chenault, an employee at Mac, informed Ms. Moore that she did not qualify for Regents Park Apartments based upon her monthly income, and instead emailed her several units that she did qualify for.

Also, in the Complaint, Ms. Moore does not claim that she submitted an application to rent a Unit from Mac or was officially denied tenancy.  Nor does the Complaint allege that Mac refused to consider her housing voucher and/or Social Security benefits as income.

### The Respondents' Response to Ms. Moore's Claim

The Respondents state that they never refused to show Ms. Moore a unit at any property managed by Mac.  On or about February 13, 2023, after Ms. Moore made inquiry on Mac's website about a Regents Park Apartment, Donell Chenault ("Chenault") contacted Ms. Moore to better assist her in her search for an apartment. (See Affidavit of Donell Chenault, ¶ 5, attached hereto as Exhibit 1). Thereafter, on February 14, 2023, Chenault followed up with Ms. Moore to see if she was still interested in Regents Park Apartments.  (Exhibit 1, ¶ 6).  Ms. Moore and Chenault tentatively agreed to meet for a tour on February 16, 2023, but that tour was never confirmed between the parties. (Exhibit 1, ¶ 7).  Thereafter, On February 20, 2023, Chenault advised Ms. Moore that Regents Park did not currently have units within her budget, but immediately sent her alternative units managed by Mac in the same area.  (Exhibit 1, ¶ 8).  Chenault later spoke with Ms. Moore concerning the units by telephone, but not by email. (Exhibit 1, ¶ 9).

On February 22, 2023, Ms. Moore met agent Labaran Salamatu ("Salamatu").  (See Affidavit of Labaran Salamatu, ¶ 5, attached hereto as Exhibit 2).  Salamatu advised Ms. Moore that Chenault was assigned as her rental agent. (Exhibit 2,  ¶  5).  During this meeting, Salamatu never stated that moving papers were necessary in order to have a tour of any units. (Exhibit 2,  ¶ 6).  In fact, Ms. Salamatu never discussed moving papers with Ms. Moore at all.  (Exhibit 2,  ¶ 7).

In addition, Mac emailed Ms. Moore several times to help assist her in finding a unit at one of the properties managed by Mac. (See Affidavit of Kenyetta McLaurin ("McLaurin"),  attached hereto as Exhibit 3).  Specifically, in an email dated March 29, 2023, McLaurin, of Mac, sent Ms. Moore apartments and asked to set up a tour any time between Tuesday and Saturday of that week. (Exhibit 3, ¶ 5).  In response to that email, Ms. Moore asked about available units at Regents or Twin Towers. (Exhibit 3, ¶ 6).  McLaurin advised her, *inter alia*, of Mac's pricing and how Mac submits all requests to the CHA, but Ms. Moore did not respond. (Exhibit 3, ¶ 6).  Nevertheless, McLaurin followed up with Ms. Moore on April 12, 2023, and asked her if she had any questions about the leasing process or if she was still interested in leasing in Hyde Park.  (Exhibit 3, ¶ 7).  Ms. Moore responded as follows:, "I am still interested in an apartment in Hyde Park.  Thank you for following up." (Exhibit 3, ¶ 7).  On April 20, 2023, McLaurin again specifically asked Ms. Moore if she wanted to set up an appointment to tour units at any property managed by Mac. (Exhibit 3, ¶ 8).  However, Ms. Moore failed to respond to her offer.  Nevertheless, in an effort to make certain that Ms. Moore had an opportunity to tour units, McLaurin emailed Ms. Moore once again and asked again if she

would like to schedule an appointment to view any property managed by Mac. (Exhibit 3, ¶ 8). In response, Ms. Moore stated, "[t]hank you for reaching out. I am no longer moving." (Exhibit 3, ¶ 8).

## II.    DISCUSSION

### A.    Ms. Moore's Discrimination Claim Pursuant to the Ordinance Fails as a Matter of Law.

"It shall be an unfair housing practice and unlawful for any owner, lessee, sublessee, assignee, managing agent…or other person, firm or corporation having the right to rent, lease, sublease or establish rules or policies for any housing accommodation, within City of Chicago….
A. To make any distinction…or restriction against any person in the price, terms or privileges of any kind relating to the sale, rental, lease or occupancy of any real estate used for residential purposes in the City of Chicago…predicated upon the…source of income of the prospective or actual buyer or tenant thereof." Chicago Municipal Code 5-8-30 (amended Apr, 9, 2008).

In order to establish a *prima facie* case of housing discrimination the following proof is required: (1) that complainant belong[s] to a minority; (2) that respondent [was] aware of it; (3) that complainant [was] ready and able to accept respondent's offer to rent; (4) that respondent refuse[d] to deal with complainant." *Atkins v. City of Chicago Com'n on Human Relations ex. rel. Lawrence*, 281 Ill. App. 3d 1066, 1074 (1st Dist. 1996). *Hsu v. Human Rights Com'n*, 180 Ill.App.3d 949, 953 (1st Dist. 1989).

Here, Ms. Moore fails to establish a *prima facie* case of housing discrimination because she does not offer any proof that Mac was ready and able to accept an offer to rent. In fact, she does not even allege that she made an offer to rent and/or that Mac was ready and able to accept her offer. Failure to allege these essential elements is fatal to her discrimination claim.

In addition, the Emails unequivocally demonstrate that the Respondents repeatedly tried to arrange a time so Ms. Moore could, in fact, tour the units of her choice. Thus, the Emails belie the unsupported allegations in the Complaint that Mac refused to deal with Ms. Moore, which is another required element of her discrimination claim that also fails. Simply put, Ms. Moore was repeatedly contacted by Mac so she could take a tour of units of her choice, regardless of what her income was and regardless of whether she had her Housing Choice Voucher moving papers in hand, in buildings that were managed by Mac. She was never denied a chance to tour a unit or a rental opportunity. Moreover, the Affidavits submitted in support of this Position Statement evidence the following: (i) that Ms. Moore was not told by anyone at Mac that she needed moving papers to tour a unit; (ii) that Ms. Moore was never denied her right to tour units at any property managed by Mac; (iii) that Ms. Moore was not told by anyone at Mac that Salamatu's actions were illegal; and (iv) that the only reason she could not take a tour on February 22, 2023, was because Ms. Salamatu already had a previously scheduled tour.

Finally, even if Ms. Moore had properly made these allegations, and she does not, her claim would still fail because she never filled out an application to rent from Mac. A completed application is a necessary element to establish a *prima facie* case in a failure to rent case. *See Gardner v. Olatian*, CCHR NO. 10-H-50 at 6 (Dec, 19, 2012). In *Gardner*, the Commission held that "the submission of an application is an element of a complainant's prima facie case in a failure to rent case where, - as here, the evidence shows that an application is a necessary precondition to rent unless the complainant can show that it would have been a 'futile gesture' for him or her to have applied." *Id.*

It is undisputed that Ms. Moore did not submit any application to rent a Unit. In addition, Ms. Moore cannot demonstrate that it would have been a "futile gesture" for her to have applied for a

Unit. To rely on the futile gesture doctrine, a complainant must show the following: "(a) that she is a member of a protected class who was a bona fide renter of the property and financially able to rent the apartment at the time it was available; (b) that the owner of the apartment…discriminated against people with her source of income; (c) that she was reliably informed of this policy of discrimination and would have taken steps to rent the apartment but for the discrimination; and (d) that [owner] would have discriminated against complainant had complainant applied for the property." *Id.* At 7.

Here, Ms. Moore does not, and cannot, allege, that Mac discriminated against people using housing vouchers as a source of income. As already discussed herein, Mac does, indeed, accept housing vouchers and government benefits as a source of income pursuant to the Policy. Finally, Ms. Moore does not allege that she was informed of any policy of discrimination wherein Mac would refuse to accept housing vouchers or government benefits as a source of income. All that is alleged is that someone allegedly told her that she did not qualify for a certain unit at Regents Park Apartments and that she was denied a tour of certain units because she did not have any moving papers with her. But no policy of discrimination is alleged to have been conveyed to Ms. Moore. Therefore, the futile gesture doctrine does not apply here.

Simply put, Ms. Moore does not offer any evidence of discrimination based on source of income and has failed to establish a *prima facie* case of housing discrimination.

## III. CONCLUSION

For the foregoing reasons, Respondent Mac Property Management, LLC, respectfully requests that the Department dismiss Ms. Moore's Complaint.

Very truly yours,

TAFT STETTINIUS & HOLLISTER LLP

Jillian S. Cole

# Exhibit 1-5

# CCHR Proceeding Rules, Housing Discrimination



**City of Chicago**
**COMMISSION ON HUMAN RELATIONS**

740 N. Sedgwick, Suite 400, Chicago, IL 60654
Phone 312-744-4111, Fax 312-744-1081, TTY 312-744-1088
www.chicago.gov/cchr

# RULES

**implementing the**

## Chicago Human Rights Ordinance

## Chicago Fair Housing Ordinance

## Commission on Human Relations Enabling Ordinance

## CONTENTS

|  |  | PAGE |
|---|---|---|
| **PART 100** | **GENERAL DEFINITIONS** | 1 |
| **PART 200** | **PROCEDURAL REQUIREMENTS** | 3 |
| SUBPART 210 | Pleadings | 3 |
| SUBPART 220 | Investigation And Subpoena Procedures | 14 |
| SUBPART 230 | Settlement | 20 |
| SUBPART 235 | Sanctions For Procedural Violations | 21 |
| SUBPART 240 | Administrative Hearings | 25 |
| SUBPART 250 | Review And Compliance | 34 |
| SUBPART 260 | Commission Rule-Making | 35 |
| SUBPART 270 | General Procedures | 36 |
| **PART 300** | **EMPLOYMENT DISCRIMINATION** | 42 |
| **PART 400** | **HOUSING DISCRIMINATION** | 53 |
| **PART 500** | **DISCRIMINATION IN PLACES OF PUBLIC ACCOMMODATION** | 60 |
| **PART 600** | **DISCRIMINATION ON THE BASIS OF DISABILITY IN PUBLIC ACCOMMODATIONS AND COMMERCIAL FACILITIES** | 63 |

**Effective September 14, 2023**

i

PART 100         GENERAL DEFINITIONS     1
PART 200         PROCEDURAL REQUIREMENTS     3

## SUBPART 210     PLEADINGS        3

SECTION 210.100     COMPLAINTS  3

| | | |
|---|---|---|
| Rule 210.110 | General Jurisdiction | 3 |
| Rule 210.120 | Filing of Complaint | 3 |
| Rule 210.122 | Treatment of Adequate and Defective Complaints | 4 |
| Rule 210.125 | Failure to Provide Information Adequate to Enable Service | |
| | 4 | |
| Rule 210.127 | Complainant's Obligations to Cooperate | 5 |
| Rule 210.130 | Commission-Initiated Complaints | 5 |
| Rule 210.140 | Service of Complaint | 5 |
| Rule 210.145 | Amendment to Cure Technical Defects or Omissions | 5 |
| Rule 210.150 | Amendment of Claims or Allegations | 5 |
| Rule 210.160 | Amendment to Add or Substitute Parties | 7 |
| Rule 210.170 | Class Actions | 8 |
| Rule 210.180 | Consolidation | 8 |
| Rule 210.190 | Voluntary Withdrawal of Complaint | 8 |
| Rule 210.195 | No Action Possible Against Respondent | 9 |

SECTION 210.200     RESPONSES TO COMPLAINTS  9

| | | |
|---|---|---|
| Rule 210.210 | Notice of Response Requirements | 9 |
| Rule 210.220 | Deadline to Respond | 9 |
| Rule 210.230 | Extension of Time to Respond | 9 |
| Rule 210.240 | Form of Certification | 9 |
| Rule 210.250 | Form and Content of Response | 10 |
| Rule 210.260 | Failure to Respond | 10 |
| Rule 210.270 | Respondent Obligations | 11 |
| Rule 210.280 | Counterclaims | 11 |

SECTION 210.290     COMPLAINANT REPLY AND SUPPORTING DOCUMENTATION 11

| | | |
|---|---|---|
| Rule 210.292 | Complainant Opportunity to Reply | 11 |
| Rule 210.294 | Deadline for Complainant's Supporting Documentation | 12 |
| Rule 210.296 | Extension of Time to Reply or Submit Supporting | |
| | Documentation | 12 |
| Rule 210.298 | Failure to Reply or Submit Supporting Documentation | 12 |

SECTION 210.300     MOTIONS AND BRIEFING     12

| | | |
|---|---|---|
| Rule 210.310 | General Rules for Motions | 12 |
| Rule 210.320 | Motions for Extension of Time or Continuance | 12 |
| Rule 210.330 | Motions to Dismiss | 13 |
| Rule 210.340 | Motions for Summary Judgment | 13 |
| Rule 210.350 | Commission-Initiated Briefing | 13 |

SECTION 210.400     FROVOLOUS PLEADINGS OR REPRESENTATIONS     13

| | | |
|---|---|---|
| Rule 210.410 | Effect of Submissions to Commission | 13 |
| Rule 210.420 | Penalties for Frivolous Pleadings or Representations | 14 |

## SUBPART 220     INVESTIGATION AND SUBPOENA PROCEDURES     14

SECTION 220.100     INVESTIGATION PROCESS     14

| | | |
|---|---|---|
| Rule 220.110 | Description of Investigation | 14 |
| Rule 220.120 | Investigative Orders to Parties | 15 |

ii

Rule 220.130   Continuing Obligation to Provide Relevant Information 15
SECTION 220.200        SUBPOENA PROCEDURES        15
Rule 220.210   Issuance of a Subpoena                                    15
Rule 220.220   Manner of Service                                         16
Rule 220.230   Objections to Issued Subpoenas                            16
Rule 220.240   Failure to Comply with Subpoena                           17
SECTION 220.300        SUBSTANTIAL EVIDENCE AND OTHER DETERMINATIONS        18
Rule 220.310   Determination as to Substantial Evidence                  18
Rule 220.320   Decision Process                                          18
Rule 220.330   Dispositive Orders                                        18
SECTION 220.400        ACCESS TO INVESTIGATIVE FILES        19
Rule 220.410    Access to Files                                          19
Rule 220.420    Access by Governmental Agencies                          20
SUBPART 230        SETTLEMENT                                             20
Rule 230.100   Settlement Policy and Settlement Conference               20
Rule 230.110   Settlement Conference Procedure                           20
Rule 230.120   Nondisclosure of Settlement Discussions                   20
Rule 230.130   Closure of a Case by Settlement                           20
Rule 230.140   Noncompliance with Approved Settlement Agreement          21
SUBPART 235        SANCTIONS FOR PROCEDURAL VIOLATIONS                    21
SECTION 235.100        SANCTION PROCEDURES        21
Rule 235.110   Sanctions Generally                                       21
Rule 235.120   Notice Requirements                                       22
Rule 235.130   Procedure After Notice of Potential Sanctions             22
Rule 235.140   Order Imposing Sanction                                   22
Rule 235.150   Motion to Vacate or Modify Sanction                       22
SECTION 235.200        DISMISSAL FOR FAILURE TO COOPERATE        23
Rule 235.210   Grounds for Dismissal                                     23
Rule 235.220   Other Dismissal Grounds and Procedures                    23
SECTION 235.300        DEFAULT        23
Rule 235.310   Grounds for Default                                       23
Rule 235.320   Effect of Default                                         24
SECTION 235.400        MONETARY SANCTIONS        24
Rule 235.410   Monetary Sanctions Generally                              24
Rule 235.420    Fines                                                    24
Rule 235.430    Costs to a Party                                         24
Rule 235.440    Monetary Sanctions on Attorneys                          25
Rule 235.450    Recovery from Other Payments in Case                     25
SUBPART 240        ADMINISTRATIVE HEARINGS                               25
SECTION 240.100        NOTICE AND PRE-HEARING PROCEDURES        25
Rule 240.110   Notice of Commencement of Hearing Process                 25
Rule 240.115   Scheduling of Proceedings                                 25
Rule 240.120   Pre-Hearing Conferences                                   25
Rule 240.130   Pre-Hearing Memorandum                                    25
SECTION 240.200        DISQUALIFICATION OF A HEARING OFFICER  26
Rule 240.210   Motions to Disqualify                                     26
Rule 240.220   Interlocutory Review of Decision Not to Disqualify        27
SECTION 240.300        HEARING PROCESS        27
Rule 240.307   Powers and Duties of Hearing Officer                      27

iii

Rule 240.314    Rights of Parties and Rules of Evidence            27
Rule 240.321    *Ex Parte* Communications                         28
Rule 240.328    Briefing                                          28
Rule 240.335    Privileges                                        28
Rule 240.342    Stipulations                                      28
Rule 240.349    Motions, Objections, and Orders                   28
Rule 240.363    Waiver of Objections and Arguments                29
Rule 240.370    Commission Employees as Witnesses                 29
Rule 240.398    Penalties for Failure to Appear at Hearing        29
SECTION 240.400      DISCOVERY    29
Rule 240.407    Request for Documents                             29
Rule 240.435    Additional Discovery                              30
Rule 240.442    Duty to Supplement                                30
Rule 240.456    Motions to Compel                                 30
Rule 240.463    Sanctions for Failure to Comply                   30
SECTION 240.500      RECORD OF HEARING  30
Rule 240.510    Official Record                                   30
Rule 240.520    Sealing Record                                    31
Rule 240.530    Transcript                                        31
SECTION 240.600      DECISIONS AFTER HEARING    32
Rule 240.610    Recommended Ruling on Liability and Relief        32
Rule 240.620    Board of Commissioners Decision on Liability and Relief
                32
Rule 240.630    Determination of Attorney Fees and Costs          33
Rule 240.640    Supplemental Attorney Fees and Costs after Court Review
                34
SECTION 240.700      PRE- AND POST-JUDGMENT INTEREST34
SUBPART 250      REVIEW AND COMPLIANCE                             34
SECTION 250.100      REVIEW          34
Rule 250.110    Review of Dismissals                              34
Rule 250.120      Other Review                                    34
Rule 250.130    Content and Grounds for Review                    34
Rule 250.140    Grant or Denial of Request for Review             35
Rule 250.150    Appeal of a Final Order                           35
SECTION 250.200      COMPLIANCE WITH FINAL ORDERS    35
Rule 250.210    Duty to Comply                                    35
Rule 250.220    Enforcement of Final Orders                       35
SUBPART 260      COMMISSION RULE-MAKING                            35
Rule 260.100    Construction of Rules and Rules                   35
Rule 260.110    Superseding of Rules and Rules                    36
Rule 260.120    Amendment of Rules                                36
Rule 260.130    Availability of Rules                             36
Rule 260.140    Petition for Rule-Making                          36
Rule 260.150    Separability                                      36
Rule 260.160    Effect of Intergovernmental Agreements            36
SUBPART 270      GENERAL PROCEDURES                               36
SECTION 270.100      TIMING AND DEADLINES        36
Rule 270.110    Computation of Time                               36

iv

Rule 270.120   Expedited Proceedings                                          36
Rule 270.140   Commission Deadlines                                           37
SECTION 270.200        SERVICE AND FILING   37
Rule 270.210   Service of Documents                                          37
(b)      Certificate of Service        37
Rule 270.220   Filing with the Commission                                    37
(b)      Manner of Filing 37
Rule 270.230   Service and Filing by Electronic Mail                          38
SECTION 270.300        REPRESENTATION OF PARTIES          38
Rule 270.310   Attorney Appearance                                           38
Rule 270.320   Supervised Senior Law Students or Graduates                    38
Rule 270.330   Attorney Licensed Out of State                                38
Rule 270.340   Withdrawal of Attorney Appearance                             39
SECTION 270.400        INTERPRETERS AND ACCESSIBILITY   39
Rule 270.410   Interpreters                                                  39
Rule 270.420   Accessibility                                                 39
SECTION 270.500        PRECEDENT       39
Rule 270.510   Applicable Precedent                                          39
Rule 270.520   Citation Form                                                 40
Rule 270.530   Publication and Copies of Decisions                           40
SECTION 270.600        WAIVER OF COMMISSION FEES          40
PART 300        EMPLOYMENT DISCRIMINATION          42
SUBPART 305      *BONA FIDE* OCCUPATIONAL QUALIFICATIONS            42
Rule 305.100   *Bona Fide* Occupational Qualifications                       42
Rule 305.110   Examples of BFOQs                                             42
SUBPART 310      EMPLOYMENT AGENCIES                                         42
Rule 310.100   Prohibition of Discrimination by Employment Agencies 42
Rule 310.110   Restriction of Listings                                       42
SUBPART 315      ADVERTISING OF JOB OPPORTUNITIES               43
Rule 315.100   Discriminatory Advertising                                    43
SUBPART 320      PRE-EMPLOYMENT INQUIRIES                                    43
Rule 320.100   Discriminatory Pre-Employment Inquiries                       43
Rule 320.110   Citizenship and Similar Inquiries                             43
SUBPART 325      COMPENSATION                                                43
Rule 325.100   Discriminatory Compensation                                   43
SUBPART 330      FRINGE BENEFITS                                             43
Rule 330.100   Definition of "Fringe Benefits"                              43
Rule 330.110   Prohibition of Discrimination                                 44
Rule 330.120   Cost Not a Defense                                            44
Rule 330.130   Memberships in Clubs                                          44
Rule 330.140   Pension or Retirement Plan                                    44
SUBPART 335      POLICIES RELATING TO PREGNANCY AND CHILDBIRTH
44
Rule 335.100   Prohibition of Discrimination                                 44
Rule 335.110   Disabilities Caused by Pregnancy or Childbirth                44
Rule 335.120   Temporary Disabilities                                        44
Rule 335.130   Non-Disability Leaves                                         44
SUBPART 340      SEXUAL HARASSMENT                                           45

v

| | | |
|---|---|---|
| Rule 340.100 | Totality of the Circumstances | 45 |
| Rule 340.110 | Liability for Supervisors' Actions | 45 |
| Rule 340.120 | Liability for Actions of Non-Managerial Personnel | 45 |
| Rule 340.130 | Benefits Withheld from Others | 45 |
| SUBPART 345 | HARASSMENT (OTHER THAN SEXUAL HARASSMENT) | 45 |
| Rule 345.100 | Prohibition of Harassment | 45 |
| Rule 345.110 | Definition of Harassment | 45 |
| Rule 345.120 | Liability for Supervisors' Actions | 46 |
| Rule 345.130 | Liability for Actions of Non-Managerial Personnel | 46 |
| SUBPART 350 | DISCRIMINATION BASED ON NATIONAL ORIGIN | 46 |
| Rule 350.100 | Citizenship Requirements | 46 |
| Rule 350.110 | Speak-English-Only Rules | 46 |
| SUBPART 355 | DISCRIMINATION BASED ON RELIGION | 46 |
| Rule 355.100 | Reasonable Accommodation | 46 |
| Rule 355.110 | Alternatives For Accommodating Religious Practices | 47 |
| Rule 355.120 | Attendance and Seniority Rights | 48 |
| Rule 355.130 | Inquiries Regarding Applicant Availability | 48 |
| SUBPART 360 | DISCRIMINATION BASED ON MILITARY DISCHARGE STATUS | 48 |
| Rule 360.100 | Determination of Discharge Status | 48 |
| Rule 360.110 | Exemption for Fiduciary Responsibilities | 48 |
| SUBPART 365 | DISCRIMINATION BASED ON DISABILITY | 49 |
| Rule 365.100 | Definitions | 49 |
| Rule 365.110 | Discriminatory Acts | 49 |
| Rule 365.120 | Danger to Health or Safety | 49 |
| Rule 365.130 | Reasonable Accommodation | 50 |
| Rule 365.140 | Undue Hardship | 50 |
| Rule 365.150 | Pre-Employment Inquiries and Examinations | 51 |
| Rule 365.160 | Employment Inquiries and Examinations | 51 |
| Rule 365.170 | Standards | 51 |
| SUBPART 370 | EXEMPTIONS | 52 |
| PART 400 | HOUSING DISCRIMINATION | 53 |
| SUBPART 410 | DEFINITIONS | 53 |
| SUBPART 420 | DISCRIMINATORY ACTS | 54 |
| Rule 420.100 | Terms and Conditions | 54 |
| Rule 420.105 | Pre-Rental or Pre-Sale Inquiries | 55 |
| Rule 420.110 | Steering | 55 |
| Rule 420.120 | Circulation of Discriminatory Communications | 55 |
| Rule 420.130 | Refusal to Sell, Lease or Rent | 56 |
| Rule 420.140 | Discrimination in Financing | 56 |
| Rule 420.150 | Blockbusting/Panic Peddling and Encouragement of Blockbusting/Panic Peddling | 57 |
| Rule 420.160 | Refusal of Examination of Listings | 57 |
| Rule 420.170 | Sexual Harassment | 57 |
| Rule 420.175 | Harassment (Other than Sexual Harassment) | 58 |
| Rule 420.180 | Discrimination Against Persons with Disabilities | 58 |
| Rule 420.190 | Standards | 59 |

SUBPART 430         EXEMPTIONS         59

PART 500         DISCRIMINATION IN PLACES OF PUBLIC ACCOMMODATION  60

SUBPART 510         DEFINITION OF A PUBLIC ACCOMMODATION         60

         Rule 510.100    Interpretation of Ordinance         60

         Rule 510.110    Examples of Public Accommodations         60

SUBPART 520         DISCRIMINATORY ACTS         61

         Rule 520.100    Prohibition of Discriminatory Conduct         61

         Rule 520.120    Sexual Harassment         61

         Rule 520.130    Harassment (Other than Sexual Harassment)         61

SUBPART 530         DISABILITY DISCRIMINATION IN GOVERNMENTAL

ENTITES OPEN TO THE PUBLIC         62

         Rule 530.100    Prohibition of Discriminatory Conduct         62

         Rule 530.105    Accommodation of Persons with Disabilities         62

         Rule 530.110    Definition of "Full Use"         62

         Rule 530.120    Definition of "Reasonable Accommodation"         62

         accommodations (physical changes or changes in rules, policies, practices
             or procedures) which provide persons with a disability access to
             the same services, in the same manner as are provided to persons
             without a disability.         62

         Rule 530.130    Definition of "Undue Hardship"         62

SUB PART 530.140   STANDARDS         63

SUB PART 540   EXEMPTIONS         63

SUBPART 550         OTHER LAWS         63

PART 600   DISCRIMINATION ON THE BASIS OF DISABILITY IN PUBLIC ACCOMMODATIONS
AND COMMERCIAL FACILITIES         63

SECTION 600.100    General         63

         Rule 600.101    Purpose.         63

         Rule 600.102    Application.         63

         Rule 600.103    Relationship to other laws.         64

         Rule 600.104    Definitions.         65

SECTION 600.200    General Requirements         69

         Rule 600.201    General         69

         Rule 600.202    Activities         69

         Rule 600.203    Integrated Settings         69

         Rule 600.204    Administrative Methods         70

         Rule 600.205    Association         70

         Rule 600.206    Retaliation or Coercion         70

         Rule 600.207    Places of Public Accommodation Located in Private
             Residences         70

         Rule 600.208    Direct Threat         70

         Rule 600.209    Illegal Use of Drugs         71

         Rule 600.210    Smoking         71

         Rule 600.211    Maintenance of Accessible Features         71

         Rule 600.212    Insurance         72

         Rule 600.213    Relationship of Section 600.200 to Sections 600.300 and
             600.400 of This Part         72

Section 600.300         Specific Requirements         72

Rule 600.301 Eligibility Criteria 72
Rule 600.302 Modifications in Policies, Practices, or Procedures 72
Rule 600.303 Auxiliary Aids and Services 78
Rule 600.304 Removal of Barriers 80
Rule 600.305 Alternatives to Barrier Removal 83
Rule 600.306 Personal Devices and Services 83
Rule 600.307 Accessible or Special Goods 83
Rule 600.308 Seating in Existing Assembly Areas 84
Rule 600.309 Examinations and Courses 84
Rule 600.310 Transportation Provided by Public Accommodations 85
Rule 600.311 Mobility Devices 86
Section 600.400 New Construction and Alterations 87
Rule 600.401 New Construction 87
Rule 600.402 Alterations 88
Rule 600.403 Alterations: Path of Travel. 89
Rule 600.404 Alterations: Elevator Exemption. 91
Rule 600.405 Alterations: Historic Preservation. 92
Rule 600.406 Standards for New Construction and Alterations. 92
Rule 600.500 Effective Date 94

# PART 100       GENERAL DEFINITIONS

Definitions for many key terms can be found in Article XIV of Chapter 2-120, and Article I of Title 6, especially in Section 6-10-020, of the Municipal Code of Chicago ("M.C.C."). All other definitions originate in these rules.

(1)      **"Board of Commissioners"** means that body established by Section 2-120-490 of the Municipal Code of Chicago.

(2)      **"Commencement of the hearing process"** means the issuance of an order appointing a hearing officer to conduct an administrative hearing.

(3)      **"Commission"** means one or more of the staff responsible for the day-to-day operations of the Commission on Human Relations, including the Chair or Commissioner.

(4)      **"Complainant"** means any person, including the Commission, that files a complaint with the Commission.

(5)      **"Complaint"** means a sworn statement filed with the Commission either on the form provided for this purpose by the Commission or on a form that is its substantial equivalent, which alleges an ordinance violation and which includes the information required by Rule 210.120(c).

(6)      **"Conciliation"** or "**Mediation**" is a process calling for parties to work together with the aid of a neutral facilitator – a conciliator or mediator – who assists them in reaching a settlement. The conciliator's role is advisory and non-binding, as the resolution of the dispute rests with the parties themselves. Conciliator or mediator means a person designated by the Commission to conduct a settlement conference or otherwise attempt to secure a voluntary settlement, but who does not participate in the investigation, serve as hearing officer, or in any other respect participate in the adjudication of the same case.

(7)      **"Criminal History"** means  an individual's arrest record and conviction record.

(8)      **"Defective Complaint"** means a document filed with the Commission which appears to be intended as a complaint but which does not substantially meet the requirements of Rule 210.120 and so is treated pursuant to Rule 210.122(a).

(9)      **"Final Order"** means (i) an order dismissing a complaint if no request for review is filed within the time period provided in Rule 250.110, (ii) a ruling on a request for review filed after an order dismissing a complaint, or (iii) the later of a Board of Commissioners ruling on liability after an administrative hearing or a Board of Commissioners ruling on attorney fees and costs, if any.

(10)      **"Hearing Officer"** or "**Administrative Hearing Officer**" means any attorney duly licensed by the State of Illinois who is designated by the Commission to conduct an administrative hearing.

(11)      **"Labor Organization"** means any organization, agency, or employee representation committee, group, association or plan in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment.

(12)      **"Membership in one of the Protected Classes"** means that a person is or has, or is perceived to be or have, one or more of the following: a particular race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, source of income, credit history (as to employment only), or criminal history.

(13)      **"National Origin"** means the place in which a person or one of the person's ancestors was born. Being of a particular national origin means that a person has or is perceived to have the physical, cultural, or linguistic characteristics of a particular national origin group.

1

(14)     **"Ordinance"** means one or more of the Chicago Human Rights Ordinance, Article I of M.C.C. Title 6 (sometimes referred to herein as "HRO"); the Chicago Fair Housing Ordinance, M.C.C. Chapter 5-8 (sometimes referred to herein as "FHO"); and the Enabling Ordinance establishing the Chicago Commission on Human Relations, Article XIV of M.C.C. Chapter 2-120.

(15)     **"Party"** means either a complainant or a respondent.

(16)     "**Person"** means, but is not limited, to, one or more individuals, corporations, partnerships, political subdivisions, municipal corporations or other governmental units or agencies, associations, labor organizations, joint apprenticeship programs, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees in cases under Title 11 of the United States Code, receivers, trustees or other fiduciaries, and any successors or assigns thereof.

**"Protected Class"** means one or more of the following: race, color, sex, gender identity, age, religion, disability, national origin, ancestry, sexual orientation, marital status, parental status, military status, or source of income, credit history (employment only), criminal history (employment only).

(17)     **"Respondent"** means any person, as defined herein, alleged by a complainant to have committed an ordinance violation.

(18)     **"Sex"** means the status of being male or female.

**"Violation"** or "**Ordinance Violation"** means one or more acts prohibited by the Chicago Human Rights Ordinance or the Chicago Fair Housing Ordinance.

2

# PART 200 PROCEDURAL REQUIREMENTS

## SUBPART 210 PLEADINGS

### SECTION 210.100 COMPLAINTS

**Rule 210.110 General Jurisdiction**

Any person, including persons not able to work lawfully in the United States, may file a complaint with the Commission if the complaint alleges an ordinance violation, if the alleged violation occurred within the City of Chicago, and if the complaint is filed no later than 365 days after the occurrence of the alleged violation. A complaint must meet all other jurisdictional requirements set by ordinance, these rules, Commission decisions, and court rulings.

**Rule 210.120 Filing of Complaint**

(a) Time for Filing

A complaint must be received by the Commission no later than 365 days after the date of the occurrence of the alleged ordinance violation. If the alleged violation is of a continuing nature, the date of occurrence may be any date subsequent to the commencement of the violation, up to and including the date on which it may have ceased.

(b) Filing Process

A complaint may be filed by mail, e-mail, electronic filing, personal delivery, or facsimile. A filing by e-mail or facsimile shall not be deemed complete until an original in paper form is received. A complaint is deemed filed upon receipt by the Commission at its place of business during its business hours.

(c) Complaint Content

A complaint must contain the following information to the best of the complainant's knowledge, information, and belief:

(1) Name, mailing address, and telephone number of the complainant.

(2) Identification of each individual or business respondent accused of the alleged ordinance violation. If the full or correct name is not known, the complaint must provide a title or other designation which identifies the respondent, such as "Owner of 1234 Main Street" or "President of ABC Company."

(3) The address of each respondent sufficient to enable the Commission to effect service by mail, and the telephone number, if known.

(4) A description of the conduct, policy, or practice alleged to constitute the ordinance violation, in such detail as to substantially apprise the respondent(s) and the Commission of the timing, location(s), and facts of the alleged violation as well as the basis or bases of discrimination.

(d) Form

A complaint must be in writing and comprehensible, using the Commission's form or a substantial equivalent. Documentation in support of the complaint may be submitted at the time of filing but will not be treated as part of the complaint. A complaint shall not exceed five pages without leave of the Commission.

3

(e)      Oath

The complainant must sign the complaint under oath, using the following oath or one that is substantially equivalent: "I swear or affirm that I have read this complaint and that it is true and correct to the best of my knowledge, information, and belief." Notarization is not required.

(f)      Request for Relief

Complainants are not required to specify the relief requested at the time of filing. A request in a complaint for certain types or amounts of relief shall not be deemed a waiver of any other relief.

(g)      Effect of Filing on Other Claims

Filing of a complaint or the failure to file a complaint with the Commission does not bar any person from seeking any other remedy provided by law except that, in certain instances, one or more intergovernmental agreements may specify the governmental agency or court before which a person may pursue the complaint.

## Rule 210.122      Treatment of Adequate and Defective Complaints

(a)      Notice of Defective Complaint

If the Commission receives a document which does not substantially meet the requirements of Rule 210.120, the Commission shall record the date of filing on the face of the document but shall not docket it as a complaint or proceed to investigate it. Instead, the Commission shall mail to the person submitting the document a notice stating the defect or omission which must be corrected. The notice shall explain that the submitted document has not been accepted as a complaint, that it is the person's responsibility to file an adequate complaint no later than 365 days after the occurrence of the alleged ordinance violation, and that failure to file an adequate and timely complaint means that the person cannot proceed before the Commission with any claims stated in the document.

The Commission may attempt to telephone or otherwise assist the person submitting the document but is not required to do so. Neither the submission of a defective complaint nor any attempt by the Commission to contact or assist a person seeking to file a complaint shall toll the 365-day filing deadline or relieve the person of responsibility to file an adequate complaint. The Commission is not required to retain any defective complaint or accompanying materials for more than 365 days.

(b)      Docketing of Substantially Adequate Complaints

When the Commission receives a document which substantially meets the requirements of Rule 210.120, the Commission shall docket it as a complaint by recording the date of filing and assigning a case number, shall serve it on the respondent(s) as set forth in Regs. 210.140 and 210.210, and in other respects shall initiate the investigation process.

## Rule 210.125      Failure to Provide Information Adequate to Enable Service

If the name (or other identifier) and address of any respondent which was provided in a complaint proves inadequate to enable the Commission to serve the complaint on the respondent, the Commission shall first determine whether the error is readily identifiable and readily correctable (such as an incorrect zip code), and if so shall re-serve the complaint using the correct information and treat the error as a technical defect or omission under Rule 210.145.

If the Commission determines that the error is not readily identifiable and readily correctable, the Commission shall issue a notice of potential dismissal which informs the complainant of the nature of the inadequacy, explains that the complainant must amend the complaint with information sufficient to enable service, and warns that failure to so amend the complaint shall lead to dismissal as to any respondent who cannot be served. The notice shall allow at least 14 days from the date of mailing to amend the complaint.

4

If the complainant amends the complaint to enable service, the amendment shall relate back to the original filing date and the Commission shall serve the initial and amended complaint as set forth in Rule 210.140, allowing 28 days to respond. If the complainant does not respond to the notice or does not amend the complaint with information sufficient to enable service, the Commission shall dismiss the complaint as to any respondent that cannot be served.

### Rule 210.127        Complainant's Obligations to Cooperate

A complainant with a pending case must promptly notify the Commission of any change of address or provide a temporary address during any prolonged absence from a current address. A complainant is required to participate in the Commission's processing of the case and to provide the Commission with information needed in order for the case to proceed. A complainant must be available for any interviews, conferences, meetings, and administrative hearing on reasonable notice. Failure to cooperate with these and other rules, notices, or orders may lead to dismissal of the complaint pursuant to Rule 235.210. To the extent that complainant cooperation requirements and dismissal procedures stated in other rules differ from those stated in this rule, the more specific provision shall apply.

### Rule 210.130        Commission-Initiated Complaints

When the Commission has reason to believe that any person has violated the ordinance, the Commission may itself initiate a complaint. The Commission shall have sole discretion to determine what complaints it shall or shall not initiate. The Commission may use testers to obtain information to determine whether or not to file a complaint as well as any other investigative method permitted by ordinance. A Commission-initiated complaint shall be signed by any staff member authorized to do so by the Chair/Commissioner and shall meet the content requirements set forth in Rule 210.120. Any staff member who signs a complaint on behalf of the Commission shall not participate in any determination concerning that case including whether there is substantial evidence of an ordinance violation.

### Rule 210.140        Service of Complaint

Within 10 days of filing, the Commission shall serve on each respondent a copy of any complaint or amended complaint filed against the respondent. Service may be effected in person or by depositing the copy in a United States mailbox within 7 days of the date of filing. Service by mail shall be deemed complete 3 days after mailing of the complaint, properly addressed and posted for delivery to the person to be served, unless the person proves that the complaint was not actually received on that day. If the Commission fails to serve a complaint on a respondent due to Commission error, the Commission shall correct the error and re-serve the complaint, allowing the same number of days to respond as initially provided.

In complaints alleging sexual harassment in employment, the Commission may, upon written motion by the complainant, delay the service of a complaint to the respondent up to 30 days after it is filed.

### Rule 210.145        Amendment to Cure Technical Defects or Omissions

A complaint may be amended as a matter of right by the complainant to cure technical defects or omissions at any time. Such an amendment shall relate back to the original filing date. A technical defect or omission includes but is not limited to failure to sign a complaint under oath. On discovering a technical defect or omission, the Commission shall mail a notice or order to the complainant describing the defect or omission and instructing the complainant to amend the complaint to correct it.

Mere misnomer, that is, a mistake in naming a person or place, shall not be grounds for dismissal and may be cured at any time as long as the correct party was actually served.

### Rule 210.150        Amendment of Claims or Allegations

(a)        This rule does not apply to amendments to cure technical defects or omissions.

5

(b)     Amendment Before Determination as to Substantial Evidence

A complaint may be amended as a matter of right before a determination as to whether there is substantial evidence of the ordinance violation(s) alleged. An amended complaint shall relate back to the original filing date if it only clarifies or amplifies the allegations of the original complaint. An amended complaint may state a new claim or incident of prohibited conduct if the alleged conduct occurred within 365 days of the filing of the amended complaint.

(c)     Amendment After Determination of Substantial Evidence

After a determination of substantial evidence but prior to an administrative hearing, a complainant seeking to amend the complaint must file and serve a written motion to amend as soon as possible after learning of the information which forms the basis for the motion. The Commission (or hearing officer if one has been appointed) may grant the motion on finding all of the following:

   (1)     The claim or allegation to be added did not arise before the filing of the original complaint and any previous amended complaints or, if it did, the complainant did not know and could not have known of it before the Commission's substantial evidence finding.

   (2)     The claim or allegation to be added is substantially related to those in the original complaint and any previous amended complaints.

   (3)     Addressing the new claim or allegation will not raise new, material factual or legal issues not considered by the Commission in its investigation.

   (4)     Any objecting party has failed to demonstrate that including the claim or allegation would prejudice the party in maintaining its action or defense on the merits.

At the administrative hearing, when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings. Amendment of pleadings to conform to the evidence and raise such issues may be granted on the motion of any party at any time, even after a final order, but failure to amend does not affect the result of the hearing as to such issues. If a party objects to admission of evidence on the ground that it is not within the issues raised by the pleadings, the hearing officer may allow amendment of the pleadings and shall do so if the criteria for amendment after a determination of substantial evidence are met. An oral motion to amend may be allowed at the hearing. The hearing officer may grant a continuance to enable an objecting party to support the objection or meet the evidence, or both.

(d)     Form of Motion to Amend

Before a determination of substantial evidence, no motion to amend is required to file an amended complaint. After a determination of substantial evidence, a written motion to amend the complaint must be filed with the Commission and served on all parties and the hearing officer. The motion must state the reason for seeking to amend the complaint, must establish that the applicable criteria for amendment after a substantial evidence finding are met, and must include either the proposed amended complaint or a specific statement of the proposed amendment.

(e)     Form of Amended Complaint

Any amended complaint prior to a determination of substantial evidence must be in writing, signed under oath by the complainant, and in compliance with the form and content requirements of Rule 210.120(c) and (d). In granting a motion to amend, the Commission or hearing officer may order the filing of an amended complaint or may specify that the order granting the motion is sufficient. For amendments granted at the administrative hearing, the hearing officer may allow an amendment

6

to be stated orally on the hearing record.

    (f)    Responses

        (1)  Any objection to a motion to amend a complaint must be filed and served within 14 days of the filing of the motion. Replies shall be permitted only on leave of the hearing officer.

Unless otherwise ordered, any response to an amended complaint must be filed and served within 28 days of its filing.

## Rule 210.160    Amendment to Add or Substitute Parties

    (a)    Substitution or Addition of Complainant

    (1)    A complaint may be amended to substitute or add complainants. The amendment shall relate back to the original filing date upon finding all of the following:

        (i)    The claims of the new complainant arise out of the same transaction(s) or occurrence(s) set forth in the original complaint.

        (ii)    The respondent(s) knew or should have known that the new complainant might be involved as a complainant.

        (iii)    If after a determination of substantial evidence, the addition does not raise new, material factual or legal issues not considered by the Commission in its investigation.

        (iv)    Any objecting party has failed to demonstrate that the amendment would prejudice the party in maintaining its claim or defense on the merits.

    (2)    To substitute or add a complainant prior to a determination of whether there is substantial evidence, the complainant must file an amended complaint. When adding a complainant, the new complainant as well as the prior complainant must sign the amended complaint under oath.

    (3)    After a determination of substantial evidence, a complainant seeking to substitute or add a complainant must file and serve a written motion to amend, except that the hearing officer may allow an oral motion at any administrative hearing. The motion may be allowed at or after an administrative hearing only if the information which forms the basis for the motion was first learned at the hearing and could not have been learned beforehand, such as during discovery. The hearing officer may grant a continuance to enable an objecting party to support the objection or meet the evidence, or both.

    (b)    Substitution or Addition of Respondent

    (1)    To substitute or name an additional respondent prior to a determination of whether there is substantial evidence, the complainant must file an amended complaint. The amendment shall relate back to the original filing date upon finding either (i) that at the time of amendment, a separate complaint could be filed against the new respondent, or (ii) that the new respondent had received notice of the original complaint and of the fact that the respondent might be involved, so that the respondent will not be prejudiced in maintaining a defense on the merits.

    (2)    After a determination of substantial evidence, a complainant seeking to substitute or add a respondent must file and serve a motion to amend, except that the hearing officer may allow an oral motion at any administrative hearing. The motion may be allowed at or after an administrative hearing only if the information which forms the basis for the motion was first learned at the hearing and could not have been learned beforehand, such as during discovery. All of the following elements must be satisfied in order for the amendment to be granted

7

and to relate back to the original filing date:

    (i)    The claims against the new respondent must arise out of the same transaction(s) or occurrence(s) set forth in the original complaint.

    (ii)    The new respondent was notified or had knowledge of the filing of the original complaint.

    (iii)    The original complaint was such that the new respondent knew or should have known, within the 365-day filing period, that the complaint arose from a transaction or occurrence in which the respondent was involved.

    (iv)    The addition does not raise new, material factual or legal issues not considered by the Commission in its investigation.

    (v)    Any objecting party has failed to demonstrate that the amendment would prejudice the party in maintaining its claim or defense on the merits.

(c)    Death of a Party

When an individual party dies while a case is pending, the party's legal successor may be substituted for the deceased by amendment of the complaint including an allegation that the individual is the party's legal successor. If a respondent dies without a known successor, the Commission shall proceed under Rule 235.300. If the Commission learns that a complainant in a pending case has died, it shall make a reasonable inquiry to identify a legal successor. The Commission's reasonable inquiry may include reviewing its records for information about a possible successor but need not include surveillance or a search of court records, other public information, or business records. If the Commission is unable to identify a legal successor, it shall send a notice to the complainant's last known address seeking information, and if there is no adequate response shall dismiss the case pursuant to the procedures in Rule 235.210. If the Commission identifies a possible legal successor, it shall send a notice of potential dismissal to that person explaining the substitution procedure and requiring the person either to file an amended complaint as substitute complainant or to provide the name and address of a possible legal successor no fewer than 14 days from the mailing of the notice in order to avoid dismissal of the case.

(d)    Motions to Amend, Amended Complaints, and Responses

Procedures for motions to amend complaints, amended complaints, and responses concerning the addition or substitution of parties shall be as set forth in Rule 210.150(d), (e), and (f) for amendment of claims or allegations.

## Rule 210.170    Class Actions

Class actions, including but not limited to those described in Rule 23 of the Federal Rules of Civil Procedure, may not be filed at the Commission at any time.

## Rule 210.180    Consolidation

Whenever two or more complaints or claims involve a common question of law or fact, the Commission may consolidate them, or it may order a fact-finding conference, jurisdictional hearing, settlement conference, or administrative hearing concerning the common question(s) whenever this can be done without prejudice to any party. A party that believes it will be prejudiced may file written objections within 14 days of being notified of the consolidation. The Commission may require or allow responses to any objections from other parties and shall rule on the objections by mail.

## Rule 210.190    Voluntary Withdrawal of Complaint

8

A complainant may unilaterally withdraw all or part of a complaint at any time. A complainant's request to withdraw must be in writing and signed by either the complainant or the complainant's attorney of record. The Commission (or hearing officer if applicable) shall approve the request if it is knowingly and voluntarily made and shall issue a dismissal order notifying all parties of the scope of the withdrawal and dismissal. Withdrawals pursuant to a private settlement agreement are also subject to Rule 230.130(d).

If after informing the Commission or hearing officer of intent to withdraw the complaint, a complainant does not respond to a written notice or order setting a date to submit either a properly signed withdrawal or a written statement of intent to proceed with the case, the Commission may dismiss the case for failure to cooperate pursuant to Rule 235.210 and may impose other sanctions pursuant to Subpart 235.

**Rule 210.195       No Action Possible Against Respondent**

If after the Commission has served the complaint on a respondent, a reasonable inquiry reveals that no action can be taken against the respondent, the Commission shall issue a notice of potential dismissal as to the respondent pursuant to Rule 235.210(a). The notice shall describe the circumstances and allow the complainant no fewer than 14 days from the date of mailing to submit information sufficient to allow the case to proceed. If the complainant does not do so, the Commission may dismiss the respondent and proceed only against any respondent still viable.

Examples of grounds for dismissal under this rule include that a business respondent is out of business without a known successor or that an individual respondent is deceased without a known successor. The Commission's reasonable inquiry may include ascertaining the name and address of the registered agent of a business respondent but need not include surveillance or a search of court records, other public information, or business records. However, if it appears that a respondent has only moved or changed its status without providing the updated information required by Rule 210.270, the Commission shall not dismiss the respondent but shall proceed as set forth in Rule 210.270.

# SECTION 210.200    RESPONSES TO COMPLAINTS

**Rule 210.210       Notice of Response Requirements**

At the time the Commission serves a complaint or amended complaint, it shall notify each respondent of the procedure to file and serve a written response and the possible penalties for failure to respond. If the Commission believes a complaint does not meet its jurisdictional requirements or does not state a claim on which relief may be granted, the Commission may issue an order dismissing the complaint in whole or in part, or may seek information or briefing on the issue.

**Rule 210.220       Deadline to Respond**

Unless otherwise ordered, any response to a complaint or amended complaint must be filed and served within 28 days of the date of mailing or other service of the complaint under the procedure stated in Rule 210.140. If an amended complaint does not include substantive amendments, the Commission may shorten the time to file and serve any response to no fewer than 14 days. If the Commission seeks information or briefing on a jurisdictional or complaint sufficiency issue, it may extend or suspend any response deadline pending resolution of the issue.

**Rule 210.230       Extension of Time to Respond**

A respondent may seek an extension of time to submit all or part of a response pursuant to Rule 210.320.

**Rule 210.240       Form of Certification**

The certification of a response must use the following or substantially equivalent language:

I certify that a reasonable inquiry of known and readily available information has been made and

9

that the statements set forth above are true and correct except as to those stated to be on information and belief, as to which I certify that I believe them to be true.

The signature, the legible printed name of the person signing the certification, and the date of signature must be provided. If a respondent is a business, corporation, organization, or other non-individual entity, the certification must be signed by a person who has authority to bind that respondent; the signature of outside counsel is not sufficient; and the name of the entity and title of the person signing must also be provided, e.g. "I am the [title] of [business respondent] with authority to bind the respondent."

## Rule 210.250    Form and Content of Response

A complete response consists of two parts, as described below.

(a)        Written Response to Allegations

The response must be in writing and must contain the following information to the best of the respondent's knowledge, information, and belief. The Commission may specify a form to be used and page limits. The Commission shall consider the response to be a pleading and may use it in the same manner and with the same force and effect as though it were signed and sworn to under oath.

(1)        The correct, full name and address of each named respondent, including for corporate, organizational, or other non-individual respondents the name and address of its representative who will serve as contact person for the case.

(2)        Statements admitting or denying each fact alleged in the complaint. If, after a reasonable inquiry of known and readily available information, the respondent is without sufficient knowledge to form a belief as to the truth of an allegation, that must be stated. Any allegation for which there is no responding statement shall be deemed admitted for purposes of determining whether there is substantial evidence of an ordinance violation.

(3)        A brief statement of the respondent's position and defenses to the claims in the complaint, if not included in the statements of admission or denial. Any affirmative defenses must be stated in the response in order to be considered in determining whether there is substantial evidence of an ordinance violation.

(4)        The signature and certification of each respondent submitting the response, as described in Rule 210.240.

(b)        Supporting Documentation

The respondent must enclose with the response all supporting documentation it wishes the Commission to consider in completing the investigation and determining whether there is substantial evidence of the alleged ordinance violation. Supporting documentation may include copies of relevant evidentiary documents, witness statements or affidavits, information on evidence available from other sources, and a memorandum of law. Unless otherwise ordered, supporting documentation need not be served on the complainant.

## Rule 210.260    Failure to Respond

If a respondent fails to file or serve a timely, complete response, the Commission may take one or more of the following actions:

(a)        Order the respondent to cure any deficiency and then enter an order of default if the respondent fails to comply.

(b)        Deem admitted any allegation in the complaint for which there is no response, when determining whether there is substantial evidence of an ordinance violation.

10

(c)     Proceed to determine whether there is substantial evidence of an ordinance violation without further inquiry to the respondent.

**Rule 210.270     Respondent Obligations**

(a)     Preservation of Records

Once a respondent has knowledge of the complaint, the respondent must preserve all records and other material which may be relevant to the case until the matter is closed. If a respondent knowingly destroys or fails to maintain records and other material (i) in anticipation of the filing of the complaint, (ii) due to the filing of complaint or the Commission's investigation, or (iii) otherwise with intent to defeat the purposes of the ordinances, the Commission or hearing officer, as applicable, may impose appropriate sanctions including those set forth in Subpart 235.

(b)     Updating of Contact Information and Status

Once a respondent has knowledge of a complaint, it has a continuing obligation to keep the Commission informed of current contact information and status, as follows:

(1)     Any business, corporation, organization, or other non-individual entity must inform the Commission of any change in its own or its contact person's name, address, and telephone number. In addition, it must inform the Commission whenever the status of the entity changes, such as when it closes, files for bankruptcy protection, or is sold in whole or in part, and then must provide the current name, address, and telephone number for its representative(s) or successor(s).

(2)     Any individual respondent must inform the Commission of any change in address or telephone number. A representative must inform the Commission when an individual respondent dies and provide the name, address, and telephone number of the individual's successor.

If a respondent fails to update the Commission about contact information and status, the Commission shall send orders, notices, and other documents to the most recent address the Commission has and that shall be deemed sufficient. A respondent that does not update contact information cannot later rely on failure to receive any order, notice, or other document as a defense.

The Commission shall notify each respondent of the requirements of this rule when it sends the initial notification of the complaint.

**Rule 210.280     Counterclaims**

Counterclaims cannot be filed at the Commission at any time.

# SECTION 210.290     COMPLAINANT REPLY AND SUPPORTING DOCUMENTATION

**Rule 210.292     Complainant Opportunity to Reply**

A complainant may file and serve a reply to any response within 28 days of the filing of the response, unless otherwise ordered. The reply may state the complainant's position as to any aspect of the response. The Commission may specify a form to be used and page limits. The Commission shall consider the reply to be a pleading and may use it in the same manner and with the same force and effect as though it were signed and sworn to under oath.

11

**Rule 210.294        Deadline for Complainant's Supporting Documentation**

The complainant must enclose with the reply all supporting documentation the complainant wishes the Commission to consider in completing the investigation and determining whether there is substantial evidence of an ordinance violation. Supporting documentation may include copies of relevant evidentiary documents, witness statements or affidavits, information on evidence available from other sources, and a memorandum of law. If no response is filed or served, and no other deadline is specified by the Commission, Complainant's supporting documentation must be filed no later than 28 days from the latest deadline for any response to assure consideration. Unless ordered, supporting documentation need not be served on any respondent.

**Rule 210.296        Extension of Time to Reply or Submit Supporting Documentation**

A complainant may seek an extension of time to submit all or part of a reply or supporting documentation pursuant to Rule 210.320.

**Rule 210.298        Failure to Reply or Submit Supporting Documentation**

If a complainant fails to file or serve a timely, complete reply or supporting documentation, the Commission may proceed to determine whether there is substantial evidence of an ordinance violation without further inquiry to the complainant.

# SECTION 210.300   MOTIONS AND BRIEFING

**Rule 210.310        General Rules for Motions**

To the extent that a more specific rule differs from the general provisions in this rule, the specific rule shall take precedence.

All motions made before commencement of the hearing process must be in writing, served on all parties, and filed with the Commission. If a motion is filed after the commencement of the hearing process, it must also be served on the hearing officer and must comply with rules and orders pertaining to the hearing process.

All responses and objections to written motions must be filed and served within 14 days of the filing of the motion. The Commission or hearing officer may alter this schedule by order and may limit the number of pages permitted. Decisions shall be issued by mail.

The Commission shall rule on all motions filed prior to commencement of the hearing process. The hearing officer shall rule on all motions filed after commencement of the hearing process except that the Commission shall rule on motions to dismiss for lack of subject matter jurisdiction and motions to vacate or modify procedural sanctions imposed prior to commencement of the hearing process.

**Rule 210.320        Motions for Extension of Time or Continuance**

(a)        Extensions of Time

Motions for an extension of time to file any pleading, brief, or other document must be filed and served as soon as the reasons for the extension are known to the party seeking it. The motion must state the number of previous motions for extension of time or continuance filed in the case by the moving party, the disposition of such motions, and the reasons this extension is needed. The motion will be granted only for good cause shown.

(b)        Continuances

Motions for continuance of any settlement conference, pre-hearing conference, administrative hearing, or

12

other ordered appearance of a party must be filed and served as soon as the reasons for the continuance are known to the party seeking it. The motion must state the number of previous motions for extension of time or continuance filed in the case by the moving party, the disposition of such motions, and the reasons this continuance is needed. The motion will be granted only for good cause shown. A motion for continuance of an administrative hearing to permit discovery shall not be granted unless due diligence as well as good cause is shown.

(c)        Review of Dismissals

If a complainant wishes to seek a motion for extension of time to file a request for review under this rule, said motion must be filed within 28 days of the mailing of the dismissal order.

(d)        Objections and Decisions

Objections to a motion for extension of time or continuance shall be permitted only on leave of the Commission or hearing officer, as applicable. The Commission or hearing officer shall issue a written order granting or denying the motion; or a hearing officer may rule on the transcribed record of the hearing.

**Rule 210.330        Motions to Dismiss**

The Commission may dismiss a case in whole or in part for lack of subject matter jurisdiction *sua sponte* at any time. Filing of a motion to dismiss does not automatically stay proceedings or extend the time for any other filing, although the Commission may order an extension or stay pending resolution of the motion.

**Rule 210.340        Motions for Summary Judgment**

The Commission shall not accept motions for summary judgment at any stage of the proceedings.

**Rule 210.350        Commission-Initiated Briefing**

The Commission may order any party to submit briefs or other information to help clarify or resolve an issue and may set due dates and page limits for such briefs.

## SECTION 210.400    FRIVOLOUS PLEADINGS OR REPRESENTATIONS

**Rule 210.410        Effect of Submissions to Commission**

Every pleading, motion, other document, or oral statement submitted by a party or attorney in a case is deemed to certify to the best of the person's information, knowledge, and belief after reasonable inquiry:

(a)        That its allegations and other factual contentions have evidentiary support or, if so identified, are likely to have evidentiary support after reasonable opportunity for investigation or discovery.

(b)        That any denials of factual contentions are warranted on the evidence or, if so identified, are reasonably based on a lack of information or belief.

(c)        That any evidentiary document is a genuine original or a true and correct copy of a genuine original.

(d)        That it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or increase in the cost of the proceedings.

(e)        As to attorneys only, that the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

13

**Rule 210.420    Penalties for Frivolous Pleadings or Representations**

Upon determining that Rule 210.410 has been violated, the Commission or hearing officer may immediately strike the document or exclude the evidence in question. In addition, as provided in Subpart 235, the Commission or hearing officer may issue an order of dismissal or default and may impose monetary sanctions. In the case of a complaint deemed to be clearly frivolous, clearly vexatious, or brought primarily for the purpose of harassment, the Commission is authorized to impose a fine on the complainant of not less than $250 and up to $1,000 for each such filing.

# SUBPART 220    INVESTIGATION AND SUBPOENA PROCEDURES

## SECTION 220.100    INVESTIGATION PROCESS

**Rule 220.110    Description of Investigation**

(a)    Scope of Inquiry

At any time after the filing of a complaint, the Commission may seek information to enable it to determine whether there is substantial evidence of an ordinance violation. The Commission's investigation of a complaint shall consist of the following:

(1)    Requesting and reviewing a written response from each respondent pursuant to Section 210.200.

(2)    Requesting and reviewing a written reply and supporting documentation from each complainant pursuant to Section 210.250.

(3)    Reviewing any other submissions received.

(4)    Further evidence-gathering if necessary to determine whether there is substantial evidence of an ordinance violation, to the extent that such evidence is (i) readily available through voluntary cooperation or use of the Commission's investigatory powers and (ii) relevant or reasonably likely to lead to relevant evidence.

The Commission may also conduct investigations to assess compliance with a final order awarding relief or an approved settlement, and to decide whether to file Commission-initiated complaints.

(b)    Investigative Methods

The Commission may employ any of the following evidence-gathering methods, which are not intended to be exclusive:

(1)    The Commission may interview individuals who appear to have relevant knowledge about a claim or defense. The Commission is not required to interview individuals suggested by a party.

(2)    The Commission may use its staff or other individuals as testers to investigate possible ordinance violations and monitor compliance with the ordinances, a final order, or an approved settlement. The Commission may use testers in deciding whether to file Commission-initiated complaints.

(3)    The Commission may seek and review documents and may inspect physical evidence.

The Commission may seek voluntary cooperation with an investigation or may utilize investigative orders

14

and subpoenas as described in these rules.

**Rule 220.120     Investigative Orders to Parties**

At any time after the filing of a complaint, the Commission may issue an order requiring a party to submit documents or information; to appear for an interview if an individual party; to make an owner, officer, director, or employee available for an interview if a business party; or to allow onsite inspection of documents, premises, or other physical evidence within the party's possession or control. Investigative orders need not be served on the other parties.

(a)        Time to Comply

An investigative order shall state a date and time for filing of a written response or other compliance which shall not be fewer than 7 days from mailing or other service of the order. The party may seek an extension of time or other rescheduling by filing a motion pursuant to Rule 210.320. The motion need not be served on other parties unless ordered by the Commission.

(b)        Compliance Procedure

The party must completely respond or otherwise comply as to each item requested in the investigative order, or must submit a written explanation establishing good cause for not doing so. Any written response must specify which information responds to which request. If a party has no documents or other information responsive to a certain request, the party must state that in the response and certify that a reasonable effort has been made to obtain the information.

(c)        Objections

A party objecting to one or more requests must state each objection with specificity in writing and include the statement with any written response or file it at least two business days prior to the date set for any other compliance (such as a site inspection or interview). The Commission may issue an amended order, withdraw or cease to pursue the request, or deny the objection and enforce compliance.

(d)        Penalties for Failure to Comply

If without good cause a party fails to comply in whole or in part with an investigative order, the Commission may take one or more of the following actions:

(1)        As to a complainant, dismiss the complaint pursuant to Section 235.200.

(2)        As to a respondent, enter an order of default pursuant to Section 235.300.

(3)        Impose a fine pursuant to Rule 235.420.

**Rule 220.130     Continuing Obligation to Provide Relevant Information**

Complainants and respondents have a continuing obligation, throughout the investigative process, to provide the Commission with documents and information which may be relevant to the case. In particular, if a party discovers documents or other information relevant to an order or request previously made by the Commission, the party must submit the information.

# SECTION 220.200    SUBPOENA PROCEDURES

**Rule 220.210     Issuance of a Subpoena**

The Commission may issue a subpoena for the appearance of witnesses, the production of evidence, or both,

15

in the course of investigations and hearings, if there is reason to believe that a violation has occurred and the testimony, documents, or other items sought by the subpoena are relevant to the investigation. The subpoena shall identify the person to whom it is directed; the documents or other items sought, if any; the date, time, and place for the appearance of the witness and/or production of the documents or other items described. The date for examination or production shall be no less than 7 days after service of the subpoena. The Commission shall not issue a subpoena to any member of the City Council, any employee or staff person of any member of the City Council, or any employee or staff person of any City Council Committee.

If a person does not comply with a subpoena on the date set for compliance, for any reason, the subpoena shall continue in effect for up to one year or until full compliance is made or waived, and a new subpoena need not be issued during that time. If necessary, the person may be notified of the new compliance date by order or other written notice.

(a)      Commission-Initiated Subpoena

The Commission may issue a subpoena on its own initiative at any time.

(b)      Party-Initiated Subpoena

Parties may not seek subpoenas before the commencement of the hearing process. After commencement of the hearing process, a party may move for leave to have a subpoena issued in connection with the administrative hearing. The motion must be in writing, must be dated, and must state the reasons the information sought is relevant to the case and could not be obtained through any other means. The Commission shall make subpoena forms available to parties, and the moving party must attach to its motion subpoenas which are completed except for the relevant signature. The motion must be served on the hearing officer and all other parties and filed with the Commission. The motion must be made no fewer than 21 days before the date for examination or production, unless the moving party shows that the need for the subpoena was not known and could not have been known until the time of the motion. The hearing officer shall rule on the motion in writing. If the motion is granted, the Commission or the hearing officer shall issue (sign) the subpoena. The moving party is responsible for service of the subpoena, the cost of service, and all witness and mileage fees. The Commission will not seek enforcement of a subpoena unless it is served in accordance with M.C.C. Section 2-120-510(k) and Rule 220.220.

**Rule 220.220      Manner of Service**

A subpoena shall be served in the same manner as subpoenas issued under the Rules of the Illinois Supreme Court to compel appearance of a deponent,[1] and subject to the same witness and mileage fees fixed by law for such subpoenas.[2]

**Rule 220.230      Objections to Issued Subpoenas**

(a)      Objections by Person Subpoenaed

No later than the time for appearance or production required by the subpoena, the person to whom the

---

[1] Illinois Supreme Court Rule 204(a)(2) provides in relevant part: "Service of a subpoena by mail may be proved prima facie by a return receipt showing delivery to the deponent or his authorized agent by certified or registered mail at least seven days before the date on which appearance is required and an affidavit showing that the mailing was prepaid and was addressed to the deponent, restricted delivery, return receipt requested, showing to whom, date and address of delivery, with a check or money order for the fee and mileage enclosed."

[2] Illinois Supreme Court Rule 208(b) provides that a deponent is entitled to "the fees and mileage allowance provided by statute for witnesses attending courts in this State." 705 ILCS 35/4.3(a) in turn provides that a witness is entitled to $20 for each day's attendance at a court trial and 20 cents per mile each way for necessary travel. (P.A. 98-826, effective August 1, 2014)

16

subpoena is directed may object to the subpoena in whole or in part. The objection must be in writing, delivered to the Commission and must specify the grounds for the objection. For seven days after receipt of a timely objection to a subpoena, the Commission shall take no action to enforce the subpoena or to initiate prosecution of the person to whom the subpoena is directed. During this seven-day period the Commission, or the hearing officer conducting the hearing or investigation, shall consider the grounds for the objection and may attempt to resolve the objection through negotiation with the person to whom the subpoena is directed. The seven-day period may be extended by the Commission, or the hearing officer conducting the hearing or investigation, in order to allow completion of any negotiations. The extension shall be in writing addressed to the person to whom the subpoena is directed, and shall specify the date on which the negotiation period will end. Negotiations may include such matters as the scope of the subpoena and the time, place and manner of the response thereto. The filing of an objection to a subpoena, and negotiations pursuant to an objection, shall not constitute refusal to comply with the subpoena, or interference with or obstruction of an investigation. The Commission, or the hearing officer if one has been appointed, shall rule on the objection.

(b)      Objections by Parties

For subpoenas issued prior to commencement of the hearing process, only the person subpoenaed may object. After commencement of the hearing process, a party other than the person subpoenaed may object to an issued subpoena by a motion to quash if the party has not been allowed to object or brief the issue prior to issuance of the subpoena. The motion to quash must be in writing, filed with the Commission, and served on all other parties, the hearing officer, and the person to whom the subpoena was directed, except that if the order granting the subpoena was mailed or otherwise served fewer than 14 days prior to the first day of the administrative hearing, the motion to quash may be made orally at the hearing unless the hearing officer requires it to be made in writing. Whether written or oral, the motion must state all reasons for objecting to the subpoena. The hearing officer may allow other parties and the person to whom the subpoena was directed to respond to the motion either in writing at any time or orally at the administrative hearing, and shall rule on the motion.

**Rule 220.240      Failure to Comply with Subpoena**

(a)      Fine

Failure to comply with a properly issued subpoena shall constitute a separate violation of the Human Rights Ordinance or the Fair Housing Ordinance. Every day that a person fails to comply with a subpoena shall constitute a separate and distinct violation for which a fine may be imposed not exceeding $1,000.

(b)      Judicial Enforcement

In addition to any fine, when the subpoena is directed to a person not controlled by a party and that person fails to comply without good cause, the Commission or hearing officer may seek judicial enforcement of the subpoena.

(c)      Additional Penalties If Controlled by a Party

If a person controlled by a party fails to comply with a subpoena without good cause, then in addition to any fine the Commission, or hearing officer if after commencement of the hearing process, may enter an order of default or dismissal order pursuant to Subpart 235. The hearing officer may also refuse to allow the subpoenaed witness to testify or the subpoenaed documents to be introduced as evidence to support the controlling party.

(d)      Motion to Compel Compliance with Subpoena

A party seeking enforcement of a subpoena issued by a hearing officer during the hearing process must move to compel compliance with the subpoena pursuant to Rule 240.456. The motion must be filed and served no later than 7 days after the later of the date of compliance or the end of any negotiation period. If the due date is fewer than 14 days prior to the first day of the administrative hearing, the motion may be made orally at

17

the hearing unless the hearing officer requires it to be made in writing. The motion must be served on the person to whom the subpoena was directed in addition to all others required to be served. The hearing officer may allow other parties and the person to whom the subpoena was directed to respond either in writing at any time or orally at the administrative hearing.

## SECTION 220.300    SUBSTANTIAL EVIDENCE AND OTHER DETERMINATIONS

**Rule 220.310       Determination as to Substantial Evidence**

After completing the investigation of a complaint, the Commission shall issue a written determination within 30 days as to whether there is substantial evidence that an ordinance violation has occurred. The determination shall be mailed to all parties.

**Rule 220.320       Decision Process**

The Chair/Commissioner may authorize one or more senior staff of the Commission, either individually or collectively as specified, to issue orders and render decisions not within the authority of appointed hearing officers or the Board of Commissioners. Such decisions include but are not limited to the following:

(a)       Determinations as to whether there is substantial evidence of an ordinance violation.
(b)       Approval of settlement agreements.
(c)       Dismissals for lack of jurisdiction and/or failure to state a claim on which relief can be granted.

(d)       Dismissals based on requests for voluntary withdrawal of a claim or complaint prior to commencement of the hearing process.
(e)       Dismissals for failure to cooperate prior to commencement of the hearing process.
(f)       Decisions on objections to investigative orders and subpoenas issued during the investigation process.
(g)       Orders of default for conduct occurring before commencement of the hearing process.
(h)       Decisions on motions to vacate orders entered before commencement of the hearing process.
(i)       Decisions on requests for review of dismissals entered before commencement of the hearing process.
(j)       Appointment of hearing officers and mediators.
(k)       Decisions on requests for enforcement.
(l)       Signing of Commission-initiated complaints.

Any staff member who signs a complaint on behalf of the Commission shall not participate in any decision concerning that case. Commission personnel shall recuse themselves in other situations as warranted.

**Rule 220.330       Dispositive Orders**

(a)       Finding of Substantial Evidence

If the Commission determines that there is substantial evidence of an ordinance violation, it shall issue an order describing the next steps in the adjudication of the case and mail it to all parties. The order may also commence the hearing process pursuant to Rule 240.110.

(b)       Dismissal for No Substantial Evidence or No Jurisdiction

If the Commission determines that substantial evidence of an ordinance violation is lacking or that the Commission lacks jurisdiction as to all or part of a complaint, it shall issue a dismissal order and mail it to all parties. The order shall state the basis for the Commission's determination and notify

18

the complainant of the opportunity to submit a request for review.

(c)     Other Dismissal

If the Commission dismisses a complaint in whole or in part for other reasons, it shall issue an order stating the scope and basis of the dismissal and mail it to all parties. The order shall notify the complainant of the opportunity to submit a request for review if the dismissal was not voluntary.

(d)     Order of Default

If the Commission enters an order of default pursuant to Section 215.200 for conduct occurring before commencement of the hearing process, its order shall state the scope and basis of the default, shall notify the defaulted respondent of the opportunity to submit a motion to vacate, shall describe the next steps in the adjudication of the case, and may also commence the hearing process pursuant to Rule 240.110. The Commission shall mail the order to all parties. After entry of an order of default, no further investigation or substantial evidence determination shall occur with respect to the defaulted claim.

# SECTION 220.400     ACCESS TO INVESTIGATIVE FILES

## Rule 220.410     Access to Files

(a)     General Nondisclosure and Access by Parties

Neither the Commission nor its staff shall disclose any information obtained in the course of investigation or conciliation of a case except where otherwise required by law or intergovernmental agreement, or as ordered by a hearing officer pursuant to Rule 240.370.

However, after providing the Commission with notice of at least two business days, parties or their attorneys of record may inspect files pertaining to their own cases at any time after issuance of an order concluding the investigation process or dismissing the case in its entirety.

(1)     Notwithstanding the above, the Commission shall not allow parties to inspect internal memoranda, work papers, or notes generated by Commission staff or agents in the course of an investigation, or other materials reflecting the deliberative process, mental impressions, or legal theories and recommendations of the staff or agents of the Commission.

(2)     If a party files a written motion establishing good cause or if the Commission *sua sponte* determines that good cause exists, the Commission may require parties seeking access to an investigative file to comply with a protective order limiting use of the information to Commission or related state court proceedings and prohibiting other disclosure of information from the file.

(b)     Public Information About Complaints

The Commission may provide a copy of the complaint itself and may acknowledge publicly the existence of a complaint including the case number, identities of the parties, type of case (e.g. national origin, employment discrimination), stage of proceedings at which it is pending, and basis for closure. The Commission may withhold any of the foregoing information for good cause including any of the grounds set forth in Rule 240.520 for sealing a hearing record. A party may request in writing that the Commission not include the party's name, telephone number, or address in any public acknowledgment of a complaint. The party must provide good cause for the request.

(c)     Copying Costs

19

84

The Commission shall furnish copies of documents available for inspection at a charge not to exceed 20 cents per page plus any delivery costs. Copies shall not be released to the requester until the Commission has received payment in full. A party may seek waiver of these charges pursuant to Section 270.600.

**Rule 220.420      Access by Governmental Agencies**

Nothing in these rules shall preclude the Commission from sharing materials in its files with other agencies of federal, state, or local government having concurrent jurisdiction, pursuant to agreements the Commission has entered with such agencies pursuant to M.C.C. Section 2-120-510(q). All such agreements, which shall themselves be available for public inspection, shall be subject to confidentiality requirements to the extent provided by law. However, a federal agency with which the Commission has such an agreement may allow inspection and copying of materials obtained from the Commission to the extent required by the federal Freedom of Information Act (5 U.S.C. '552).

# SUBPART 230      SETTLEMENT

**Rule 230.100      Settlement Policy and Settlement Conference**

It is the policy of the Commission to encourage the voluntary settlement of complaints, although the Commission shall not require settlement or particular settlement terms. Any authorized Commission staff member may facilitate settlement discussions and draft a settlement agreement reflecting agreed terms for the parties to sign. The Commission may also hold a settlement conference pursuant to Rule 230.110 in an attempt to secure voluntary settlement.

**Rule 230.110      Settlement Conference Procedure**

The Commission may schedule a settlement conference conducted by an independent mediator appointed by the Commission. Unless otherwise agreed by all participating parties, such a settlement conference shall occur no sooner than 14 days after the date of mailing the scheduling order. A scheduled settlement conference does not stay proceedings or constitute an extension of time for any filing unless so ordered. The mediator shall confer with the parties in an attempt to secure a voluntary settlement of the complaint. The mediator is authorized to determine how the conference shall proceed. A settlement conference is a scheduled proceeding at which attendance of all parties is mandatory unless otherwise ordered, and each party must have at least one person in attendance who has authority to settle. Each party may be represented by an attorney of record; however, attendance of an attorney only is not sufficient unless the attorney provides documentation of authority to settle on the party's behalf. Participation of additional persons in a settlement conference is in the discretion of the mediator. If a party fails to attend a settlement conference or attends without authority to settle, the Commission may determine what, if any, sanction is just and proper among the options set forth in Subpart 235.

**Rule 230.120      Nondisclosure of Settlement Discussions**

Neither a mediator nor the Commission shall disclose publicly the content of any settlement discussions concerning a Commission case. No stenographic or other formal record shall be made of settlement efforts at a settlement conference or elsewhere. Neither party may use the fact that an offer was made, accepted, or rejected at a settlement conference or during other settlement discussions as evidence during the investigation or administrative hearing concerning the merits of the claim under discussion.

**Rule 230.130      Closure of a Case by Settlement**

Parties may settle a claim or complaint either by approved settlement agreement or by private settlement as the parties may agree. Settlement closure procedures are as follows:

20

(a)     Approved Settlement Agreement

If the parties agree to a settlement which they want the Commission to approve with retained jurisdiction to seek enforcement, the settlement terms must be reduced to writing, signed by the parties, and submitted to the Commission for approval. Attorneys may not sign a settlement agreement on behalf of a client unless the attorney or the client includes with the agreement a signed certification or other documentation that the attorney has authority to sign the agreement on the client's behalf. If the proposed settlement is knowingly and voluntarily entered into, unambiguously drawn, capable of being enforced, signed by persons with authority do to so, and consistent with the ordinance, the Commission shall issue an order approving the settlement and dismissing the settled claim or complaint. The Commission may require as a condition of approval that any party to a settlement submit such information as the Commission deems necessary to determine ability to comply. If the Commission does not approve the settlement, it shall order further appropriate action.

(b)     Retained Jurisdiction

The Commission shall retain jurisdiction over the case to seek enforcement of an approved settlement agreement as described in Rule 230.140.

(c)     No Admission of Violation

Entering into an approved settlement agreement or private settlement is not an admission by any party as to whether an ordinance violation was committed.

(d)     Private Settlement

If the parties agree to a settlement which they want to remain private (i.e., not approved by the Commission), in order for the Commission to close the case or dismiss the settled claim, the complainant must sign a withdrawal of the complaint or claim as set forth in Section 210.190. The Commission shall not retain jurisdiction to seek enforcement of any private settlement agreement.

**Rule 230.140     Noncompliance with Approved Settlement Agreement**

If a party believes there has been a violation of an approved settlement agreement, the party may proceed independently to enforce the agreement under any applicable law. If the party wishes to invoke the Commission's retained jurisdiction, the party must file a motion for enforcement and serve it on all other parties, stating the nature of the alleged violation. All other parties shall have 14 days from filing of the motion to file and serve a response, unless the Commission issues an order allowing additional time. The Commission may conduct an investigation into the alleged violation and may issue any orders it deems necessary to exercise its retained jurisdiction. If the Commission finds substantial evidence that a party has violated the terms of an approved settlement agreement, the Commission shall promptly notify the parties in writing, may fine any noncompliant party, and may request the Department of Law to seek judicial enforcement in state court on behalf of the Commission. If the Commission concludes that substantial evidence of violation of the agreement is lacking, it shall notify the parties in writing.

# SUBPART 235     SANCTIONS FOR PROCEDURAL VIOLATIONS

## SECTION 235.100     SANCTION PROCEDURES

### Rule 235.110     Sanctions Generally

A party that fails to comply with a procedural rule, notice, or order is subject to one or more of the sanctions described in this subpart. These sanctions are separate from any relief ordered upon finding liability after an administrative hearing. Sanctions shall be limited to what is sufficient to punish the conduct and deter

21

repetition of it by the party or by others.

**Rule 235.120      Notice Requirements**

(a)      Notice of Potential Sanctions

If it appears that a party has failed to comply with a procedural requirement, the Commission or hearing officer may issue a notice of potential sanctions, which shall be mailed to all parties, specifying the sanction(s) under consideration and warning the noncompliant party that one or more of the specified sanctions will be imposed unless the party complies with specified requirements by a stated date. The notice shall allow the party no fewer than 14 days from the date of mailing to respond.

(b)      When Not Required

The Commission (or hearing officer if applicable) may issue an order imposing a procedural sanction without further notice in the following circumstances, provided that the order includes notice of the opportunity to move to vacate or modify the sanction or to submit a request for review, as applicable:

(1)      When the notice or order with which the party failed to comply included a warning that the sanction could be imposed for noncompliance.

(2)      When the notice or order with which the party failed to comply is returned to the Commission as undeliverable and the Commission has not been notified of a new address for the party.

(c)      Extension of Time to Respond or Comply

A party may move for an extension of time to respond to a notice of potential sanctions or to comply with the specified requirements to avoid sanctions, as set forth in Rule 210.320.

**Rule 235.130      Procedure After Notice of Potential Sanctions**

A party's response to a notice of potential sanctions must fully comply with the requirements set forth in the notice or must show good cause for not doing so. The Commission or hearing officer, as applicable, shall issue an order either imposing one or more of the potential sanctions or declining to do so.

**Rule 235.140      Order Imposing Sanction**

Any order imposing a sanction shall state the scope and basis of each sanction imposed. Unless made orally on the record at an administrative hearing, it shall be issued in writing and mailed to all parties. Any written order imposing a sanction shall include notice of the sanctioned party's opportunity to submit a request for review or a motion to vacate or modify, as applicable. See also Rule 220.330 as to dispositive orders.

**Rule 235.150      Motion to Vacate or Modify Sanction**

(a)      Filing Deadline

Unless otherwise ordered, any motion to vacate or modify a sanction (other than dismissal) must be filed and served no later than 28 days from the mailing of the order imposing the sanction, or for sanctions imposed on the record at an administrative hearing, no later than 28 days from the last day of the hearing. A motion to vacate or modify does not stay other proceedings in the case and does not stay payment of any monetary sanction unless so ordered. Unless good cause is shown, failure to file a proper and timely motion to vacate or modify shall constitute waiver of all possible challenges to the sanctions. For a dismissal order, the complainant may submit a request for review pursuant to Section 250.100.

22

(b)       Motion Content

A motion to vacate or modify a sanction must establish good cause for the noncompliance which formed the basis for the sanction and/or good cause for any requested modification. If the party had an opportunity to respond to a notice of potential sanctions or a motion seeking the sanction, the party must also establish good cause for failure to submit an adequate response at that time. The party must include with the motion all material, the absence of which formed the basis for the sanction, or must show good cause for not doing so.

(c)       Response to Motion

Responses and replies to a motion to vacate or modify are permitted only if leave has been granted.

(d)       Decision on Motion

The Commission shall decide motions to vacate or modify sanctions concerning conduct which occurs before commencement of the hearing process. The hearing officer shall decide such motions when they concern conduct which occurs after commencement of the hearing process. Decisions shall be by written order which includes a description of the further proceedings in the case.

## SECTION 235.200   DISMISSAL FOR FAILURE TO COOPERATE

**Rule 235.210       Grounds for Dismissal**

A dismissal order may be entered if, without good cause, a complainant fails to cooperate as set forth in Rule 210.127 and in particular if a complainant:

(a)       Fails to comply with a Commission or hearing officer order, or provides a response which is tantamount to no response.

(b)       Fails to attend a scheduled proceeding.

(c)       Engages in conduct which violates Rule 210.410 prohibiting frivolous pleadings or representations, or which is contemptuous or threatening to the Commission, its personnel, another party, or a witness.

**Rule 235.220       Other Dismissal Grounds and Procedures**

To the extent that dismissal grounds and procedures stated in other rules differ from those stated in this subpart, the more specific provision shall apply.

## SECTION 235.300   DEFAULT

**Rule 235.310       Grounds for Default**

An order of default may be entered if, without good cause, a respondent:

(a)       Fails to comply at all with a Commission or hearing officer order, or provides a response which is tantamount to no response.

(b)       Fails to file and serve any written response to a complaint after being ordered to do so, or provides a response which is tantamount to no response.

23

(c)       Knowingly destroys or fails to preserve records and other material which may be relevant to the case.

(d)       Fails to attend a scheduled proceeding.

(e)       Fails to comply at all with a subpoena directed to the respondent or a person controlled by the respondent.

(f)       Engages in conduct which violates Rule 210.410 prohibiting frivolous pleadings or representations, or which is contemptuous or threatening to the Commission, its personnel, another party, or a witness.

**Rule 235.320     Effect of Default**

A defaulted respondent is deemed to have admitted the allegations of the complaint and to have waived any defenses to the allegations including defenses concerning the complaint's sufficiency. An administrative hearing after an order of default shall be held only to allow the complainant to establish a *prima facie* case and to establish the nature and amount of relief to be awarded. A complainant may present a *prima facie* case through the complaint alone or may present additional evidence. Although the defaulted respondent may not contest the sufficiency of the complaint or present any evidence in defense, the Commission itself must determine whether there was an ordinance violation and so must determine whether the complainant has established a *prima facie* case and whether it has jurisdiction. A defaulted respondent may present evidence as to relief to be awarded.

When an order of default is entered prior to commencement of the hearing process, the Commission shall issue an order commencing the process, as set forth in Rule 240.110. When an order of default is entered after commencement of the hearing process, the hearing officer shall issue an order describing further proceedings.

# SECTION 235.400   MONETARY SANCTIONS

**Rule 235.410     Monetary Sanctions Generally**

Monetary sanctions may be imposed in addition to or in lieu of other sanctions for procedural noncompliance. In determining the appropriateness and amount of monetary sanctions, the Commission may consider, among other factors, the severity of the noncompliance as well as the party's record of cooperation in the case and in other cases before the Commission.

**Rule 235.420     Fines**

The Commission may impose a fine up to $1,000 for each incident of procedural noncompliance, which shall be payable no later than 28 days after issuance of the order imposing the fine if no other date is specified. For continuing noncompliance including failure to pay the initial fine or costs to a party when due, the Commission may impose additional fines of up to $100 per day until the earlier of full compliance or entry of the final order in the case. In setting the amount of the fine, the Commission may take into consideration, among other factors, the costs to the Commission due to the noncompliance including costs for a mediator, hearing officer, interpreter, or court reporter.

**Rule 235.430     Costs to a Party**

On the motion of a party, the Commission may order payment of part or all of the party's own costs, including attorney fees, due to procedural noncompliance. The requested costs must be supported by affidavits or other documentation. Unless otherwise ordered, such motion must be filed and served no later than 21days after issuance of the Commission's order imposing monetary or other sanctions, and the noncompliant party shall have 14 days from the filing of the motion to respond.

24

**Rule 235.440      Monetary Sanctions on Attorneys**

Monetary sanctions may be imposed on an attorney in whole or in part if the attorney's conduct contributed to the procedural noncompliance.

**Rule 235.450      Recovery from Other Payments in Case**

To the extent that a party has unpaid monetary sanctions, the Commission may order that any monetary relief or costs awarded to that party in the same case (other than attorney fees and associated costs) be paid first to the Commission or to any other party to satisfy the unpaid monetary sanctions, with any balance to the party receiving the award. Amounts awarded as attorney fees and associated costs may be so redirected only if the attorney receiving the award has unpaid monetary sanctions.

# SUBPART 240      ADMINISTRATIVE HEARINGS

## SECTION 240.100    NOTICE AND PRE-HEARING PROCEDURES

**Rule 240.110      Notice of Commencement of Hearing Process**

If an administrative hearing is needed, the Commission shall issue an order appointing a hearing officer. That order commences the hearing process and may be accompanied by additional orders stating the responsibilities of the parties.

**Rule 240.115      Scheduling of Proceedings**

In its order appointing the hearing officer, the Commission may schedule any combination of the administrative hearing itself, a pre-hearing conference, a settlement conference, or submission of pre-hearing documents such as the pre-hearing memorandum. Subsequently, all proceedings shall be scheduled or rescheduled by order of the hearing officer.

Unless the parties agree, or the Commission or hearing officer determines, that the proceedings should be expedited, the first day of the administrative hearing shall occur no fewer than 60 days from the mailing of the order appointing the hearing officer. At the discretion of the hearing officer, a hearing may be continued from day to day, or to a later date, by announcement on the hearing record or by written notice.

**Rule 240.120      Pre-Hearing Conferences**

(a)      Conduct and Attendance

Any pre-hearing conference shall be conducted by the hearing officer. Attendance of a party's attorney only is sufficient unless attendance of the party is ordered. Unless otherwise ordered, pre-hearing conferences are not recorded or transcribed, no testimony is taken, and any oral decisions by the hearing officer do not take effect until a confirming order is issued in writing.

(b)      Penalties for Failure to Attend

If a party fails to attend a pre-hearing conference, the hearing officer may determine what if any sanction is just and proper among the options set forth in Subpart 235.

**Rule 240.130      Pre-Hearing Memorandum**

(a)      Deadline and Content

Unless otherwise ordered, each party shall file and serve a pre-hearing memorandum containing, at minimum, the information listed below. The deadline for the pre-hearing memorandum shall be set along with other

25

proceedings.

(1)     A list of all witnesses the party intends to call at the hearing including each one's name, address, and telephone number, plus a brief description of the topics about which the witness will testify. For any expert witness, the pre-hearing memorandum must include the expert's qualifications, the expert's conclusions and opinions, and the basis for the expert's conclusions and opinions.

(2)     Copies of all documents the party intends to introduce into evidence at the hearing, plus a brief description of any physical evidence other than documents. If agreed by all parties or if the hearing officer determines that prior submission of all documents is impractical or unnecessary, a summary of each document or set of related documents must be submitted which includes the author or source, date created, intended recipient, and brief summary of the content.

(3)     From each complainant, an itemization of the nature and amount of damages sought.

(4)     From each respondent, a statement of any affirmative defenses asserted.

(5)     Any demand for the appearance and testimony at the hearing of an individual party or of a person who, at the time of the hearing, is an owner, officer, director, or employee of a business party. The pre-hearing memorandum must name each person requested to appear and state briefly what relevant information the person is expected to provide. Any objections must be served and filed no later than 14 days after the filing of the pre-hearing memorandum. The hearing officer shall rule on any objections.

(6)     Parties may also submit stipulations as to material facts and uncontested issues of law, a statement of position, and a memorandum of law.

(b)     Penalties if Missing or Incomplete

If without good cause a party does not disclose an exhibit or a witness in the pre-hearing memorandum, the hearing officer may exclude that exhibit or witness when offered by the non-disclosing party, or alternatively may order a continuance allow other parties time to review the exhibit or determine the nature of the witness testimony and prepare to respond. Exclusion or continuance shall be ordered only on a showing that the other party was surprised and placed at a disadvantage by the failure to disclose. In addition, the hearing officer may order the party to submit or supplement the pre-hearing memorandum and/or may impose as warranted any of the sanctions for noncompliance with an order set forth in Subpart 235.

# SECTION 240.200    DISQUALIFICATION OF A HEARING OFFICER

## Rule 240.210     Motions to Disqualify

A party seeking to disqualify the hearing officer from hearing a case must file and serve a written motion as soon as the party learns of the claimed reason for disqualification. The motion shall set forth in detail why the moving party believes the hearing officer's impartiality might reasonably be questioned, including but not limited to those circumstances set forth in Illinois Supreme Court Rule 63(C). All other parties shall have 14 days from the filing of the motion to respond to it. The hearing officer may allow the moving party to file a reply and shall rule on the motion by mail.

If the motion is not filed within 21 days before the administrative hearing, the moving party may be ordered

26

to pay monetary sanctions as set forth in Section 235.400 if the motion is found to be frivolous or if the grounds for the motion could have been discovered earlier.

**Rule 240.220      Interlocutory Review of Decision Not to Disqualify**

A party that objects to a decision not to disqualify may file and serve a request for review no later than 14 days from the mailing of the decision. The request for review must state with specificity the reasons supporting reversal of the decision not to disqualify. Any other party may file and serve a response within 14 days of the filing of the request for review. The Board of Commissioners shall rule by mail.

# SECTION 240.300    HEARING PROCESS

**Rule 240.307      Powers and Duties of Hearing Officer**

(a)        Authority to Control Hearing Process

The hearing officer shall have full authority to control the hearing process, including but not limited to the authority to rule on all motions and objections, to admit or exclude evidence, and to make other necessary decisions and orders except that the Commission shall issue (i) orders concerning jurisdictional issues including motions to dismiss for lack of subject matter jurisdiction and decisions after jurisdictional hearings, and (ii) motions to vacate negative inferences, orders of default, or other sanctions arising from the investigation process.

(b)        Authority to Schedule

The hearing officer may by written order set or change the date of any hearing or pre-hearing conference; may set or change the deadlines for filing and service of the pre-hearing memorandum and any motions, discovery requests, responses, objections, or other submissions; and may set page limits for any submissions.

(c)        Authority to Issue Protective Orders

The hearing officer may, either *sua sponte* or on motion of any party or witness, issue such protective orders as justice and fairness may require to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression. Among other things, a protective order may deny, limit, condition, or regulate discovery.

(d)        Restrictions on Client Representation

No person acting as a mediator or hearing officer shall be permitted to represent a party before the Commission while serving or available to serve in such capacity and until one year has elapsed from the last date of work performed for the Commission. A hearing officer or mediator may represent a party to a Commission case in matters outside the Commission, but then may not accept appointment in any Commission case involving that party.

(e)        Exclusion from Investigation and Conciliation

Hearing officers shall not participate in the investigation or conciliation of cases to which they are appointed, or in decisions made at the investigation stage of such cases. They shall not have access to evidence and other documents from the Commission's investigative files in assigned cases except for documents in the official hearing record pursuant to Rule 240.510, unless offered into evidence by a party at a hearing.

**Rule 240.314      Rights of Parties and Rules of Evidence**

All parties to an administrative hearing may be represented by an attorney and may call, examine, and cross-examine witnesses. All parties may offer documents or other evidence for inclusion in the record of proceedings. All parties may object to evidence offered by other parties. The admissibility of all evidence

27

shall be subject to the ruling of the hearing officer, who shall not be bound by the strict rules of evidence applicable in courts of law or equity.

See Rule 230.120 as to admissibility of evidence concerning settlement discussions.
See Reg 221.210(b) concerning access to subpoenas in connection with an administrative hearing.

**Rule 240.321**     *Ex Parte* **Communications**

Neither a party, a party's attorney, nor any other individual on the party's behalf may communicate, directly or indirectly, with a hearing officer in connection with any issue except upon notice and opportunity for all parties to participate.

**Rule 240.328**     **Briefing**

A party may, by written motion pursuant to Rule 240.349, seek leave of the hearing officer to submit a brief or other information to help clarify or resolve an issue, or the hearing officer may *sua sponte* order such submissions.

**Rule 240.335**     **Privileges**

All information or communications that are privileged against disclosure in civil cases in the courts of the State of Illinois shall be privileged at the Commission. Privileged information or communication may be placed under seal pursuant to Rule 240.520.

**Rule 240.342**     **Stipulations**

Oral or written stipulations may be introduced into evidence and then shall become part of the hearing record.

**Rule 240.349**     **Motions, Objections, and Orders**

(a)     Pre-Hearing and Post-Hearing Motions

Unless otherwise specified in these rules or ordered by the hearing officer, all pre-hearing and post-hearing motions must be in writing and must be filed with the Commission and served on all other parties and the hearing officer.

(b)     Objections to Pre-Hearing and Post-Hearing Motions

Unless otherwise specified in these rules or ordered by the hearing officer, any objections to pre-hearing and post-hearing motions must be in writing and must be filed with the Commission and served on all other parties and the hearing officer no later than 14 days from the filing of the motion, except that for a motion filed within 14 days of the administrative hearing, any objections may be stated on the record at the administrative hearing.

(c)     Motions and Objections at Administrative Hearing

Motions and objections with respect to the conduct of an administrative hearing may be stated orally at the hearing. The hearing officer may allow other oral motions and objections to be made at the hearing. All such motions and objections shall be included in the hearing transcript along with the hearing officer's ruling on them.

(d)     Hearing Officer Orders

All pre-hearing and post-hearing orders shall be issued by the hearing officer in writing. Oral motions or objections may be heard at a pre-hearing conference if the hearing officer either (1) requires the party to file and serve the motion or objection in writing before issuing a decision or

28

(2) issues a written order after the pre-hearing conference which describes the motion or objection and sets forth the decision.

**Rule 240.363      Waiver of Objections and Arguments**

Any objection or argument not duly presented to the hearing officer shall be deemed waived unless the failure is excused for good cause by the hearing officer.

**Rule 240.370      Commission Employees as Witnesses**

No Commission employee shall testify on behalf of a party at a hearing with respect to the content of any files, documents, reports, memoranda, or records of the Commission or the results of any investigation conducted by the Commission except on order of the hearing officer as follows:

(a)        Motion of a Party

A party may move for an order allowing testimony of a Commission employee. The motion must identify the Commission employee, the nature of the testimony, and the specific purpose the testimony will serve. The motion shall be granted only on a showing that the information to be elicited from the testimony is admissible and cannot be obtained through any other means.

(b)        *Sua Sponte* Order

A hearing officer may, *sua sponte*, call a Commission employee to testify regarding relevant information which is admissible and cannot be obtained by other means. If a party objects on the grounds that the testimony would be prejudicial, the hearing officer may grant a continuance to enable the objecting party to meet the evidence.

**Rule 240.398      Penalties for Failure to Appear at Hearing**

If a party fails to appear at an administrative hearing, the hearing officer may determine what if any sanction is just and proper among the options set forth in Subpart 235. The hearing officer may dismiss a missing complainant's case without further notice, and may default a missing respondent without further notice and allow the complainant to present a *prima facie* case pursuant to Rule 235.320.

## SECTION 240.400   DISCOVERY

Discovery shall be limited to the following except by agreement of all parties or by order of the hearing officer granting a motion for good cause shown. The hearing officer may by order alter the deadlines set forth below; however, a motion for continuance to permit discovery shall not be granted unless due diligence or other good cause is shown.

See Rule 240.130 as to required pre-hearing memorandum.

**Rule 240.407      Request for Documents**

Each party may serve on any opposing party a request for documents reasonably related to the party's claims or defenses. The request must be served no more than 30 days from the mailing of the order appointing the hearing officer and commencing the hearing process, and must be returnable no fewer than 21 days after the date of service. A copy must be served on the hearing officer and all other parties and filed with the Commission. Responses must be served on all other parties but need not be served on the hearing officer or filed with the Commission; however, the responding party must serve a copy of the certificate of service on the hearing officer and file it with the Commission.

Objections to document requests must be made in writing, served on all other parties and the hearing officer, and filed with the Commission no later than 14 days after the filing of the document request.

29

**Rule 240.435      Additional Discovery**

(a)      Subject to Agreement or Motion

Parties may agree to additional discovery, and a party may move for leave to conduct additional discovery. The motion must be served on all parties and the hearing officer and filed with the Commission. If granting additional discovery, the hearing officer shall specify the service and response deadlines.

(b)      Physical or Mental Examinations

In disability discrimination cases where the physical or mental state of the complainant is at issue for liability purposes, the hearing officer may grant a motion for physical or mental examination of the complainant based on a showing of good cause. Motions seeking such examinations for other purposes shall be granted only on a showing of extraordinary need. The motion must state the reasons for the examination; the proposed scope of the examination; the name, background, and qualifications of the person proposed to conduct the examination; and the proposed time, place, and manner of the examination. The hearing officer may decide, among other things, who shall bear the cost for the examination. The examination shall be guided by Rule 35 of the Federal Rules of Civil Procedure.

**Rule 240.442      Duty to Supplement**

A party is under a duty to supplement any discovery responses and pre-hearing memorandum if the party learns that the information disclosed is, in some material respect, incomplete or inaccurate and if the additional or corrective information has not otherwise been disclosed to the other party during the pre-hearing process.

**Rule 240.456      Motions to Compel**

If a party believes another party has failed, without good cause, to comply with its reasonable discovery requests or with other hearing procedures and orders not governed by a specific enforcement procedure, the party may move to compel compliance. The motion must be filed and served no later than 7 days after the failure to comply and must state what sanctions the moving party is seeking. Any response must be filed and served no later than 7 days after filing of the motion to compel. The response must fully comply with the requirement at issue or must show good cause for not doing so. A motion to compel compliance with a subpoena is also subject to Rule 220.240(d).

**Rule 240.463      Sanctions for Failure to Comply**

If a party fails to comply with discovery requests, requirements, or orders, the hearing officer may determine what if any sanction is just and proper among the options set forth in Subpart 235. The hearing officer may also (i) issue an order compelling the party to produce the requested witnesses, documents, or other items, and may (ii) refuse to allow any non-produced witnesses, documents, or other material to be used in the hearing to support the non-producing party's claim or defense, and/or (iii) draw a negative inference that the non-produced witnesses, documents, or other items do not support a claim or defense of the non-producing party.

## SECTION 240.500      RECORD OF HEARING

**Rule 240.510      Official Record**

The official record of every administrative hearing shall consist of the following:

(a)      Complaint and any amended complaints
(b)      Responses to the complaint and any amended complaints
(c)      Order finding substantial evidence and/or any order of default or order finding no substantial

30

evidence

(d)  Other orders issued by the Commission

(e)  Motions and responses to motions filed during the investigation and any conciliation processes

(f)  Notice of the hearing and any standing order

(g)  All subsequent documents filed by the parties, such as pleadings, notices, motions, correspondence between the hearing officer and the parties, briefs and memoranda, and objections

(h)  Orders issued by the hearing officer

(i)  The transcript and all exhibits thereto.

Except for the items listed above, no material in the Commission's investigative files, including any summary or report of the investigation, shall be part of the official record of the hearing unless introduced and admitted into evidence at the hearing. The official record shall be available for public inspection upon making appropriate arrangements with the Commission, except for any evidence placed under seal.

## Rule 240.520    Sealing Record

To avoid unreasonable annoyance, expense, embarrassment, disadvantage, or oppression, the hearing officer or the Commission may, *sua sponte* or on motion of a party or witness, seal all or part of the official record to prevent disclosure of:

(a)  Information specifically prohibited from disclosure by federal or state law or any rules and rules adopted pursuant thereto.

(b)  Information and communication protected by privilege, when the privileged information or communication is allowed into evidence.

(c)  Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless such disclosure is consented to in writing by the individual subjects of such information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (c) shall include but is not limited to the following:

(1)  Files and personal information maintained with respect to clients, patients, residents, students, and other individuals receiving social medical, educational, vocational, financial, supervisory, or custodial care or services directly or indirectly from federal agencies or public bodies.

(2)  Personnel files and personal information maintained with respect to employees, appointees, or elected officials of any public body or applicants for such positions.

(3)  Files and personal information maintained with respect to any applicant, registrant, or licensee by any public body cooperating with or engaged in professional or occupational registration, licensure, or discipline.

(4)  Information required of any taxpayer in connection with the assessment or collection of any tax, unless disclosure is otherwise required by state statute.

(5)  Information revealing the identity of persons who file complaints with, or provide information to, administrative, investigative, law enforcement, or penal agencies.

(6)  Any other information as set forth in 5 ILCS 140/7.

## Rule 240.530    Transcript

(a)  Transcribing Testimony

31

All testimony at an administrative hearing shall be under oath and shall be recorded or transcribed by a court reporter provided by the Commission. The Commission shall order any original transcript. Copies may be ordered from the court reporter at the parties' expense. Any party seeking preparation of a transcript on an expedited basis must make arrangements directly with the court reporter and is responsible for the full cost of the transcript. The original transcript shall be made available for examination by the parties and the public as part of the official record, in the Commission's office upon reasonable notice.

(b)     Correction of Transcript

A party seeking corrections to a transcript taken at an administrative hearing must file and serve a written motion. The motion must specify (a) the transcript page and line number of each proposed change; (b) the language the party seeks to remove, replace, or correct; (c) the new language the party seeks to add or substitute; and (d) the reason for each proposed change. The Commission favors agreed motions for correction of transcripts, to the extent possible. The motion must be filed and served no later than the due date of the party's objections to the hearing officer's recommended decision. Any other party may file and serve a response no later than 14 days from the date of filing. The hearing officer shall rule on the motion by mail.

# SECTION 240.600   DECISIONS AFTER HEARING

**Rule 240.610     Recommended Ruling on Liability and Relief**

(a)     Recommended Ruling

After the conclusion of the administrative hearing, or the last due date for post-hearing briefs if ordered, the hearing officer shall mail to the parties and file with the Commission a recommended ruling as to liability and the relief to be awarded if liability is found. The recommended ruling shall include the following:

(1)     A summary of the contentions of each party
(2)     Findings of fact based on and limited to the testimony and other evidence of record
(3)     A recommended determination as to whether a preponderance of the evidence sustains each claim of the complaint, or for any defaulted claim whether the complainant has established a *prima facie* case
(4)     Recommended conclusions of law including analysis of each claim and reasoning to support the recommended determinations
(5)     Recommendations as to appropriate relief, including fines, and whether to award attorney fees and costs to a prevailing complainant.

(b)     Objections and Replies

Each party shall have 28 days from the mailing of the recommended ruling to file and serve objections and any request for review of an interlocutory decision made during the hearing process. Objections to a recommended ruling must include (i) relevant legal analysis for any objections to legal conclusions, (ii) specific grounds for reversal or modification of any findings of fact including specific references to the record and transcript, and (iii) specific grounds for reversal or modification of any recommended relief. Requests for review of an interlocutory decision must comply with Rule 250.130. Responses and replies shall be permitted only on leave of the hearing officer.

**Rule 240.620     Board of Commissioners Decision on Liability and Relief**

(a)     Board of Commissioners Action

The Board of Commissioners shall adopt, reject, or modify the hearing officer's recommended ruling in whole or in part, or may remand for additional proceedings concerning some or all issues presented. The Board shall adopt the recommendation of the hearing officer if it is not contrary to the evidence presented at

the administrative hearing. The Board shall also rule on any request for review of an interlocutory decision made during the hearing process.

(b)        Ruling and Order

Rulings of the Board of Commissioners shall be in writing, shall be issued after the last due date for objections or replies to the hearing officer's recommended ruling, and shall be sent to all parties by mail.  The Commission shall issue a written order which sets forth the findings of fact and conclusions of law.  If the Board of Commissioners finds that a respondent has violated the ordinance, the written order shall include any orders for relief and the procedures to determine attorney's fees and costs if awarded.


**Rule 240.630        Determination of Attorney Fees and Costs**

(a)        Petition and Briefing

No later than 28 days after the mailing of the Board of Commissioners ruling, or as otherwise ordered, a complainant who is awarded attorney fees may file and serve a petition for fees and/or costs, supported by argument and affidavit. Commission proceedings for consideration of attorney fees shall not be postponed in the event that one or more parties petition for a *writ of certiorari* or otherwise appeals the liability and relief ruling made by the Commission, unless a court orders the Commission to stay or cease its process. The petition must include the following statements and documentation in order for fees and costs to be awarded:

(1)        A statement showing the number of hours for which compensation is sought in segments of no more than one-quarter hour, itemized according to the date performed, the work performed, and the individual who performed the work. The work performed must be in such detail that it sufficiently describes the nature and purpose of the work.

(2)        A statement of the hourly rate customarily charged by each individual for whom compensation is sought, or in the case of a public or not-for-profit law office which does not charge fees or which charges fees at less than market rates, documentation of the rates prevalent in the practice of law for attorneys in the same locale with comparable experience and expertise.

(3)        Documentation of costs for which reimbursement is sought.

Any other party may file and serve a written response no later than 14 days after the filing of the petition. Replies shall be permitted only on leave of the hearing officer.

(b)        Recommended Ruling and Responses

After the parties' submissions or the due date of the last submission if nothing was filed, the hearing officer shall mail to the parties and file with the Commission a recommended ruling on the petition for attorney fees and costs. The recommended ruling shall set forth the hearing officer's reasoning for each recommended determination.

The parties shall each have 28 days from the mailing of the recommended ruling to file and serve objections and any request for review of an interlocutory order entered during the fee petition process. Objections must include specific grounds for modification of any finding of fact and relevant legal analysis for any objections to legal conclusions. Requests for review of an interlocutory order must comply with Rule 250.130. Replies shall be permitted only on leave of the hearing officer.

(c)        Board of Commissioners Ruling and Order

The Board of Commissioners shall adopt, reject, or modify the hearing officer's recommended ruling in

33

whole or in part, or may remand for additional proceedings concerning some or all of the issues presented. The Board of Commissioners shall adopt the recommendation of the hearing officer if it is not contrary to the evidence. The ruling of the Board of Commissioners shall be in writing, shall be issued after the last due date for objections or replies to the hearing officer's recommended ruling, and shall be sent to all parties by mail. The Board shall also rule on any request for review of an interlocutory decision made during the fee petition process. The Commission shall issue a written order stating the findings of fact, conclusions of law, and amounts of attorney fees and costs awarded.

**Rule 240.640       Supplemental Attorney Fees and Costs after Court Review**

If, in reviewing a Commission final order, the reviewing court rules in favor of the complainant but does not determine the amount of attorney fees and costs to which the complainant is entitled, the complainant may file with the Commission and serve on the other parties and the hearing officer a petition for an award of supplemental attorney fees and costs incurred during the state court proceedings. The petition must be filed and served no later than 28 days after the date of the court decision. The content and procedural requirements are as set forth in Rule 240.630 for similar petitions after a liability ruling by the Board of Commissioners.

## SECTION 240.700   PRE- AND POST-JUDGMENT INTEREST

Pre- and post-judgment interest on damages shall be awarded at the bank prime loan rate, as published by the Board of Governors of the Federal Reserve System in its publication entitled "Federal Reserve Statistical Release H.15 (519) Selected Interest Rates." The interest rate used shall be adjusted quarterly from the date of violation based upon the rates in the Federal Reserve Statistical Release. Interest shall be calculated on a daily basis starting from the date of the violation and shall be compounded annually.

# SUBPART 250      REVIEW AND COMPLIANCE

## SECTION 250.100   REVIEW

**Rule 250.110       Review of Dismissals**

A complainant seeking review of the full or partial dismissal of a complaint by the Commission, or a hearing officer must file and serve a request for review within 28 days of the mailing of the dismissal order. The request must be served on all other parties and the hearing officer (if any). Leave may be granted to respond or reply.  If a complainant wishes to seek a motion for extension of time to file a request for review, the complainant must do so in conformance with to Rule 210.320(c).

**Rule 250.120       Other Review**

In addition to review of dismissals under Rule 250.110, the following opportunities for review or reconsideration are available under these rules: (a) motion to vacate or modify procedural sanctions under Rule 235.150, (b) request for review of decisions not to disqualify a hearing officer under Rule 240.220, and (c) objections to a hearing officer's recommended ruling including any request for review of interlocutory decisions made during the hearing process under Regs. 240.610(b) and Rule 240.630(b)(2). No request for review is available for dismissals or other decisions by the Board of Commissioners; see Rule 250.150 as to appeal of final orders.

**Rule 250.130       Content and Grounds for Review**

(a)        Content

A request for review must state with specificity the reasons, evidence, or legal authority requiring reversal or modification of the decision in question. The request may not exceed 10 pages without leave from the

Commission and must clearly state that the party is seeking reconsideration or review. Any new testimonial or documentary evidence must be provided with the request.

(b)     Grounds

Grounds for reversal or modification may include relevant evidence which is newly discovered and not available at the time of the original decision; new and dispositive legal precedent not available at the time of the original decision; a material misrepresentation, misstatement, or omission which was a basis for the decision; or a material error by the Commission or hearing officer. If a complaint was dismissed for failure to cooperate, the request for review must (1) establish good cause for the complainant's noncompliance, at the time required, with the requirement which was the basis for dismissal; and (2) include any missing material which was a basis for the dismissal or show good cause for not doing so.

**Rule 250.140     Grant or Denial of Request for Review**

For dismissal orders entered by the Commission, the Commission shall rule on any request for review. For dismissal orders entered by a hearing officer, the hearing officer shall rule on any request for review. The Board of Commissioners shall rule on any request for review submitted with objections to a hearing officer's recommended ruling. If granting a reversal or modification pursuant to a request for review, the order shall describe any further proceedings in the case.

**Rule 250.150     Appeal of a Final Order**

To appeal a final order of the Commission, a party must seek a *writ of certiorari* from the Chancery Division of the Circuit Court of Cook County according to applicable law. Neither the Commission nor the Board of Commissioners shall accept or consider requests for review of a final order.

## SECTION 250.200   COMPLIANCE WITH FINAL ORDERS

**Rule 250.210     Duty to Comply**

Unless otherwise specified, parties must comply with a final order after administrative hearing no later than 28 days from the date of mailing of the later of a Board of Commissioners' final order on liability or any final order on attorney fees and costs.

**Rule 250.220     Enforcement of Final Orders**

If a party believes there has been a violation of a final order after administrative hearing, the party may proceed independently to enforce the final order under any applicable law. If the party wishes the Commission to seek enforcement, the party must file a motion for enforcement with the Commission and serve it on all other parties, setting forth the nature of the alleged violation. All other parties shall have 14 days from filing of the motion to file and serve a response, unless the Commission issues an order allowing additional time. The Commission may conduct an investigation into the alleged violation and may issue any orders it deems necessary to exercise its authority to seek enforcement. If the Commission finds substantial evidence that a party has violated any provision of a final order, the Commission shall promptly notify the parties in writing, may fine any noncompliant party, and may request the Department of Law to seek judicial enforcement in state court on behalf of the Commission. If the Commission concludes that substantial evidence of violation of the final order is lacking, it shall notify the parties in writing.

In addition, the Commission may *sua sponte* seek judicial enforcement of all or part of any final order.

## SUBPART 260     COMMISSION RULE-MAKING

**Rule 260.100     Construction of Rules and Rules**

These rules shall be liberally construed to accomplish the purpose of the ordinances.

35

**Rule 260.110       Superseding of Rules and Rules**

These rules shall supersede all prior rules and rules of the Commission relating to the Chicago Human Rights Ordinance, the Chicago Fair Housing Ordinance, and the Commission on Human Relations Enabling Ordinance.

**Rule 260.120       Amendment of Rules**

Changes in these rules may be made by a vote of a majority of a quorum of the Board of Commissioners at a regular or special meeting, or as otherwise provided by law.

**Rule 260.130       Availability of Rules**

Copies of these rules shall be available to the public at the office of the Commission subject to reasonable limits as to quantity provided to any person within a given period.

**Rule 260.140       Petition for Rule-Making**

Any person may request that the Commission promulgate, amend, or repeal a rule or rule by submitting a written petition to the Commission. The petition shall set forth in particular the rule-making action desired and should contain the person's arguments or reasons in support thereof. The petition shall be considered by

the Commission and the petitioner shall be notified in writing as to its disposition. Any rule-making undertaken in response to the petition shall be governed by Rule 260.120.

**Rule 260.150       Separability**

If any provision or term of these rules, or any amendment thereto, is determined by a court or other authority of competent jurisdiction to be invalid, such determination shall not affect the remaining provisions, which shall continue in full force and effect.

**Rule 260.160       Effect of Intergovernmental Agreements**

Intergovernmental agreements entered pursuant to M.C.C. Section 2-120-510(q) may alter parts of these rules or add new procedures without specifically amending the rules as set forth in Rule 260.120, or both. Summaries of any intergovernmental agreements shall be available to the public on the same terms as for these rules under Rule 260.130.

# SUBPART 270       GENERAL PROCEDURES

## SECTION 270.100   TIMING AND DEADLINES

**Rule 270.110       Computation of Time**

In computing any time period under the ordinances, these rules, or any order or notice, the date when the time period begins to run shall not be included. If the last day of a time period falls on a Saturday, Sunday, or any federal, state, or municipal legal holiday, the time period shall continue until the end of the next day which is not one of these. If a time period is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. When a time period commences upon a person's receipt of service or notice, and service is by mail, receipt shall be presumed to occur on the third day after mailing unless the recipient proves that the service or notice was not actually received on that day.

**Rule 270.120       Expedited Proceedings**

For good cause shown, the Commission may order proceedings to be expedited pursuant to M.C.C. Section

36

2-120-510(i).

**Rule 270.140          Commission Deadlines**

All deadlines related to actions to be taken by the Board of Commissioners, the Commission, or its agents are intended to be directory, not mandatory. A failure of the Board of Commissioners, the Commission, or its agents to meet any such deadline shall not be cause to dismiss a complaint, default a respondent, or otherwise prejudice a claim or defense.

# SECTION 270.200    SERVICE AND FILING

**Rule 270.210          Service of Documents**

(a)          Manner of Service

Unless otherwise ordered, all motions, orders, notices, discovery, and other items which are required to be served may be served (i) in person, (ii) by depositing the item to be served a United States mailbox, (iii) by sending an electronic facsimile (fax) copy of the item, (iv) by sending a copy of the item by electronic mail (e-mail), or (v) by electronic filing through the Commission's website, under the procedures of Rule 270.230. Documents required to be served must be received, not sent, on the due date. Service by mail shall be deemed complete three days after the postmarked mailing date of the item, properly addressed to the person to be served, unless such person proves that the item was not actually received on that day. Facsimiles and e-mail transmissions must be received by 5:00 p.m. in order to be deemed received on a particular day.

(b)          Certificate of Service

If service is required, a certificate of service or equivalent written evidence of service must be filed with the Commission and served on the hearing officer, if any, within 7 days of the service date. A certificate of service consists of a signed statement of the individual causing service, specifying the material served, the person or persons to whom service was made, and for each person the manner and date of service including the address, facsimile number, e-mail address or other location where mailed or delivered.

**Rule 270.220          Filing with the Commission**

(a)          Form of Filings

All filings at the Commission in paper form must consist of an original and one copy unless a single copy of voluminous material is allowed by written order. The Commission is not required to provide copying services for individuals attempting to file. Photocopies of evidentiary documents are preferred unless otherwise ordered, provided that the party must retain each original document and produce it as ordered. Except for initial complaints, each document or set of documents filed must conspicuously state on the first page or a cover page the case number for which the filing is intended. If submitting a filing intended to cover multiple cases (such as a notice of change of name, status, or contact information), sufficient copies must be submitted to cover each case number or consolidated case, with the applicable case numbers clearly and conspicuously stated.

(b)          Manner of Filing

Documents are deemed filed when received at the Commission, not when sent. Documents are accepted for filing at the Commission between 9:00 a.m. and 5:00 p.m. on business days unless otherwise ordered or posted conspicuously at the Commission. Documents filed by facsimile, electronic mail, or electronic filing through the Commission's website must be received by 5:00 p.m. in order to be deemed received on a particular day. A filing by facsimile or electronic mail shall not be deemed complete until an original in paper form is received. Failure to file the original within 7 days of the filing by facsimile or electronic mail shall allow the Commission, or hearing officer if applicable, to invalidate the filing.

37

**Rule 270.230    Service and Filing by Electronic Mail**

(a)    Service by electronic mail (e-mail) on a party is allowed if the party consents to it by listing an e-mail address in the party's complaint or any subsequent document filed and served in the case. A party may rescind consent to e-mail service in a case by filing and serving a notice so stating.

(b)    Documents sent by electronic mail (e-mail) will be accepted for filing with the Commission, or deemed sufficient service on a hearing officer or party, if the following requirements are met:

(1)    The document must be sent in Portable Document Format (PDF) as a file attachment to an e-mail message.

(2)    For documents filed with the Commission, the e-mail must be sent to cchrfilings@cityofchicago.org, or to such other e-mail address designated for filings as appears on the Commission's website, in a conspicuous posting in the Commission's office, or in the Commission's latest notice or order issued in the case.

(3)    For documents served on a hearing officer, the e-mail must be sent to the e-mail address for the hearing officer as provided in the order appointing the hearing officer or in the Commission's or hearing officer's latest notice or order issued in the case.

(4)    All other service or filing requirements must be met.

(5)    The Commission may, by standing order or by written notice to the parties in a particular case, establish additional procedures for electronic service or filing, including signature or verification by electronic means.

# SECTION 270.300    REPRESENTATION OF PARTIES

**Rule 270.310    Attorney Appearance**

If a party chooses to be represented by an attorney at any stage of proceedings before the Commission, the attorney must file with the Commission and serve on all other parties a written attorney appearance before Commission staff will discuss the case with the attorney and before the attorney will be allowed access to the case files or allowed to attend a settlement conference, administrative hearing, pre-hearing conference, or other proceeding or meeting on behalf of the represented client. An appearance filed after the commencement of the hearing process must also be served on the hearing officer. The appearance must clearly state that the attorney is representing the party or parties before the Commission.

**Rule 270.320    Supervised Senior Law Students or Graduates**

Any student in or graduate of a law school who satisfies all of the eligibility requirements set forth in Illinois Supreme Court Rule 711 may represent any party before the Commission to the extent permitted and under the same conditions as set forth in that Rule. When filing an attorney appearance, the student or graduate must assert Rule 711 status and the supervising attorney must file an attorney appearance at the same time, asserting supervisory status as to that student or graduate.

**Rule 270.330    Attorney Licensed Out of State**

An attorney who is not a member of the Illinois Bar may appear on behalf of a party on a *pro hac vice* basis for a particular case. To do so, the attorney must acknowledge out-of-state status in the attorney appearance and specify the jurisdictions where licensed to practice. The attorney shall be deemed admitted without Commission order and shall be treated the same as attorneys licensed in Illinois.

38

**Rule 270.340**     **Withdrawal of Attorney Appearance**

(a)     Motion to Withdraw and Responses

An attorney seeking to withdraw an attorney appearance must file a written motion and serve it on the client (unless a consent to the withdrawal, signed by the client, is attached to the motion), on all other parties, and on the hearing officer if one has been appointed. The motion must set forth the reasons for seeking the withdrawal and must provide the client's last known address and telephone number. The client or another party may file and serve objections to the motion no later than 14 days from its filing. If objections are filed and served, the attorney and other parties shall have 7 days from filing to respond.

(b)     Granting or Denial of Motion to Withdraw

Before commencement of the hearing process, a motion to withdraw shall be deemed granted fourteen days after filing, without Commission order, if no objection is filed. If an objection is filed, the Commission shall rule on the motion by mail. After commencement of the hearing process, an attorney shall not be allowed to withdraw without written leave of the hearing officer.

(c)     Client Dismissal of Attorney

A party that no longer wishes to be represented by an attorney of record who has not withdrawn the attorney appearance must file a signed, written notice clearly stating that the party is no longer represented by the attorney and will proceed *pro se* unless and until a new attorney enters and appearance. The notice must provide the party's current address and telephone number, and it must be served on the attorney, all other parties, and the hearing officer if one has been appointed.

# SECTION 270.400     INTERPRETERS AND ACCESSIBILITY

**Rule 270.410**     **Interpreters**

The Commission may provide a qualified sign language or foreign language interpreter at any time during the complaint filing process or while a case is pending. Any request for an interpreter for such purposes must be made in writing at least 7 days in advance of the date on which the interpreter is needed unless good cause is established for failure to do so. The Commission shall provide an interpreter at all public meetings of the Commission upon a written request made at least 7 days in advance of the meeting. The person who has requested the interpreter must notify the Commission as soon as possible if unable to attend the event for which the interpreter has been arranged, or if for other reasons the interpreter is no longer needed; if the person fails to do so without good cause, the Commission may require reimbursement for the costs of the interpreter.

**Rule 270.420**     **Accessibility**

All settlement conferences, fact-finding conferences, pre-hearing conferences, jurisdictional hearings, administrative hearings, and other conferences and public meetings of the Commission shall be held in facilities accessible to persons with disabilities.

# SECTION 270.500     PRECEDENT

**Rule 270.510**     **Applicable Precedent**

(a)     Published Decisions

All published decisions of the Commission and the Board of Commissioners shall have precedential effect

39

and may be cited as such. Published decisions include all rulings of the Board of Commissioners and all other written decisions by the Commission or a hearing officer which the Commission determines to have precedential value and lists in its index pursuant to Rule 270.530(a) because they (i) state a new rule of law, (ii) modify, criticize, or clarify an existing rule of law, (iii) resolve a conflict in prior decisions, (iv) contribute to an understanding or application of existing law, or (v) decide a case of substantial or continuing public interest. Determinations as to substantial evidence of an ordinance violation shall not be published or cited as precedent; however, decisions on requests for review of a no substantial evidence determination may be published if they meet the above criteria.

(b)      Citation of Unpublished Decisions

A party may cite an unpublished decision of the Commission (other than a determination as to substantial evidence) as precedent but must include a copy with the brief or other submission in which it is cited. If the Commission cites an unpublished decision in support of any subsequent decision, it shall then add the decision to its next index of published decisions pursuant to Rule 270.530.

(c)      Other Decisions

In deciding issues of first impression, the Commission shall look to decisions interpreting other relevant laws for guidance. A party citing such a decision must include a copy with the brief or other submission in which it is cited.

**Rule 270.520      Citation Form**

Decisions of the Commission shall be cited as follows: case name, case number, date of decision, e.g. *Smith v. ABC Company and Jones*, CCHR No. 01-E-000 (Jan. 3, 2001).

**Rule 270.530      Publication and Copies of Decisions**

(a)      Index of Decisions

The Commission shall periodically list all of its published decisions in an index and shall make the index available for public inspection without cost. The Commission shall furnish copies of the index at a charge not to exceed $70 plus any delivery costs. Copies shall not be released to the requester until the Commission has received payment in full. A party may seek waiver of these charges pursuant to Section 270.600.

(b)      Copies of Decisions

Commission decisions listed in the index shall be available for inspection at the Commission without cost on reasonable notice of at least two business days. Any request for inspection or copying must include the case name, case number, and date of decision. The Commission may require a written request. The Commission shall furnish copies of decisions at a charge not to exceed 20 cents per page plus any delivery costs. Copies shall not be released to the requester until the Commission has received payment in full. A party may seek waiver of these charges pursuant to Section 270.600.

(c)      Limitations

Except for making available an index and copies of its published decisions, the Commission is not required to conduct legal research or to identify relevant published or unpublished decisions for any party or member of the public. No description, summary, or characterization of a decision in the index or any similar informational publication of the Commission may be cited as legal authority.

## SECTION 270.600   WAIVER OF COMMISSION FEES

A party may by written motion request that the Commission waive its fees for copies of Commission documents. The motion shall be granted only on submission of an affidavit or other statement under oath

40

plus any additional documentation establishing by objective evidence that the requesting party is unable to pay the charges and that the copies sought are necessary for pursuit of the party's claims or defenses in a Commission case. If the party's attorney of record was obtained through a not-for-profit legal assistance provider, the attorney's certification that the provider has determined the party to be indigent is sufficient objective evidence of inability to pay.

41

# PART 400        HOUSING DISCRIMINATION

## SUBPART 410        DEFINITIONS

(1)      **"Appraisal"** means an estimate or opinion of the value of specified residential real estate made in a business context in connection with the sale, rental, financing or refinancing of a dwelling or in connection with any activity that otherwise affects the availability of a residential real estate-related transaction, whether the appraisal is oral or written, or transmitted formally or informally. The appraisal includes all written comments and other documents submitted as support for the estimate or opinion of value.

(2)      **"Broker"** means any person, other than a real estate salesperson, who for another and for compensation:

(a) Sells, exchanges, purchases, rents or leases real estate;

(b) Offers to sell, exchange, purchase, rent or lease real estate;

(c) Negotiates, offers, attempts or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;

(d) Lists, offers, attempts or agrees to list real estate for sale, lease or exchange;

(e) Buys, sells, offers to buy or sell or otherwise deals in options on real estate or improvements thereon;

(f) Collects, offers, attempts or agrees to collect rent for the use of real estate;

(g) Advertises or represents himself or herself as being engaged in the business of buying, selling, exchanging, renting or leasing real estate;

(h) Assists or directs in procuring prospects, intended to result in the sale, exchange, lease or rental of real estate; and/or

(i) Assists or directs in the negotiation of any transaction intended to result in the sale, exchange, leasing or rental of real estate.

(3)      **"Dwelling"** means any building, structure or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more persons, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure or portion thereof. "Dwelling" includes, but is not limited to, apartments, houses, mobile home parks, trailer courts, condominiums, cooperatives, dormitories, shelters and time sharing properties.

(4)      **"Real estate-related transaction"** means:

(a) the making or purchasing of loans or providing other financial assistance:

(i) for purchasing, constructing, improving, repairing or maintaining a dwelling; or

(ii) which are secured by residential real estate; or

(b) the selling, brokering or appraising of residential real property.

(5)      **"Salesperson"** means any person, other than a real estate broker, who is employed by a real estate broker or is associated by written agreement with a real estate broker as an independent contractor

53

and participates in any activity described in the definition of "broker" set forth above.

(6)    "Sexual harassment," for purposes of Part 400 of these rules, means any unwelcome sexual advances or requests for sexual favors or conduct of a sexual nature when (a) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's housing; or (b) submission to or rejection of such conduct by an individual is used as the basis for any housing decision affecting the individual; or (c) such conduct has the purpose or effect of substantially interfering with an individual's housing rights or creating an intimidating, hostile or offensive housing environment.

(7)    "Tenant" means a person entitled to occupy a dwelling to the exclusion of others by written or oral agreement, by sub-tenancy approved by the landlord, or by sufferance.

# SUBPART 420    DISCRIMINATORY ACTS

### Rule 420.100    Terms and Conditions

It is a violation of the Chicago Fair Housing Ordinance (FHO) to impose different prices, terms or conditions relating to the sale, rental or occupancy of a dwelling or to deny or limit services, privileges or facilities in connection with the sale, rental or occupancy of a dwelling because of the membership of the actual or prospective buyer, renter, or tenant in one of the Protected Classes (see Rule 100(24) above).

Prohibited actions under M.C.C. Section 5-8-030(A) include, but are not limited to:

(a) Using different provisions in leases or contracts of sale, or in terms and conditions of occupancy including, but not limited to those relating to rental charges, sales price, security deposits, the terms of occupancy, down payments and closing requirements, based on a person's membership in a Protected Class;

(b) Failing to perform, delaying performance of, or otherwise discriminating in the maintenance or repairs of a person's dwelling based on that person's membership in a Protected Class;

(c) Failing to process a person's offer for the sale, purchase or rental of a dwelling or failing to communicate an offer accurately based on that person's membership in a Protected Class;

(d) Limiting the availability of privileges, services or facilities associated with a dwelling because of a person's membership in a Protected Class;

(e) Using different qualification criteria or applications, or different sale or rental standards or procedures, such as income standards, application requirements, application fees, credit analysis or sale or rental approval procedures or other requirements, because of a person's membership in a Protected Class;

(f) Denying or limiting a person's services or facilities in connection with the sale, rental or occupancy of a dwelling because that person failed or refused to provide sexual favors, see Rule 420.170 below;

(g) Discriminating against a person in connection with a real estate-related transaction because of that person's membership in a Protected Class;

(h) Discharging or taking other adverse action against an employee, agent, broker or salesperson because the individual refused to participate in a discriminatory housing practice;

(i) Employing codes or other devices to segregate or reject a person because of the person's membership in a Protected Class;

(j) Refusing to deal with certain brokers or salespersons because they, or one or more of their clients, are members of a Protected Class; and

54

(k) Denying or delaying the processing of a sales offer or an application made by a person or refusing to approve a person for purchase of or occupancy in a dwelling because of that person's membership in Protected Class.

**Rule 420.105    Pre-Rental or Pre-Sale Inquiries**

Any inquiry in connection with a prospective rental or sale which directly or indirectly expresses any limitation, specification or discrimination as to membership in a Protected Class (see Rule 100(24) above) shall be deemed a Violation of the FHO unless based upon a *bona fide* business reason.

**Rule 420.110    Steering**

Prohibited actions under M.C.C. Section 5-8-30(A) , which are generally referred to as "steering practices," include, but are not limited to:

(a) Discouraging or encouraging the inspection, purchase or rental of a dwelling in a community, neighborhood or development because of a person's membership in a Protected Class (see Rule 100(24) above) or because of the membership in a Protected Class of persons in the community, neighborhood or development;

(b) Discouraging the purchase or rental of a dwelling based on a person's membership in a Protected Class (see Rule 100(24) above) by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling or of a community, neighborhood, or development;

(c) Communicating to any person that the person would not be comfortable or compatible with existing residents of a community, neighborhood or development based on the person's or residents' membership in a Protected Class (see Rule 100(24) above); and

(d) Assigning or directing any person to a particular section of a community, neighborhood or development, or to a particular floor of a building, based on that person's or the residents' membership in a Protected Class (see Rule 100(24) above).

**Rule 420.120    Circulation of Discriminatory Communications**

It is a violation of the FHO to cause to be made, printed or published any notice, statement or advertisement with respect to the sale or rental of a dwelling which indicates any actual or intended preference, limitation or discrimination because of a person's membership in a Protected Class (see Rule 100(24) above).

(a) This prohibition shall apply to all written or oral notices, statements or advertisements by any owner, lessee, sublessee, assignee, managing agent, or other person, firm or corporation having the right to sell, rent, lease or sublease any housing accommodation or any agent of these. Written notice, statements and advertisements include, but are not limited to, any applications, fliers, brochures, deeds, signs, banners, posters, billboards, or advertisements in newspapers or elsewhere, or other documents.

(b) Discriminatory notices, statements and advertisements include, but are not limited to, the following:

(1) Using words, phrases, photographs, illustrations, symbols or forms which would convey or suggest to a reasonable person any preference, limitation or discrimination regarding the availability of a dwelling based on membership in a Protected Class (see Rule 100(24) above);

(2) Expressing to persons such as brokers, salespersons, employees, prospective sellers or renters any preference, limitation or discrimination regarding any person because of that person's membership in a Protected Class (see Rule 100(24) above);

(3) Selecting media or locations for advertising the sale or rental of dwellings so as to intentionally

55

deny particular segments of the housing market information about housing opportunities because of a Protected Class (see Rule 100(24) above); and

(4) Refusing to publish advertising for the sale or rental of dwellings or requiring different charges or terms for such advertising because of a Protected Class (see Rule 100(24) above).

**Rule 420.130     Refusal to Sell, Lease or Rent**

It is a violation of the FHO for a person to refuse to sell, rent or lease a dwelling to a person or to refuse to negotiate with a person for the sale, rental or leasing of a dwelling because of that person's membership in a Protected Class (see Rule 100(24) above). Such prohibited actions include, but are not limited to:

(a) Failing to accept or consider a person's offer because of that person's membership in a Protected Class;

(b) Failing to sell, rent or lease a dwelling to, or failing to negotiate for the sale, rental or leasing of a dwelling with any person because of the person's membership in a Protected Class;

(c) Evicting a person because of the person's membership in a Protected Class;

(d) Indicating to a person through words or conduct that a dwelling which is actually available for inspection, sale, or rental has been sold or rented (or is otherwise unavailable) because of the person's membership in a Protected Class;

(e) Representing to a person that a legally unenforceable covenant or other deed, trust or lease provision which purports to restrict the sale or rental of dwellings because of the person's membership in a Protected Class does preclude the sale or rental of a dwelling to a person;

(f) Complying with legally unenforceable covenants, deeds, trusts, or lease provisions which preclude the sale or rental of a dwelling to any person because of the person's membership in a Protected Class;

(g) Limiting information to a person by word or conduct regarding suitably priced dwellings available for inspection, sale or rental because of the person's membership in a Protected Class; and

(h) Providing false or inaccurate information regarding the availability of a dwelling for sale or rental to any person because of the person's membership in a Protected Class.

**Rule 420.140     Discrimination in Financing**

(a) It is a violation of the FHO or the HRO for any person to discriminate concerning any residential real estate-related transactions because of the person's membership in a Protected Class (see Rule 100(24) above).

(b) Prohibited practices under this rule include, but are not limited to, failing or refusing to provide to any person, in connection with a residential real estate-related transaction, full information regarding the availability of loans or other financial assistance, application requirements, procedures or standards for the review and approval of loans or financial assistance, or providing information which is inaccurate or different from that provided others because of the person's membership in a Protected Class (see Rule 100(24) above).

(c) It is an Ordinance Violation for any person engaged in the making of loans or in the provision of appraisals or other financial assistance relating to the purchase, construction, improvement, repair or maintenance of dwellings or which are secured by residential real estate to impose different terms or conditions for the availability of such loans or other financial assistance or to discriminate in the provision of an appraisal because of a person's membership in a Protected Class (see Rule 100(24) above). Examples include, but are not limited to:

(1) Using different policies, practices or procedures in evaluating or determining credit-worthiness of any person in connection with the provision of any loan or other financial assistance for a dwelling

56

or for any loan or other financial assistance which is secured by residential real estate because of a person's membership in a Protected Class;

(2) Determining the type of loan or other financial assistance to be provided with respect to a dwelling or fixing the amount, interest rate, duration or other terms for a loan or other financial assistance for a dwelling or which is secured by residential real estate because of a person's membership in a Protected Class;

(3) Making an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling which takes into consideration a person's membership in a Protected Class; and

(4) Using an appraisal of residential real property in connection with the sale, rental, or financing of any dwelling where the user knows or reasonably should know that the appraisal takes into consideration a person's membership in a Protected Class.

**Rule 420.150        Blockbusting/Panic Peddling and Encouragement of Blockbusting/Panic Peddling**

It is a violation of the FHO to induce or attempt to induce a person to sell or rent a dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons who are members of a Protected Class (see Rule 100(24) above). Such prohibited actions include, but are not limited to:

(a) Engaging in conduct, (including uninvited solicitations for listings), which conveys or suggests to a reasonable person that a neighborhood is undergoing or is about to undergo a change in its composition with respect to a Protected Class in order to encourage the person to offer a dwelling for sale or rental; and

(b) Encouraging any person to sell or rent a dwelling through statements or suggestions that the entry or prospective entry of persons who are members of a Protected Class can or will result in undesirable consequences for the community, neighborhood, or development including but not limited to the lowering of property values, an increase in criminal or antisocial behavior, or a decline in the quality of schools or other services or facilities.

**Rule 420.160        Refusal of Examination of Listings**

It is a violation of the FHO to engage in any of the following conduct:

(a) Refusing to take or to show listings of dwellings in certain areas to a person because of that person's membership in a Protected Class (see Rule 100(24) above);

(b) Refusing to deal with certain brokers or salespersons because they or one or more of their clients are members of a Protected Class (see Rule 100(24) above);

(c) Denying or delaying the processing of an application made by a person or refusing to approve a person for sale to or occupancy in a dwelling because of that person's membership in a Protected Class (see Rule 100(24) above); and

(d) Discharging or taking other adverse action against an employee, broker or salesperson because the individual refused to participate in a discriminatory housing practice.

**Rule 420.170        Sexual Harassment**

(a) Section 5-08-020 of the FHO prohibits any owner, lessee, sublessee, assignee, managing agent or other person, firm or corporation having the right to sell or rent any dwelling, or any agent of any of these from discriminating against any person because of the person's sex in any of the terms and conditions of housing. This prohibition includes sexual harassment as defined in Rule 410(6) above.

(b) In addition to the conduct prohibited by (a) and Rule 410(6) above, it is a violation of the FHO for housing

57

opportunities or benefits to be granted because of an individual's submission to sexual advances or requests for sexual favors with respect to the individual in question as well as other persons who were qualified for but denied these housing opportunities or benefits.

**Rule 420.175      Harassment (Other than Sexual Harassment)**

(a) Harassment on the basis of actual or perceived membership in a Protected Class (see Rule 100(24) above) is a violation of the FHO. An owner, lessee, sublessee, assignee, managing agent or other person having the right to sell, rent or lease any dwelling, or any agent of these, has an affirmative duty to maintain a housing environment free of harassment on the basis of membership in a Protected Class.

(b) Slurs and other verbal or physical conduct relating to an individual's membership in a Protected Class (see Rule 100(24) above) constitutes harassment when the conduct: (i) has the purpose or effect of creating an intimidating, hostile or offensive housing environment; (ii) has the purpose or effect of unreasonably interfering with an individual's housing; or (iii) otherwise adversely affects an individual's housing opportunity.

**Rule 420.180      Discrimination Against Persons with Disabilities**

It is a violation of the FHO to engage in any of the following conduct:

(a) Using terms which would have the effect of restricting the equal opportunity of people with disabilities to fully use and enjoy the housing in question, unless such terms cannot be eliminated without undue hardship to the owner or landlord. Such discriminatory terms include, but are not limited to, requiring a person with a disability: to have a housing companion in order to lease the premises, to live on the first floor, or to use only the freight elevator.

(b) Refusing to provide, upon request, a reasonable accommodation in the rules, policies, practices, amenities or services, unless such accommodation cannot be made without undue hardship to the owner or landlord. A reasonable accommodation means, but is not limited to, changes in the rules, policies, practices or services which would allow a person with a disability an equal opportunity to fully use and enjoy a particular housing accommodation. Examples of such accommodations include, but are not limited to, allowing persons who use emotional support animals or service animals on the premises despite a "no pets" rule; and changing the common area washing machines from top-loading to front-loading to allow them to be used by a person who happens to use a wheelchair.

(c) Refusing to allow a person with a disability, upon request, to make reasonable physical modifications to an existing dwelling if the proposed modifications would allow the person to have an equal opportunity to fully use and enjoy the dwelling, unless such physical modification cannot be made without undue hardship to the owner or landlord. The following provisions apply to this prohibition:

(1) If the owner or landlord does not agree voluntarily to pay for these changes, the modifications are to be made at the expense of the person with a disability.

(2) The owner or landlord may condition permission for modifications on the person with a disability providing a reasonable description of the proposed modification in advance, and on reasonable assurances that such modifications will be completed in a professional and workmanlike manner, with any necessary building permits, and in accordance with all applicable laws.

(3) Where modifications of a dwelling may impair future use of the dwelling by another person who may or may not have a disability, the tenant may be required to return the dwelling to its original condition at the expiration of the lease term.

(4) Examples of reasonable physical modifications include, but are not limited to: installing grab bars in the bathroom, lowering closet bars, and other physical modifications which would allow a person with a disability full use and enjoyment of the dwelling.

58

(d) For the purposes of Part 400, "undue hardship" will be proven if the financial costs or administrative changes that are demonstrably attributable to the accommodation of the needs of persons with disabilities would be prohibitively expensive or would unduly affect the nature of the housing.

(1) There must be objective evidence of resulting financial costs, administrative changes, or projected costs or changes.

(2) Factors to be considered in determining undue hardship, include, but are not limited to:

(A) the nature and cost of the accommodation;
(B) the overall financial resources of the owner or landlord, including resources of any parent organization; and
(C) the effect on expenses and resources, or other impact of such accommodation upon the operation of the housing accommodation.

(3) The preference of other persons making use of the housing accommodation does not constitute undue hardship.

**Rule 420.190     Standards**

For purposes of Part 400, whenever physical accommodations are required to be made pursuant to the Chicago Human Rights Ordinance to fully or reasonably accommodate a person with a disability, and where the Illinois Environmental Barriers Act, 410 ILCS 25/1, is also applicable, such changes shall be made in accordance with the Illinois Accessibility Code, 71 Illinois Administrative Code, Ch. 1, subchapter b: Accessibility Standards ("IAC Standards"). With respect to all other physical accommodations required to be made pursuant to the Chicago Human Rights Ordinance to fully or reasonably accommodate a person with a disability, the Commission shall refer to the Illinois Accessibility Code and the American National Standards Institute standards for persons with disabilities, ANSI.1-1986, to determine whether the proposed accommodation is adequate and appropriate. Copies of the IAC Standards may be obtained from the Mayor's Office for People With Disabilities, City Hall, 121 North LaSalle Street. Copies of the ANSI Standards may be obtained from the American National Standards Institute, Inc., 1430 Broadway, New York, New York 10018.

Notwithstanding the above, the Commission does not adopt the Illinois Environmental Barriers Act, or any other substantive law, for purposes of determining whether there has been a violation of the Human Rights Ordinance. However, the Commission does look to the Illinois Accessibility Code and the American National Standards Institute standards, as set forth above, to determine whether the proposed accommodations are adequate and appropriate.

# SUBPART 430     EXEMPTIONS

Where an exemption is granted in the FHO or these Rules permitting discrimination based on a person's membership in a Protected Class (see Rule 100(26) above), that exemption shall not be read to allow discrimination based on a person's membership in any of the other Protected Classes. For example, Section 5-08-050(C) of the FHO permits restricting rental of rooms to persons of one sex. This exemption shall not be read, for example, to allow restricting rental of rooms to persons of one race.

59