**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RySheena Moore, Cadeidga Coleman, and Sheliah Ayanwale, on behalf of themselves and all others similarly situated, and H.O.P.E., Inc., d/b/a HOPE Fair Housing Center, | ) | |
| Plaintiffs, | ) | No. 24-cv-12912 |
| v. | ) | Judge April M. Perry |
| Mac Property Management, LLC, d/b/a Mac Properties, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

RySheena Moore, Cadeidga Coleman, Sheliah Ayanwale,[1] and H.O.P.E., Inc., d/b/a HOPE Fair Housing Center (collectively, "Plaintiffs") bring this putative class action against Mac Property Management, LLC, d/b/a Mac Properties ("Defendant") for race-based housing discrimination. Doc. 53. Specifically, the complaint alleges that Defendant refused to rent apartments at certain of its buildings to individuals using Housing Choice Vouchers ("Vouchers") to pay rent, which disproportionately affected Black renters. *Id.* ¶¶ 1, 3. As such, Plaintiffs assert disparate impact claims in violation of the Illinois Human Rights Act ("IHRA") (Count I) and Fair Housing Act ("FHA") (Count II). *Id.* ¶¶ 162-84. Defendant now moves to strike the amended class allegations under Federal Rule of Civil Procedure 12(f) and asks the Court to grant Defendant Rule 12(c) judgment on the pleadings on the claims brought by

[1] Plaintiff Janishia Fleming was dismissed from this action on March 3, 2026. Doc. 76.

Plaintiff Moore. Doc. 59; Doc. 61. For the reasons set forth below, Defendant's motions are denied.

**BACKGROUND**

Plaintiffs Moore, Coleman, and Ayanwale are participants in the federal Housing Choice Voucher Program ("Voucher Program"), which provides direct rental assistance for eligible housing in the private market. Doc. 53 ¶¶ 12-13, 15, 21. Defendant purportedly owns and manages over five thousand apartments in Hyde Park, Chicago and surrounding areas. *Id.* ¶ 17. Hyde Park is considered a desirable "mobility area" under the Voucher Program due to low rates of crime and poverty. *Id.* ¶¶ 24, 27.

Defendant's treatment of Voucher holders has been criticized since at least 2009 through numerous individual complaints. *Id.* ¶ 58. As alleged by Plaintiffs, Defendant implemented a set of policies and practices to block Voucher holders from renting at certain buildings in its portfolio, instead directing them to lower-quality buildings in less-desirable neighborhoods with fewer amenities. *See id.* ¶¶ 47, 72. For example, Defendant failed to respond to inquiries from Voucher holders, *see, e.g.*, *id.* ¶¶ 73, 75, process their rental applications, *see, e.g.*, *id.* ¶ 134, or provide tours of available units, *see, e.g.*, *id.* ¶ 118, while doing so for non-Voucher holders interested in the same buildings. *See, e.g.*, *id.* ¶¶ 74, 101. Plaintiffs Moore, Coleman, and Ayanwale were each told there were no available units in certain of Defendant's high-rise buildings or that they could not rent those units. *See id*. ¶¶ 96, 107, 127. Instead, Plaintiffs were provided with listings and tours at Defendant's older buildings on the outskirts of Hyde Park. *See id*. ¶¶ 99, 132.

Similarly, Voucher holders, including Plaintiff Coleman, were subject to "special rules" requiring them to have a "work-income" of two-and-a-half times the monthly rent or "extra

income" regardless of their ability to pay rent using their Vouchers. *Id.* ¶¶ 62-64, 109. Other Voucher holders were informed they could only rent apartments for amounts significantly under their Voucher budget, *id*. ¶¶ 129, and were barred from negotiating for higher-priced units. *Id.* ¶ 62. H.O.P.E., Inc. a non-profit corporation seeking to "eliminate housing discrimination," *id.* ¶ 16, conducted an investigation in which testers posed as prospective tenants and found that Defendant gave Voucher holders different information, discouraged them from renting at its high-rise properties, and did not provide follow-up materials as compared to non-Voucher holders with the same budgets and interests. *See, e.g.*, *id.* ¶¶ 10, 68, 73, 75.

As a result, Plaintiffs allege they have experienced emotional harm, *id.* ¶ 105, lost time and money, *id.* ¶¶ 137, 149, endured substandard living environments at the same or higher prices than units at Defendant's high-rise buildings, *id.* ¶ 115, and even experienced homelessness. *Id.* ¶ 138. Plaintiffs now seek to enjoin Defendant from continuing these practices and request compensatory and punitive damages for their injuries.

## ANALYSIS

### I. Motion to Strike Plaintiffs' Class Allegations

Defendant argues that the Court should strike Plaintiffs' class allegations because the putative class does not meet the requirements of Federal Rule of Civil Procedure 23. Doc. 61. Under Rule 12(f), "[t]he court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." That said, motions to strike are generally "disfavored," *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989), especially as applied to class allegations. *See, e.g.*, *Hansen v. United Airlines, Inc.*, No. 20 CV 2142, 2021 WL 4552552, at *5 (N.D. Ill. Oct. 5, 2021) (collecting cases); *Murdock-Alexander v. Tempsnow Emp.*, No. 16-CV-5182, 2016 WL 6833961, at *4 (N.D. Ill. Nov. 21, 2016). To that end, while

the Court is permitted to "deny class certification even before the plaintiff files a motion requesting certification," *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011), it should not do so unless "the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Marshall v. Grubhub Inc.*, No. 19-CV-3718, 2021 WL 4401496, at *5 (N.D. Ill. Sept. 27, 2021). "Unlike with a motion for class certification, [the defendant], as the movant[], bear[s] the burden of persuasion on their motion to strike." *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).[2]

Plaintiffs' putative class consists of "Voucher holders who are Black and who contacted Mac Properties about renting a Hyde Park area apartment in a building that was subject to Mac Properties' restrictive policies regarding Voucher holders, on or after December 17, 2022." Doc. 53 ¶ 150. Defendant contends the proposed class is improper because: (1) the class does not satisfy Rule 23's commonality and typicality requirements; (2) the class is a prohibited "failsafe" class; (3) Plaintiffs ask for more than incidental class damages; and (4) the class is overly broad and would violate the Fourth Amendment if certified. For the following reasons, the Court disagrees.

To bring a class action, a plaintiff must establish the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality usually exists when there is a

[2] The Seventh Circuit has not weighed in on which party holds the burden on a motion to strike class allegations, and district courts have reached differing conclusions. *Compare Wright v. Fam. Dollar, Inc.*, 10 C 4410, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) (noting "[e]ven when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action") with *Rysewyk*, No. 15 CV 4519, 2015 WL 9259886, at *8. That said, more recent decisions have placed the burden on the defendant because the plaintiff has not yet had the benefit of class discovery. *See, e.g., Kurt v. Platinum Supplemental Ins., Inc.*, No. 19 C 4520, 2021 WL 3109667, at *13 (N.D. Ill. July 22, 2021). This Court agrees that the moving party bears the burden, as is generally required for Rule 12 motions. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (holding that even when a Rule 12(b)(6) motion is unopposed, the movant must meet its burden); *Gunn v. Continental Casualty Co*., 968 F.3d 802, 807 (7th Cir. 2020) (noting that the defendant bears the burden in a Rule 12(c) motion).

"common nucleus of operative fact" amongst the class members. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Although a court need only find a single common question of law or fact, the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough. The claims must depend upon a common contention that is capable of class-wide resolution." *Chicago Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 434 (7th Cir. 2015) (internal citations omitted). "[C]lass-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

Defendant argues that the proposed class lacks commonality because the claims are "inherently individualized" and would require each prospective class member to prove they were unable to rent their desired apartment due to Defendant's policies *before* joining the class (*i.e.*, by establishing that the apartment was within their Voucher budget and would have been approved by the Chicago Housing Authority). Doc. 63 at 14-17. This argument is unpersuasive. First, the Court has already found that the class allegations involve common questions of law or fact. *See* Doc. 51 at 21. For example, common questions include whether Defendant refuses to engage in real estate transactions with Voucher holders by "lying about apartment availability," "steering Voucher holders to older, lower quality buildings with fewer amenities," and "refusing to show or provide tours of available apartments." *See* Doc. 53 ¶ 153. In other words, "[t]he claims of the proposed class members all arise from the same course of conduct by the same defendant[.]" *Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024). Adjudicating the questions surrounding such conduct will be central to each class member's claims and resolve issues of Defendant's liability. *See Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (finding the

defendant's common policies and practices to be the "glue" that held together the putative class).

Second, whether a class member would have been qualified to rent a particular apartment does not undermine their ability to proceed as a class. "Rule 23(b) requires only common evidence and common methodology, not common results." *Bell*, 800 F. 3d at 379. Plaintiffs allege in the complaint that most of Defendant's properties have rental units that fall within mobility area budgets for the Voucher Program. Doc. 53 ¶ 36. Although it is possible that not every class member would have qualified for such a unit, it is "routine in class actions to have a final phase in which individualized proof must be submitted" to show the class member was harmed by the defendant. *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). And even setting all of that aside, the IHRA and FHA create liability for more than just an outright refusal to rent. *See United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992) ("Unlike § 3604(a), § 3604(d) does not require a bona fide offer; instead, § 3604(d) creates an enforceable right to truthful information for any person, not just bona fide apartment seekers. This logic also extends to § 3604(b), which prohibits discrimination against 'any person' in the terms or conditions of rentals and, like § 3604(d), does not require a bona fide offer.") (internal citations omitted); *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 300 n.7 (7th Cir. 2000); *see also* 775 ILCS 5/3-102(A) (applying to "discriminat[ion] in making available [a real estate] transaction"). The complaint includes numerous allegations that Defendant discriminated against Voucher holders beyond just the refusal to rent certain apartments to specific Voucher holders. *See, e.g.*, Doc. 53 ¶¶ 61-66. That is more than enough to establish commonality regardless of any individual differences in budget.[3]

---

[3] The proposed class is not a failsafe class. A failsafe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see, e.g.*, *Bolden v. Walsh Const. Co.*, 688 F.3d 893, 895

For similar reasons, individual variations among the proposed class do not destroy typicality. "The question of typicality … is closely related to the … question of commonality." *Rosario*, 963 F.2d at 1018; *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality can be satisfied "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members; [the requirement] primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Scott*, 99 F.4th at 1091-92 (internal quotations omitted).

Plaintiffs Moore, Coleman, and Ayanwale have the same key characteristics as the proposed class members: they are Voucher holders, Black, and each contacted Defendant about renting at one of Defendant's more upscale Hyde Park buildings. The existence of "some factual variations may not defeat typicality." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). Therefore, while the Voucher budgets of Plaintiffs and the proposed class may vary, their claims arise from the same set of centralized policies and practices and are based on a common

---

(7th Cir. 2012) (class defined to include persons who did not earn more "because of their race"). Here, the proposed class does not presuppose the validity of members' claims nor define class members as persons discriminated against by Defendant. Instead, the proposed class is based on members having been subject to Defendant's policies and practices, whether or not they prove to be unlawful. *See, e.g.*, *Alpha Tech Pet, Inc. v. Lagasse, LLC*, 205 F. Supp. 3d 970, 978 (N.D. Ill. 2016) (noting that a class definition "avoids the problem of a fail-safe class because it is grounded in the particular factual circumstances that allegedly led to [the plaintiff's] injury."). Defendant may be correct that their treatment of Voucher holders is not unlawful or that a specific class member was not harmed, but that alone does not prevent class certification. *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010) ("The chance, even the certainty, that a class will lose on the merits does not prevent its certification."); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) (observing that "a determination of the propriety of class certification should not turn on [the] likelihood of success on the merits").

theory of disparate impact. The same is true to the extent potential class members contacted Defendant about properties different from those in which Plaintiffs were interested. "Some [FHA] complaints do not arise out of discrete real estate transactions. Rather they arise in a broader context, when a facially neutral policy or action has an unequal impact on different subgroups in the housing market." *Phillips v. Hunter Trails Cmty. Ass'n*, 685 F.2d 184, 189 (7th Cir. 1982). As such, Plaintiffs' claims are typical because they are based on the same alleged misconduct regardless of the specific property or "transaction" at issue.

The Court turns next to Defendant's argument that Plaintiffs' monetary claims predominate over their requests for injunctive relief. The complaint contemplates two classes: one under Rule 23(b)(2) for injunctive relief, and another pursuant to Rule 23(c)(4) for the resolution of common issues. Doc. 53 at 46. Defendant's argument largely focuses on the Rule 23(b)(2) putative class.

Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Thus, certification under Rule 23(b)(2) is proper only if the plaintiff's demand for monetary relief is incidental to their request for equitable relief. *See Lemon v. International Union of Operating Engineers, Local No. 130*, 216 F.3d 577, 580-81 (7th Cir. 2000). "[I]t does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). However, Plaintiffs have not asked for class-wide damages under Rule 23(b)(2) (or any other rule). *See* Doc. 53 at 46-47. Instead, Plaintiffs request class-wide injunctive and declaratory relief but ask for damages to be individually adjudicated through a claims process or damages proceedings. *Id.*

The Seventh Circuit has held that "certification of a Rule 23(b)(2) class for injunctive relief [is] appropriate even if the related damage claims required subsequent individual adjudication," where, as here, the remedies sought by plaintiffs are "designed to cure" both past and future discrimination. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 894 (7th Cir. 2011); *see Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004) (finding it appropriate to "[c]ertify[] a class for injunctive purposes, while handling damages claims individually"). "Monetary damages, if awarded, would compensate [class members] for the discrimination they had already suffered; damages would provide a final retrospective remedy for *that* injury. An injunction, on the other hand, would require [the defendant] to cease its discriminatory conduct, providing a final *prospective* remedy for ongoing and future discrimination." *Kartman*, 634 F.3d at 894 (emphasis in original). Plaintiffs in this case seek similar remedies, including to "order [Defendant] to revise its policies and procedures" and "enjoin [Defendant] from engaging in the foregoing illegal conduct now and *in the future,"* Doc. 53 at 47 (emphasis added).

Moreover, the complaint contemplates an issue-based class under Rule 23(c)(4), which is unrelated to the relief sought, and decidedly allows for post-liability damages hearings. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). District courts have the discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments. *See, e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Pella*

*Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). Therefore, while it might be inappropriate to adjudicate damages on a class-wide basis,[4] there is no indication that Plaintiffs cannot certify *any* class as would warrant striking the proposed class just because class members may also seek individual damages.

Finally, Defendant argues that the proposed class is overly broad and would violate the Fourth Amendment by compelling the owners[5] of Defendant's buildings to consent to warrantless searches in order to participate in the Voucher program. The Court is not persuaded by either argument. Defendant's claim that the proposed class is overly broad largely tracks its arguments regarding commonality and typicality and therefore fails for the same reasons. Although Defendant is correct that the class definition may include those who were not ultimately qualified to rent their desired apartments, it is "almost inevitable" that a class will "include persons who have not been injured by the defendant's conduct … [s]uch a possibility or inevitability does not preclude class certification." *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009). And as already discussed, the IHRA and FHA confer liability for discriminatory practices that are unrelated to whether a class member would have qualified for a certain apartment.

Nor does the Court believe that the Plaintiff should be expected, at this time and pre-discovery, to identify the precise buildings affected by the allegedly discriminatory practices. In its initial hearing on the matter, the Court instructed Plaintiffs to limit the scope of their proposed class, *see* Doc. 51 at 22, which at the time applied to the entire Chicago area and did not include

---

[4] At this time, it is not clear that the Court would be unable to calculate individual damages through "an undifferentiated, mechanical formula" such as would make class-based damages inappropriate. *See* Doc. 63 at 21 (internal quotations omitted).

[5] Although Plaintiffs allege that Defendant manages *and owns* the relevant properties, Defendant disputes this fact in its answer. *See* Doc. 58 at 7.

any reference to race. Doc. 53-1 at 41. Plaintiffs have done so by amending their proposed class to include Voucher holders "who are Black" and who contacted Defendant regarding one of its Hyde Park apartment buildings "subject to [Defendant's] restrictive policies regarding Voucher holders." Doc. 53 ¶ 150. The complaint includes a number of allegations of misconduct regarding Defendant's high-rise amenity buildings. *See, e.g.*, *id.* ¶¶ 5, 46, 47, 63-64. Rule 23(a) does not require that all class members "suffer precisely the same injury as the named class representatives." *De La Fuente*, 713 F.2d at 232-33. Here, the harm purportedly caused by Defendant arises from alleged policies and practices categorically implemented at its higher-quality Hyde Park buildings. Once discovery allows Plaintiffs to identify which specific buildings were affected, the Court may require Plaintiffs to amend their class definition at that time. *Ali v. City of Chicago*, 34 F.4th 594, 603 (7th Cir. 2022) ("[P]roposed class definitions are often narrowed or expanded as the parties engage in discovery at the class certification stage."); *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) ("District courts may amend class definitions either on motion or on their own initiative.").

As to Defendant's Fourth Amendment concerns, these are not appropriately considered via a motion to strike. Striking class allegations is only proper if it is clear from the pleadings that no class can be maintained. The parties have not briefed the substantive merits of the constitutional issue nor has Defendant raised it in its answer. Defendant may argue at a later stage that the Fourth Amendment bars Plaintiffs from obtaining certain relief or justifies Defendant's policies regarding Voucher holders, but this is unrelated to the ability of Plaintiffs to proceed as a class. Defendant's motion to strike is therefore denied.

## II. Motion for Judgment on the Pleadings

Defendant also moves for judgment on the pleadings as to Moore's claims. Defendant

argues that judgment is proper because the issue of whether Moore was qualified to rent the relevant apartments from Defendant was already litigated before the Chicago Commission on Human Relations ("CCHR").

A party may move for judgment on the pleadings any time after the pleadings have closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). In considering a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. *Id*. Judgment on the pleadings is proper if it "appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief[.]" *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997).

In this case, Defendant argues for judgment on the pleadings on the basis of collateral estoppel. Collateral estoppel, also known as "issue preclusion," is an affirmative defense under Rule 8(c). "Dismissing a case based on an affirmative defense is properly done under Rule 12(c)," *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013), when there are facts establishing the defense in the pleadings or in the public record.[6] *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017).

Under federal law, it is generally accepted that collateral estoppel can in certain circumstances apply to state and local administrative agency determinations. *See United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 421-22 (1966). However, for an agency's decision to

[6] The Court may rely on "the contents of certain matters in the public record, including administrative findings" when considering a motion for judgment on the pleadings. *See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004). Therefore, the Court takes judicial notice of the CCHR Order Finding No Substantial Evidence from October 29, 2024. Doc. 63-1; Doc. 67-3.

have preclusive effect, the agency must have acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an opportunity to litigate. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). "An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992). If the agency's determination complies with the requirements set forth in *Elliot*, the Court must then "give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."[7] *Elliott*, 478 U.S. at 799.

Under Illinois law, issue preclusion applies when: (1) "the issue decided in the prior adjudication is identical to the issue in the current action;" (2) "the party against which preclusion is asserted was a party or in privity with a party to the prior case;" and (3) "there was a final judgment on the merits in the prior action." *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, 146 F.4th 553, 564 (7th Cir. 2025). Additionally, much like federal common law, the party against whom issue preclusion is asserted must have litigated the issue in the first proceeding, and the issue must have been necessary to the decision in the first proceeding. *Id.*

The Seventh Circuit has not yet resolved whether collateral estoppel may be invoked in a case brought under the FHA following a CCHR proceeding, though at least one court in this district has made such a finding. *See, e.g.*, *Sokoya v. 4343 Clarendon Condo Ass'n*, No. 96 C 5278, 1996 WL 699634, at *5 (N.D. Ill. Nov. 27, 1996). That said, the Court need not reach the issue here because even if collateral estoppel could bar FHA claims following a CCHR hearing,

[7] Illinois law "gives preclusive effect only to determinations made in adjudicatory proceedings, whether judicial or administrative[.]" *Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995).

there was no hearing in this case. Defendant therefore has not established that the CCHR acted in a judicial capacity nor that its findings warrant judgment on the pleadings as to Moore's claims.

First, the evidence does not support a finding that the CCHR acted in a judicial capacity with respect to Moore's claims. As background: once a complaint is filed with the CCHR, the action proceeds in two phases. First, the CCHR conducts a preliminary investigation to determine whether there is substantial evidence of an ordinance violation. *See* Doc. 63-1 at 79, CCHR Rules § 220.110(a). If there is substantial evidence of a violation, the CCHR may commence the hearing process. *See id*. at 83, CCHR Rules § 220.330(a). If there is not substantial evidence of a violation, the case is dismissed without further adjudication. *See id*., CCHR Rules § 220.330(b). In this case, the CCHR found there was no substantial evidence in Moore's case, and it therefore was disposed of before any hearing occurred.[8] *See id*. at 3-4. Without a hearing, Moore was unable to access many of the safeguards available to complainants which are inherent in a judicial proceeding. For example, Moore was not allowed to obtain discovery, object to evidence, or examine or cross-examine witnesses. *See id*. at 92-94, CCHR Rules § 220.210(b), § 240.314 (noting that parties may obtain discovery, examine and cross-examine witnesses and object to evidence *during the hearing*). For these reasons, the Court finds that the CCHR was not acting in a judicial capacity when it evaluated Moore's claims, and Moore did not have an adequate opportunity to litigate the issues.[9] *Cf. Sokoya*, No. 96 C 5278,

[8] Defendant argues that Moore could have received a hearing if she had successfully appealed the CCHR's Order, but instead "abandoned her right to appeal and filed the same allegations" in this action. Doc. 63 at 27 n.12. But whether Moore would have been given a hearing depends wholly on if the CCHR reversed its finding of no substantial evidence. *See* CCHR Rules § 250.110 (showing no option to request a hearing upon appeal). As such, Moore did not have any more of a right to participate in a hearing through the appeal process than she did during the investigatory phase.

[9] Notably, Defendant took the position in its response to the CCHR that "additional facts likely would be uncovered through discovery or following a full investigation," and that they had the right "to present

1996 WL 699634, at *5-7 (relying on safeguards provided during the hearing process to establish preclusion); *Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997) (requiring that the non-moving party "had a full and fair opportunity to litigate an issue in a prior action"). As a result, Moore is not collaterally estopped from litigating the issues here.

Second, even if Moore were precluded from relitigating whether certain apartments were within her Voucher budget – the only issue resolved by the CCHR investigation – it would not resolve her claims in their entirety. To grant Defendant's motion, it must be "beyond doubt" that Moore cannot prove *any* facts to support her claim for relief. *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). As discussed above, Defendant's refusal to rent Moore an apartment is just one of many allegations supporting a claim of housing discrimination. Moore has also alleged that Defendant discriminated against her by lying to her about apartment availability and refused to give her a tour or an application. Doc. 53 ¶ 6. Therefore, Moore's claims would not be foreclosed on such basis as a matter of law. The motion for judgment on the pleadings is denied.

**CONCLUSION**

For the foregoing reasons, the Court denies both Defendant's motion to strike the amended class and its motion for judgment on the pleadings.

Dated: June 30, 2026

APRIL M. PERRY
United States District Judge

new or additional information at a later date." Doc. 63-1 at 52. It is somewhat disingenuous that now having prevailed before the CCHR, Defendant wants to prevent Moore from doing the same.